# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr>
<td>

LISA D. COOK, in her official capacity as a
member of the Board of Governors of the
Federal Reserve System and her personal
capacity,
     Constitution Ave NW &, 20th St NW,
     Washington, DC 20551.

              *Plaintiff*,


     *v.*

DONALD J. TRUMP, in his official
capacity as President of the United States,
     1600 Pennsylvania Avenue, NW,
     Washington, DC 20500,

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM, both
collectively and in their individual official
capacities,
     Constitution Ave NW &, 20th St NW,
     Washington, DC 20551,

JEROME H. POWELL,[1] in his official
capacity as Chair of the Board of Governors
of the Federal Reserve System,
     Constitution Ave NW &, 20th St NW,
     Washington, DC 20551,

              *Defendants*.

</td>
<td>

Civil Action No. 25-_____

</td>
</tr>
</table>

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

[1] Defendants the Board of Governors of the Federal Reserve System and Jerome H. Powell are
collectively referred to as the "Non-Presidential Defendants."

1

## INTRODUCTION

On the evening of August 25, 2025, President Donald Trump turned to his social media account on *Truth Social* to state he had fired Federal Reserve Governor Lisa D. Cook. This followed his August 20, 2025 call for her to resign based on nothing more than another social media posting, this one by Federal Housing Finance Agency ("FHFA") Director William Pulte, who has been using his office to allege mortgage wrongdoing against other public officials, now turning his sights to Governor Cook. The operational independence of the Federal Reserve is vital to its ability to make sound economic decisions, free from the political pressures of an election cycle.

This case challenges President Trump's unprecedented and illegal attempt to remove Governor Cook from her position which, if allowed to occur, would the first of its kind in the Board's history. It would subvert the Federal Reserve Act ("FRA"), which explicitly requires a showing of "cause" for a Governor's removal, which an unsubstantiated allegation about private mortgage applications submitted by Governor Cook prior to her Senate confirmation is not.

The President's actions violate Governor Cook's Fifth Amendment due process rights and her statutory right to notice and a hearing under the FRA. Accordingly, Governor Cook seeks immediate declaratory and injunctive relief to confirm her status as a member of the Board of Governors, safeguard her and the Board's congressionally mandated independence, and allow Governor Cook and the Federal Reserve to continue its critical work.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's causes of action arise under the Constitution and laws of the United States.

2.     Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

3.     Plaintiff Lisa D. Cook is a member of the Board of Governors of the Federal Reserve.  She was confirmed by the United States Senate to a full 14-year term on the Federal Reserve Board of Governors on September 6, 2023.  Governor Cook's term on the Board ends on January 31, 2038.  Governor Cook brings this suit in her official capacity as a member of the Board of Governors and her personal capacity.

4.     Defendant Donald J. Trump is the President of the United States and is responsible for the attempt to remove Governor Cook from her position.  He is sued in his official capacity.

5.     Defendant Board of Governors of the Federal Reserve System ("Board of Governors" or the "Board") is the governing body of the Federal Reserve System and is headquartered in Washington, DC.  The Board is an agency of the United States comprised of seven members, or "governors," serving staggered 14-year terms who are nominated by the President and confirmed by the Senate.  The Board is sued collectively, and its Governors are sued individually in their official capacities, to the extent that any individual Governor has the ability to take any action to effectuate President Trump's purported termination of Governor Cook.

6.     Defendant Jerome H. Powell is the Chair of the Board of Governors, which is headquartered in Washington, DC.  Defendant Powell is sued in his official capacity as Chair of the Board, to the extent that he has any ability to take any action to effectuate President Trump's

purported termination of Governor Cook.

## STATUTORY AND HISTORICAL BACKGROUND ON THE
## INDEPENDENCE OF THE FEDERAL RESERVE

7.      Since its establishment in 1913, Congress intended for the Federal Reserve System to function independent of political interference.  As articulated by the Supreme Court in *Wilcox v. Trump*, "[t]he Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States."  145 S. Ct. 1415, 1415 (May 22, 2025) (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 222 n.8 (2020)).  The intent that the Federal Reserve retain independence has been reinforced by statutory amendments to the FRA in 1935, 1977, and 2010.

8.      The Board of Governors is the seven-member governing body of the Federal Reserve System—made up of the chairperson plus six governors—responsible for setting monetary policy, supervising and regulating banks, and maintaining financial stability.  The governors, who are appointed by the President and confirmed by the Senate, serve staggered 14-year terms.  The long and staggered term procedure reinforces the independence of the Board.

9.      An independent Federal Reserve is essential for a stable economy, as the short-term political interests of a president often clash with sound monetary policy.  Presidents, facing pressure to boost the economy, may favor lower interest rates and a more expansive policy to achieve a temporary economic lift.  However, this approach often fuels long-term inflation.  A politically insulated Board of Governors can make appropriate, albeit unpopular, decisions— such as raising interest rates to combat inflation—that are crucial for the nation's long-term financial health.

10.     The Federal Reserve's effectiveness in managing inflation and economic stability depends on its credibility.  If markets and the public believe that the central bank is making

decisions based on political pressure rather than sound economic data, that confidence erodes. A lack of credibility can make a central bank's job much harder; for example, if markets anticipate higher inflation in the long run due to a political decision to temporarily boost the economy, it can become a self-fulfilling prophecy. An independent central bank, by contrast, acts predictably and transparently, which stabilizes markets and the wider economy. In the few days following President Trump's unprecedented action, media, economists, and academics from across the political spectrum have sounded the alarm that his actions threaten the historic independence of the Federal Reserve.

11.    An independent Federal Reserve also prevents presidential administrations from using monetary policy for self-serving political ends in other ways, such as ensuring the government cannot simply print more money to finance debt. This practice, when unchecked, can lead to economic collapse and hyperinflation.

12.    The independence of the Federal Reserve is supported by several statutory provisions that shield the Board of Governors from political interference. Such statutory provisions include the Board's funding outside the annual appropriations process;[2] the Board's authority to set all terms and conditions of Board employment;[3] the Board's exemption from Government Accountability Office audits of its monetary policy decisions;[4] the Board's authority to litigate independently;[5] the Board's ability to present legislative recommendations and testimony to Congress without executive branch approval;[6] the exemption of the Board's monetary

---

[2] *See, e.g.,* 12 U.S.C. §§ 243, 244.
[3] 12 U.S.C. § 244.
[4] *See, e.g.,* 12 U.S.C. § 3910(a)(3) (exempting from GAO audits of the Board and Reserve Banks, *inter alia*, discussions or communications relating to monetary policy matters, transactions under the direction of the FOMC, or transactions with foreign central banks); 31 U.S.C. § 714(b) (same).
[5] *See, e.g.,* 12 U.S.C. § 248(p).
[6] 12 U.S.C. § 250 (prohibiting any "officer or agency of the United States" from requiring the Board "to submit legislative recommendations, or testimony, or comments on legislation, to any

policy decisions from the Congressional Review Act;[7] and the Board's authorization to participate directly in certain international fora without executive branch intermediation.[8]

13.    One of the statutory devices used to maintain this crucial independence of the Federal Reserve is a "for cause" removal protection for Board Governors.  The FRA expressly provides that

> Upon the expiration of the term of any appointive member of the Federal Reserve Board in office on August 23, 1935, the President shall fix the term of the successor to such member at not to exceed fourteen years, as designated by the President at the time of nomination, but in such manner as to provide for the expiration of the term of not more than one member in any two-year period, and thereafter each member shall hold office for a term of fourteen years from the expiration of the term of his predecessor, unless sooner removed *for cause* by the President.

12 U.S.C. § 242 (emphasis added).

14.    The "for cause" removal protection guaranteed by the FRA, which has been the bulwark of the Federal Reserve's independence for the past century, prevents the President from firing a Federal Reserve Board governor except "for cause," meaning instances of inefficiency, neglect of duty, malfeasance in office, or comparable misconduct.

15.    In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court unanimously upheld the constitutionality of such statutory protections for government officials serving on multi-member agencies.  In *Humphrey's Executor*, the Court found that Congress has the authority to restrict presidential removals "depend[ing] upon the character of the office." 295 U.S at 631.  Specifically, "for-cause" removal restrictions were deemed constitutional with respect to officers at the FTC; in reaching

---

officer or agency of the United States for approval, comments, or review, prior to [their] submission")
[7] 5 U.S.C. § 807 (exempting "rules that concern monetary policy proposed or implemented by the Board" and FOMC from the Congressional Review Act).
[8] *See, e.g.*, 12 U.S.C. § 3907(b)(3)(C), 12 U.S.C. § 3911, 12 U.S.C. § 5373(c), 22 USC § 9522(b) note.

this conclusion, the Court specifically relied on the FTC's structure as (a) "a body of experts," (b) with long, staggered terms, (c) that was designed to be "nonpartisan" and act "with entire impartiality." *Id.* at 624–25.

16.    The Supreme Court recently made clear that the analysis in *Humphrey's Executor* applies with particular force to the Federal Reserve.  In a case about the President's removal of a member of the National Labor Relations Board and a member of the Merit Systems Protection Board, the Court permitted the removals to take effect, but specifically distinguished the removal protections for Federal Reserve Governors. The Court addressed the quasi-private nature of the Federal Reserve and the historical importance of its for-cause removal protections as unique even among independent agencies:

> [R]espondents Gwynne Wilcox and Cathy Harris contend that arguments in this case necessarily implicate the constitutionality of for-cause removal protections for members of the Federal Reserve's Board of Governors or other members of the Federal Open Market Committee. [] We disagree. The Federal Reserve is a *uniquely structured*, quasi-private entity that follows in the *distinct historical tradition* of the First and Second Banks of the United States.

*Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (May 22, 2025) (internal citations omitted; emphases added).

17.    The Government similarly has stated in court that "the Federal Reserve represent a unique institution with a unique history and background," and thus is distinguishable from "other federal entities."  *Harris v. Bessent*, No. 25-5037, Reply Br. for Appellants at 15 (D.C. Cir. Apr. 11, 2025) (internal citations omitted).

18.    This is not the first time the Supreme Court has distinguished the Federal Reserve from other government agencies.  The recent analysis in *Trump v. Wilcox* builds on what the Court previously signaled about the unique nature of the Federal Reserve and how it is differently situated from other agencies in *Seila Law*.  591 U.S. at 222 n.8.

19.     As the Court's decision in *Trump v. Wilcox* makes clear, the Federal Reserve uniquely relies on its independence to function in the historical tradition of an independent central bank.  The "for cause" statutory removal provision provided by the FRA is essential to protecting this independence.

20.     The "for cause" standard is not defined in the FRA, but statutes establishing the standard for other independent agencies expressly limit cause to the standard that is articulated in *Humphrey's Executor*: There must be a specific finding of "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623.  Courts and litigants have assumed the standard in cases where such language is not expressed in the statute.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010) (decided "with [the] understanding" that SEC Commissioners could only be removed under the *Humphrey's Executor* standard of "inefficiency, neglect of duty, or malfeasance in office," even in the absence of explicit statutory for cause removal protection, after both parties agreed to such an understanding).

21.     The Supreme Court has not defined "inefficiency, neglect of duty, or malfeasance *in office*" (emphasis added), but historical use of these terms indicates that (a) "'neglect of duty' meant failing to perform one's duties in a way that caused specific harm to the entity . . . to which the duties were owed"; (b) "malfeasance" connoted the commission of an unlawful act in the performance of one's official duties; and (c) the "inefficiency" standard targets concerns about "waste, especially . . . result[ing] from self-interested dealing," and was designed to "ensur[e] that . . . officers did their jobs competently and honestly."  Lev Menand and Jane Manners, *The Three Permissions*, 121 Colum. L. Rev. 1, 29, 48–49 (2021) (tracing the historical meaning of the term through English common law and early American law).

22.     Congressional intent that the "for cause" standard in the FRA requires a finding of

"inefficiency, neglect of duty, or malfeasance in office" is illustrated by the fact that Congress amended the FRA three months after the Supreme Court's decision in *Humphrey's Executor* to provide Board members with 14-year terms "unless sooner removed *for cause* by the President." 49 Stat. 684, 704 (emphasis added).  Prior to that, the statute was silent on removal.  The *Humphrey's Executor* decision was raised in the hearings on the passage of these amendments to the FRA.  *See* Gary Richardson & David Wilcox, *How Congress Designed the Federal Reserve to be Independent of Presidential Control*, 39 J. of Econ. Persp. 221, 229 (2025).

23.    Whether or not the FRA's "for cause" removal provision is interpreted using the usual standard of "inefficiency, neglect of duty, or malfeasance in office," it clearly does not support removal for policy disagreements.  *See Humphrey's Executor*, 295 U.S. at 619 (finding the President's decision to remove an FTC member because their minds did not "go along together on either the policies or the administering" of the agency failed to satisfy grounds for removal); *Wiener*, 357 U.S. at 350 (President did not have cause to remove commissioner because he believed it was in the "national interest" to appoint "personnel of [his own selection); *Seila Law*, 591 U.S. at 229 (noting that *Humphrey's Executor* "implicitly rejected an interpretation that would leave the President free to remove an officer based on disagreements about agency policy").

24.    Allowing the President to remove members of the Board over policy disagreements would also render illusory the Board's independence, as emphasized throughout the statutory provisions protecting such independence in the FRA.

25.    As the Court's articulation of the standard in *Humphrey's Executor* makes clear, removal "for cause" requires some connection to official conduct, prohibiting removal based on an unsubstantiated allegation of private misconduct (which in this case allegedly occurred prior to her Senate confirmation).  And even to the extent that private misconduct could bear on a particular

officer's official conduct in certain cases, "cause" requires a factual basis supporting such asserted misconduct.

## FACTUAL ALLEGATIONS

### *Governor Cook's Background*

26.    Governor Cook is a distinguished economist with a background in academia, policy, and research.  She holds a Ph.D. in economics from the University of California, Berkeley, with a focus on macroeconomics and international economics.  She received a B.A. in philosophy from Spelman College.  As a Marshall Scholar, Governor Cook received a second B.A. in philosophy, politics, and economics from Oxford University.

27.    Prior to her appointment to the Board, Governor Cook was a professor of economics and international relations at Michigan State University, a research associate at the National Bureau of Economic Research, a member of the faculty of Harvard University's Kennedy School of Government, and a National Fellow at Stanford University, among other academic positions.  She served as a senior economist on the Council of Economic Advisers under President Barack Obama from August 2011 to August 2012.  She was a senior adviser on finance and development in the U.S. Department of Treasury's Office of International Affairs from September 2000 to September 2001.

28.    Governor Cook has previously directed the American Economic Association's Summer Program for disadvantaged students from 2018 to 2021 and was elected a member of the American Economic Association's Executive Committee in 2019.

29.    On January 14, 2022, President Joeseph Biden nominated Governor Cook to be a member of the Federal Reserve Board of Governors. The Senate confirmed her nomination on May 10, 2022.

30.    Governor Cook officially began serving on the Board of Governors on May 23, 2022, filling an unexpired term that ended January 31, 2024.

31.    On May 12, 2023, President Biden renominated Governor Cook to the Board of Governors for an additional, full 14-year term as a Governor.  Her nomination was confirmed by the Senate on September 6, 2023, and she was sworn in on September 13, 2023.  Governor Cook's term on ends on January 31, 2038.

32.    Governor Cook is the first Black woman to sit on the Federal Reserve's Board in its 111-year history.

### President Trump's Public Frustration with the Federal Reserve

33.    President Trump has indicated his desire to impede the independence of the Federal Reserve since he assumed office in January 2025.

34.    President Trump has repeatedly chastised the Federal Reserve for refusing to lower interest rates, posting on *Truth Social* that the "Fed should cut Rates by 3 Points" and a directive to "Bring down the Fed Rate, NOW!!!"[9]  As recently as August 19, 2025, President Trump posted on *Truth Social*, "Could somebody please inform Jerome 'Too Late' Powell that he is hurting the Housing Industry, very badly?  People can't get a Mortgage because of him.  There is no Inflation, and every sign is pointing to a major Rate Cut.  'Too Late' is a disaster!"[10]

35.    As recently as August 26, 2025, President Trump chastised Chairman Powell at a Cabinet meeting, saying "Jerome too late, his nickname is too late, costing us a lot of money, hurting our house industry….because of him and his high interest rates, the housing is less than it

---

[9] Eric Revell, *Trump says Federal Reserve should lower interest rates by 3 points*, Fox Bus. (July 15, 2025, 10:53 AM), https://www.foxbusiness.com/economy/trump-says-federal-reserve-should-lower-interest-rates-3-points.
[10] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 19, 2025, 6:38 PM), https://truthsocial.com/@realDonaldTrump/115057827631877948.

could be."[11]  President Trump uses the nickname "too late" for Federal Reserve Chairman Jerome Powell because of the President's belief that the Chairman Powell has been too slow to lower interest rates.[12]

36.    President Trump has threatened to fire Chairman Powell for being unwilling to cut short-term interest rates, and he has publicly demanded that Chairman Powell resign.[13]  On August 1, 2025, President Trump posted on *Truth Social*, "'Too Late' Powell should resign, just like Adriana Kugler, a Biden Appointee, resigned.  She knew he was doing the wrong thing on Interest Rates. He should resign, also!"[14]

37.    Interest rates change only when a majority of the 12-member Federal Open Market Committee votes to do so.  The Committee consists of the Federal Reserve chairperson, the other six members of the Board of Governors, the President of the Federal Reserve Bank of New York, and four other regional Federal Reserve System presidents on a rotating basis, who represent districts across the country.

38.    At each Federal Open Market Committee meeting in 2025, Governor Cook has joined Chairman Powell and other members in voting not to lower short-term interest rates.

---

[11] CNBC Television, *President Trump holds a cabinet meeting at the White House – 8/26/2025*, YouTube (Aug. 26, 2025), https://www.youtube.com/watch?v=cbEPqUdelFo.

[12] Emma Colton, *Trump sends 'Mr. Too Late' Jerome Powell fiery note spelling out interest rate failures costing US a 'fortune,'* Fox Bus. (June 30, 2025, 2:29 PM), https://www.foxbusiness.com/politics/trump-sends-mr-too-late-jerome-powell-note-showing-showing-how-other-nations-trounce-us-interest-rates.

[13] Christine Zhang, *How Trump's Attacks on the Fed Chair Have Intensified*, N.Y. Times (July 24, 2025), https://www.nytimes.com/interactive/2025/07/24/business/economy/trump-powell-fed-timeline.html.

[14] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 1, 2025, 6:05 PM), https://truthsocial.com/@realDonaldTrump/posts/114955773655328634.

*Federal Housing Finance Agency Director Pulte's Criminal Referral*

39.    The Director of the Federal Housing Finance Agency, William Pulte, was confirmed to his role in March 2025.  The FHFA's stated mission is to "ensure the regulated entities fulfill their mission by operating in a safe and sound manner to serve as a reliable source of liquidity and funding for the housing finance market throughout the economic cycle."[15]

40.    Since his confirmation, Director Pulte, often through social media postings, has used his office to allege mortgage wrongdoing against public officials, now turning his sights on Governor Cook.  Each of Director Pulte's criminal referrals have notably been, at one time or another, political targets of President Trump's ire prior to any mortgage fraud allegations.

41.    Director Pulte has also parroted President Trump's criticisms of the Federal Reserve.  On June 18, 2025, Director Pulte posted on X that Chairman Powell "is hurting the housing market by being Too Late to lower rates. He needs to resign, effective immediately."[16]

42.    On July 16, 2025, Director Pulte reportedly gave President Trump a draft of a letter firing Chairman Powell.[17]  That same day, Director Pulte posted on X that renovations to the building that houses the Federal Reserve are "riddled" with fraud,[18] and President Trump stated that Chairman Powell may be fired for fraud, noting that "I mean it's possible there's fraud involved with the $2.5 billion renovation."[19]

---

[15] U.S. Federal Housing, *FHFA At-A-Glance*, www.fhfa.gov/about (last visited Aug. 27, 2025).
[16]    Bill    Pulte    (@pulte),    X    (June    18,    2025,    2:40    PM) https://x.com/pulte/status/1935407350556561775.
[17] Maggie Haberman and Colby Smith, *Trump Has Draft of Letter to Fire Fed Chair. He Asked Republicans    if    He    Should    Send    It.*,    N.Y.    Times    (July    16,    2025), https://www.nytimes.com/2025/07/16/us/politics/trump-powell-firing-letter.html.
[18]    Bill    Pulte    (@pulte),    X    (July    16,    2025,    3:11    PM), https://x.com/pulte/status/1945562005777293795.
[19] Bloomberg Podcasts, *Trump Says Firing Powell 'Unlikely' (Full Q&A)*, YouTube (July 16, 2025), https://www.youtube.com/watch?v=Ib-OCc31Wfs.

43.     On August 15, 2025, Director Pulte sent a referral letter to Attorney General Pamela Bondi and DOJ Special Attorney Edward Martin, Jr., accusing Governor Cook of mortgage fraud. Director Pulte alleged that Governor Cook claimed two different homes as her main residence in 2021 to obtain better loan terms.  Notably, this alleged conduct occurred prior to Governor Cook's Senate confirmation.  Director Pulte publicly released the referral letter on August 20, 2025, without notice to Governor Cook.[20]  **Ex. A**.  Governor Cook was never given any opportunity to respond to the allegations before the criminal referral was sent.

***President Trump's Attacks on Governor Cook***

44.     Less than 30 minutes after Director Pulte publicly released the referral letter to Attorney General Bondi, President Trump posted on his *Truth Social* page, "Cook must resign, now!!!" and linked a *Bloomberg* news story about Director Pulte's referral letter.[21]

45.     Two days after Director Pulte released the referral letter, President Trump stated he would fire Governor Cook if she did not resign from the Board of Governors, telling reporters, "[w]hat she did was bad. So I'll fire her if she doesn't resign."[22]

46.     Five days after Director Pulte released the referral letter, at approximately 8:00 PM on August 25, 2025, President Trump did what he promised; he signed and publicly posted a two-page letter to his *Truth Social* page addressed to Governor Cook.  **Ex. B.**  The letter purported to fire Governor Cook from the Board of Governors of the Federal Reserve, "effective immediately." **Ex. C.**

---

[20]     Bill     Pulte     (@pulte),     X     (Aug.     20,     2025,     8:05     AM), https://x.com/pulte/status/1958138434171629636.

[21]     Donald  J.  Trump  (@realDonaldTrump),  Truth  Social  (Aug.  20,  2025,  8:31  AM), https://truthsocial.com/@realDonaldTrump/posts/115061104213677946.

[22] Kevin Breuninger, *Trump says he'll fire Fed Governor Lisa Cook 'if she doesn't resign,'* CNBC (Aug. 22, 2025), https://www.cnbc.com/2025/08/22/trump-fire-fed-lisa-cook-powell.html.

47.    President Trump did not send a copy of the letter to Governor Cook prior to posting it to social media.  He provided no advance notice, nor any opportunity for Governor Cook to respond.

48.    As justification for the alleged firing, President Trump's letter cites the Federal Reserve Act, 12 U.S.C. § 242, which specifies that Federal Reserve Board members may only be "removed for cause by the President."  The letter claims that the President has "determined that there is sufficient cause to remove [Governor Cook] from [her] position."

49.    The letter's only reference to President Trump's "cause" for purportedly terminating Governor Cook was Director Pulte's "criminal referral," which President Trump cited for his belief that Governor Cook "*may have* made false statements on one or more mortgage agreements." (emphasis added). President Trump also attached the referral letter as Exhibit A to his letter.  According to President Trump, the "may have" is enough to conclude Governor Cook did something improper, even though the allegation is wholly unrelated to her official duties and does not amount to Section 242 "cause."

50.    The claims made in Director Pulte's referral letter are unsubstantiated allegations that about conduct that predates her Senate confirmation, and Governor Cook has never been given an opportunity to address them.

51.    After President Trump announced Governor Cook's purported termination by letter, Director Pulte stated on X, "Fraud will not be tolerated in President Trump's housing market."[23]  Director Pulte also released a "U.S. Federal Housing Statement on the Firing of Lisa Cook" on X that stated: "Thank you President Trump for your commitment to stopping mortgage

---

[23]    Bill    Pulte    (@pulte),    X    (Aug.    25,    2025,    8:12    PM), https://x.com/pulte/status/1960133164006793700.

fraud and following the law. If you commit mortgage fraud in America, we will come after you, no matter who you are."[24]

52.     The following day, August 26, 2025, President Trump was sitting in a Cabinet meeting when he told reporters, "If you did your job properly, we wouldn't have problems like Lisa Cook," and added, "I think we have to have lower interest rates, yes."  When asked about the referral allegations, President Trump stated, "she seems to have had an infraction, and she can't have an infraction.  Especially that infraction because she's in charge of, if you think about it, mortgages, and we need people that are 100 percent above-board, and it doesn't seem like she was."[25]

53.     Even if the President had been more careful in obscuring his real justification for targeting Governor Cook, the President's concocted basis for removal—the unsubstantiated and unproven allegation that Governor Cook "potentially" erred in filling out a mortgage form prior to her Senate confirmation—does not amount to "cause" within the meaning of the FRA and is unsupported by caselaw.

54.     The prevailing understanding of "for cause" removal protection has long been anchored to "the *Humphrey's Executor* standard of 'inefficiency, neglect of duty, or malfeasance in office.'"  *Free Enterprise Fund*, 561 U.S. at 487 (quoting *Humphrey's Executor*, 295 U.S. at 620 (1935).

55.     The unsubstantiated mortgage fraud allegations that allegedly occurred prior to Governor Cook's Senate confirmation do not amount to "inefficiency, neglect of duty, or malfeasance in office," nor has the President alleged that they do.

---

[24] Bill Pulte (@pulte), X (Aug. 25, 8:17 PM), https://x.com/pulte/status/1960134373799272788.
[25] CBS Detroit, *Trump promises crackdown on crime, removes Federal Reserve board member Lisa Cook*, YouTube (Aug. 26, 2025), https://www.youtube.com/watch?v=gKraD8JVEBU.

56.    Even if the President's authority to remove a Board member "for cause" encompassed circumstances beyond "inefficiency, neglect of duty, or malfeasance in office," President Trump does not have the power to unilaterally redefine "cause"—completely unmoored to caselaw, history, and tradition—and conclude, without evidence, that he has found it.  Certainly, a policy dispute between the President and a Governor does not constitute "cause."  Neither does a specious assertion that a one "potentially" committed a crime—one which is unproven, uncharged, and unrelated to official conduct.

57.    Indeed, President Trump's conception of "cause" has no limiting principle; it would allow him to remove any Federal Reserve Board member with whom he disagrees about policy based on chalked up allegations.  That the President says he has found (or created) some basis for removing a Governor does not magically make such a basis grounds for a "for cause" removal under the FRA.  The President had no "cause" to remove Governor Cook under 12 U.S.C. § 242.

58.    In an official statement on August 26, 2025, a Federal Reserve spokesperson did not indicate that the Federal Reserve would ignore the President's illegal purported removal of Governor Cook, instead stating that "Cook has indicated through her personal attorney that she will promptly challenge this action in court and seek a judicial decision that would confirm her ability to continue to fulfill her responsibilities as a Senate-confirmed member of the Board of Governors of the Federal Reserve System. . . . The Federal Reserve reaffirms its commitment to transparency, accountability, and independence in the service of American families, communities, and businesses,"[26] and added that the Federal Reserve Board "will abide by any court decision." This Complaint seeks that decision.

---

[26] Dan Mangan, *Fed responds to Trump effort to fire Lisa Cook, notes president needs 'cause,'* CNBC (Aug. 26, 2025), https://www.cnbc.com/2025/08/26/trump-fed-cook-respond-court.html.

59.    If President Trump's unlawful attempt to remove Governor Cook from the Board is allowed to take effect, President Trump would be able to nominate his own pick to fill that Board seat, with a term ending in 2038.

60.    It is clear from the circumstances surrounding Governor Cook's purported removal from the Federal Reserve Board that the mortgage allegations against her are pretextual, in order to effectuate her prompt removal and vacate a seat for President Trump to fill and forward his agenda to undermine the independence of the Federal Reserve.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF THE FEDERAL RESERVE ACT
## 12 U.S.C. § 242
## (Against All Defendants)

61.    The preceding paragraphs are incorporated and realleged here.

62.    Under the FRA's plain language, Governor Cook has a clear legal entitlement to retain her position as a member of the Board of Governors of the Federal Reserve.  Section 242 mandates that Federal Reserve Board members can be removed by the President prior to the expiration of their term only "for cause."  12 U.S.C. § 242.

63.    President Trump's letter purporting to fire Governor Cook did not cite appropriate cause for removing her from the Board of Governors.

64.    President Trump did not purport to remove Governor Cook for "inefficiency, neglect of duty, or malfeasance in office," or for any actions that were carried out in the course of her official duties.

65.     Instead, the letter purporting to fire Governor Cook refers only to the fact that she "may have made false statements on one or more mortgage agreements" in her personal capacity four years ago, before she was a Governor.  This allegation about conduct that predates Governor Cook's Senate confirmation has never been investigated, much less proven.  This allegation is not grounds for removal under the FRA.

66.     As a result, the President's purported termination of Governor Cook is *ultra vires* and a clear violation of law, and any attempts by the Non-Presidential Defendants to effectuate the illegal termination would be unlawful.

## COUNT TWO

### VIOLATION OF THE FEDERAL RESERVE ACT
**(Statutory Right to Notice and a Hearing)**
**12 U.S.C. § 242**
**(Against All Defendants)**

67.     The preceding paragraphs are incorporated and realleged here.

68.     President Trump's purported firing of Governor Cook deprived her of her statutory right to notice and a hearing under the FRA.

69.     The Supreme Court has recognized that "for cause" removal protections create a statutory right to notice and a hearing.  *See Reagan v. United States*, 182 U.S. 419, 425 (1901) ("[W]here the term of office is for a fixed period, notice and hearing are essential."); *Shurtleff v. United States*, 189 U.S. 311, 314 (1903) ("It must be presumed that the President did not make the removal for any cause assigned in the statute, because there was given to the officer no notice or opportunity to defend.").

70.     The President's attempt to remove Governor Cook violates Section 10 of the Federal Reserve Act, as the statute's inclusion of "for cause" removal protection—a term of art—

conferred on Governor Cook a statutory right to notice and a hearing. *See* 12 U.S.C. § 242. She was given neither.

71.     As a result, the President's attempt to terminate Governor Cook was a clear violation of Governor Cook's statutory right to notice and hearing under the FRA, and any actions by the Non-Presidential Defendants to effectuate President Trump's attempt to terminate Governor Cook would violate her statutory rights.

## COUNT THREE

### VIOLATION OF THE FIFTH AMENDMENT
### (Procedural Due Process)
### (Against All Defendants)

72.     The preceding paragraphs are incorporated and realleged here.

73.     President Trump deprived Governor Cook of her rights under the Due Process Clause of the Fifth Amendment.

74.     The Due Process Clause guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Here, President Trump has attempted to deprive Governor Cook of her property interest in her position as a Governor on the Federal Reserve Board without providing any process whatsoever.

75.     The Supreme Court has expressly stated that where a statute provides a public employee with for-cause removal protection, that employee possesses a property interest in her continued employment.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  The D.C. Circuit recently reiterated the ongoing viability of this precise property interest.  *See Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) ("[A] property interest exists if the employee can 'be removed only for cause.'")

76.     Because the Federal Reserve Act establishes that Board members may not be fired without "cause," controlling Supreme Court and D.C. Circuit precedent establish that Governor Cook has a property interest in her continued employment as a Governor.  As a result, the Due Process Clause provides that she cannot be removed without—at a minimum—"oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Loudermill*, 470 U.S. at 546.

77.     Governor Cook received neither notice nor a hearing before her purported firing. Instead, she found out about the attempt to remove her through President Trump's *Truth Social* post containing a letter addressed to her stating that "you are hereby removed from your position on the Board of Governors of the Federal Reserve, effective immediately."

78.     As a result, the President's attempt to terminate Governor Cook was a clear violation of the Due Process Clause, and any actions by the Non-Presidential Defendants to effectuate President Trump's illegal attempt to remove Governor Cook from office would violate her Fifth Amendment due process rights.

## **COUNT FOUR**

### **DECLARATORY JUDGMENT**
### **28 U.S.C. §§ 2201, 2202**
### **(Against All Defendants)**

79.     The preceding paragraphs are incorporated and realleged here.

80.     Governor Cook is entitled to declaratory relief on the basis of all claims identified.

81.     There is a substantial ongoing controversy between Governor Cook and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have authority to remove Plaintiff without affording her all rights and protections set forth by applicable statutes and regulations.

## COUNT FIVE

### WRIT OF MANDAMUS
### (Against Non-Presidential Defendants)

82.     The preceding paragraphs are incorporated and realleged here.

83.     In the alternative, Governor Cook is entitled to a writ of mandamus commanding Defendants not to interfere with her statutorily protected tenure in office unless and until she is removed for cause pursuant to lawful procedures.  Defendants have a legal duty not to terminate Plaintiff without affording her the protections prescribed by law and, absent this Court granting relief, there is no other adequate means of redress.

## COUNT SIX

### EQUITABLE RELIEF FOR STATUTORY AND CONSTITUTIONAL VIOLATIONS
### (Against Non-Presidential Defendants)

84.     The preceding paragraphs are incorporated and realleged here.

85.     Under this Court's traditional equitable jurisdiction, Governor Cook is entitled to equitable relief to prevent and restrain ongoing violations of both statutory and constitutional law by the Non-Presidential Defendants.  Equitable actions have "long been recognized as the proper means" to prevent public officials from acting unconstitutionally.  *See Free Enter. Fund*, 561 U.S. at 491 n.2 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

86.     Because such actions seek simply to halt or prevent a violation of federal law rather than the award of money damages, they do not ask the Court to imply a new cause of action.  To the contrary, the ability to sue to enjoin unlawful and unconstitutional actions by non-presidential federal actors is the creation of courts of equity and reflects a long history of judicial review of illegal executive action, tracing back to England.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa D. Cook requests that the Court enter an Order awarding her the following injunctive and declaratory relief:

a) A declaration that President Trump's August 25, 2025 purported firing of Governor Cook is unlawful and void and that Governor Cook remains an active member of the Board of Governors of the Federal Reserve;

b) A declaration that members of the Board of Governors of the Federal Reserve can only be removed for cause, meaning instances of inefficiency, neglect of duty, malfeasance in office, or comparable misconduct;

c) A declaration that an unsubstantiated allegation of mortgage fraud prior to a Governor's confirmation is not cause for removal under the Federal Reserve Act;

d) A declaration that President Trump's August 25, 2025 purported firing of Governor Cook violated her statutory right to notice and a hearing under the Federal Reserve Act and her due process rights under the Fifth Amendment;

e) An injunction against the Non-Presidential Defendants ordering that they refrain from effectuating President Trump's illegal attempt to fire Governor Cook and treat Governor Cook as a member of the Board of Governors;

f) A writ of mandamus commanding the Non-Presidential Defendants to refrain from effectuating President Trump's illegal attempt to fire Governor Cook from federal service without following lawful procedures;

g) An award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

h) An award of all other appropriate relief.

Date:    August 28, 2025                    */s/ Abbe David Lowell*
         Washington, D.C.                    Abbe David Lowell [Bar No. 358651]
                                             Brenna L. Frey*
                                             David A. Kolansky [DDC No. 7680722]
                                             Isabella M. Oishi [Bar No.  90018056]
                                             Jack P. Bolen*
                                             LOWELL & ASSOCIATES, PLLC
                                             1250 H Street, N.W., Suite 250
                                             Washington, DC 20005
                                             T: (202) 964-6110
                                             F: (202) 964-6116
                                             ALowellpublicoutreach@lowellandassociates.com
                                             BFrey@lowellandassociates.com
                                             DKolansky@lowellandassociates.com
                                             IOishi@lowellandassociates.com
                                             JBolen@lowellandassociates.com


                                             Norman L. Eisen [Bar No. 435051]
                                             Tianna J. Mays [Bar No. 90005882]
                                             DEMOCRACY DEFENDERS FUND
                                             600 Pennsylvania Avenue SE #15180
                                             Washington, DC 20003
                                             Tel: (202) 601-8678
                                             norman@democracydefenders.org
                                             tianna@democracydefenders.org

                                             *Attorneys for Governor Lisa Cook*


                                             * Application for admission or admission pro hac
                                             vice forthcoming.