**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LISA D. COOK, in her official capacity as a member of the Board of Governors of the Federal Reserve System and her personal capacity,<br>     Constitution Ave NW &, 20th St NW, Washington, DC 20551.<br><br>     *Plaintiff,*<br><br>     *v.*<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br>     1600 Pennsylvania Avenue, NW, Washington, DC 20500,<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, both collectively and in their individual official capacities,<br>     Constitution Ave NW &, 20th St NW, Washington, DC 20551,<br><br>JEROME H. POWELL,[1] in his official capacity as Chair of the Board of Governors of the Federal Reserve System,<br>     Constitution Ave NW &, 20th St NW, Washington, DC 20551.<br><br>     *Defendants.* | Civil Action No. 25-2903<br><br>**EMERGENCY HEARING RESPECTFULLY REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LISA COOK'S**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

---

[1] Defendants the Board of Governors of the Federal Reserve System and Jerome H. Powell are collectively referred to as the "Non-Presidential Defendants."

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

   I.    The Structure and History of the Federal Reserve Act Illustrate the Importance of the Independence of the Federal Reserve. .............................................................. 2

   II.   The Federal Reserve Act's "For Cause" Removal Provision Protects the Independence of the Board of Governors. ................................................................. 4

FACTUAL BACKGROUND ................................................................................................ 5

PROCEDURAL HISTORY ................................................................................................. 6

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

   I.    Governor Cook Has a Substantial Likelihood of Success on the Merits. ............... 9

      A.   Defendants Violated the Federal Reserve Act. .......................................... 9

      B.   Defendants Violated Governor Cook's Fifth Amendment Due Process Rights and Statutory Right to Notice and a Hearing. .................................. 15

   II.   Governor Cook Will Suffer Irreparable Harm Absent Relief. ............................. 17

   III.  The Balance of the Equities and Public Interest Favor Governor Cook. ............. 19

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62 (D.C. Cir. 2004) ................................................................................................................................ 18

*Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024) .................................................... 8

*Berry v. Reagan*, 1983 WL 538 (D.D.C. Nov. 14, 1983) ............................................................ 18

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ..................................................... 16

*Consumers' Rsch. v. CPSC*, 98 F.4th 646 (5th Cir. 2024) .......................................................... 22

*Esparraguera v. Dep't of the Army*, 101 F.4th 28 (D.C. Cir. 2024) ........................................... 16

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010) ............. 9

*Harper v. Bessent*, 2025 WL 2049207 (D.D.C. July 22, 2025) ................................................. 19

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ............................................ *passim*

*LeBlanc v. U.S. Priv. & Civ. Lib. Oversight Bd.*, 2025 WL 1454010 (D.D.C. May 21, 2025) .... 19

*PHH Corp. v. Consumer Fin. Protection Bureau*, 881 F.3d 75 (D.C. Cir. 2018) ........................ 20

*Radio Free Europe/Radio Liberty, Inc. v. Lake*, 772 F. Supp. 3d 79 (D.D.C. 2025) .................. 19

*Reagan v. United States*, 182 U.S. 419 (1901) .......................................................................... 17

*SEC v. Bilzerian*, 750 F. Supp. 14 (D.D.C. 1990) ..................................................................... 10

*Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020) ....................... 2

*Shurtleff v. United States*, 189 U.S. 311 (1903) ........................................................................ 17

*Thompson v. District of Columbia*, 530 F.3d 914 (D.C. Cir. 2008) ........................................... 16

*TNB USA Inc. v. Fed. Reserve Bank of N.Y.*, 2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020) ...... 20

*Trump v. Wilcox*, 145 S. Ct. 1415 (May 22, 2025) .............................................................. *passim*

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001). ............................................................................... 15

*Wiener v. United States*, 357 U.S. 349 (1958) ............................................................................ 4

*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. Mar. 6, 2025) .................................................. 19

**Statutes**

5 U.S.C. § 807 ............................................................................................................................. 3

12 U.S.C. § 242 .................................................................................................................. *passim*

12 U.S.C. § 243 ........................................................................................................................... 3

12 U.S.C. § 244 ........................................................................................................................... 3

12 U.S.C. § 248 ........................................................................................................................... 3

12 U.S.C. § 250 ........................................................................................................................... 3

12 U.S.C. § 3907 ......................................................................................................................... 3

12 U.S.C. § 3910 ................................................................................................ 3

12 U.S.C. § 3911 ................................................................................................ 3

12 U.S.C. § 5373 ................................................................................................ 3

22 U.S.C. § 9522 ................................................................................................ 3

31 U.S.C. § 714 ................................................................................................. 3

**Constitutional Provisions**

U.S. Const. amend. V ................................................................................. *passim*

**Other Authorities**

Cass Sunstein & Adrian Vermuele, *Presidential Review: The President's Statutory Authority over Independent Agencies*, 109 Geo. L.J. 637 (2021) ........................................... 12

Gary Richardson & David Wilcox, *How Congress Designed the Federal Reserve to be Independent of Presidential Control*, 39 J. of Econ. Persp. 221 (2025) ................................... 10

Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1 (2021). ........................................ 11, 12

**INTRODUCTION**

Federal Reserve Board Governor Lisa D. Cook seeks an emergency temporary restraining order to prevent implementation of President Trump's August 25, 2025 *Truth Social* post unlawfully purporting to remove her from her position as a Federal Reserve Board Governor.  The President's effort to terminate a Senate-confirmed Federal Reserve Board member is a broadside attack on the century-old independence of the Federal Reserve System. As one editorial described, it represents a blatant "grab for power in defiance of the nation's laws, and if it succeeds, it will be to the detriment of the nation's interests."[2]

Governor Cook is likely to succeed on the merits of her claims that President Trump's purported firing violated her statutory and constitutional rights.  If the President's unlawful decree were allowed to stand, the Board of Governors of the Federal Reserve System would be forced to effectuate President Trump's unlawful attempted termination of Governor Cook, in violation of both the Federal Reserve Act (12 U.S.C. § 242) and the Due Process Clause of the Fifth Amendment.  Governor Cook will succeed at showing irreparable harm, as President Trump's unprecedented actions threaten her Senate-confirmed position on the Board, and her ability to fulfill her duty to promote maximum employment and price stability.  Finally, the equities and public interest both weigh in favor of keeping Governor Cook in her position, as her purported firing would jeopardize the independence of the Federal Reserve, and ultimately, the stability of our nation's financial system.

Accordingly, Governor Cook moves for an immediate TRO (1) declaring that President Trump's August 25, 2025 attempted firing of Governor Cook is unlawful under the Federal Reserve Act and the Due Process Clause of the Fifth Amendment, and that Governor Cook is still

---

[2]  Editorial, *Where's Your Evidence, Mr. President?*, N.Y. Times (Aug. 27, 2025), https://www.nytimes.com/2025/08/26/opinion/politics/trump-fed-independence-lisa-cook.html.

1

a member of the Federal Reserve Board; and (2) enjoining Defendants the Federal Reserve Board of Governors, collectively and/or individually, and Chairman Jerome Powell from effectuating in any manner the illegal purported removal of Governor Cook from her position or in any way treating her as having been removed, or denying or obstructing her in accessing any of the benefits or resources of her Board position.

**BACKGROUND**

I.   **The Structure and History of the Federal Reserve Act Illustrate the Importance of the Independence of the Federal Reserve.**

The Federal Reserve System was established by the Federal Reserve Act ("FRA") in 1913 to provide the nation with a safer, more flexible, and more stable monetary and financial system. As articulated by the Supreme Court in *Trump v. Wilcox*, "[t]he Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States." 145 S. Ct. 1415, 1415 (May 22, 2025) (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 222 n.8 (2020)). The intent that the Federal Reserve retain independence has been reinforced by statutory amendments to the FRA in 1935, 1977, and 2010.

The Board of Governors of the Federal Reserve is the seven-member governing body of the Federal Reserve System—made up of the chairperson plus six Governors—responsible for setting monetary policy, supervising and regulating banks, and maintaining financial stability. The Governors, who are appointed by the President and confirmed by the Senate, serve staggered 14-year terms. The long and staggered term procedure reinforces the independence of the Board.

An independent and credible Federal Reserve is essential for a stable economy, as the short-term political interests of a president often clash with sound monetary policy. An independent central bank acts predictably and transparently, which stabilizes markets and the wider economy.

A politically insulated Board of Governors can make appropriate, albeit unpopular, decisions—such as raising interest rates to combat inflation—that are crucial for the nation's long-term financial health.

The independence of the Federal Reserve is supported by several statutory provisions that shield the Board of Governors from political interference.  Such statutory provisions intended to insulate the Board of Governors from outside influence include: the Board's funding outside the annual appropriations process;[3] the Board's authority to set all terms and conditions of Board employment;[4] the Board's exemption from Government Accountability Office audits of its monetary policy decisions;[5] the Board's authority to litigate independently;[6] the Board's ability to present legislative recommendations and testimony to Congress without executive branch approval;[7] the exemption of the Board's monetary policy decisions from the Congressional Review Act;[8] and the Board's authorization to participate directly in certain international fora without executive branch intermediation.[9]

---

[3] *See, e.g.*, 12 U.S.C. §§ 243, 244.

[4] 12 U.S.C. § 244.

[5] *See, e.g.*, 12 U.S.C. § 3910 (exempting from GAO audits of the Board and Reserve Banks, *inter alia*, discussions or communications relating to monetary policy matters, transactions under the direction of the FOMC, or transactions with foreign central banks); 31 U.S.C. § 714(b) (same).

[6]  *See, e.g.*, 12 U.S.C. § 248(p).

[7] 12 U.S.C. § 250 (prohibiting any "officer or agency of the United States" from requiring the Board "to submit legislative recommendations, or testimony, or comments on legislation, to any officer or agency of the United States for approval, comments, or review, prior to . . .  submitting them to Congress").

[8] 5 U.S.C. § 807 (exempting "rules that concern monetary policy proposed or implemented by the Board" and FOMC from the Congressional Review Act).

[9] *See, e.g.*, 12 U.S.C. § 3907(b)(3)(C), 12 U.S.C. § 3911, 12 U.S.C. § 5373(c), 22 USC § 9522 note.

II.    **The Federal Reserve Act's "For Cause" Removal Provision Protects the Independence of the Board of Governors.**

The crucial independence of the Board of Governors is guarded by the Federal Reserve Act's "for cause" removal provision, which prevents the President from firing a Governor except for instances of inefficiency, neglect of duty, malfeasance in office, or comparable conduct.  The FRA expressly provides that

> Upon the expiration of the term of any appointive member of the Federal Reserve Board in office on August 23, 1935, the President shall fix the term of the successor to such member at not to exceed fourteen years, as designated by the President at the time of nomination, but in such manner as to provide for the expiration of the term of not more than one member in any two-year period, and thereafter each member shall hold office for a term of fourteen years from the expiration of the term of his predecessor, unless sooner removed *for cause* by the President.

12 U.S.C. § 242 (emphasis added).

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court unanimously upheld the constitutionality of such statutory protections for government officials serving on multi-member agencies.  In *Humphrey's Executor*, the Court found that Congress has the authority to restrict Presidential removal "depend[ing] upon the character of the office." *Id.* at 631. Specifically, the Court held "for cause" removal restrictions were deemed constitutional with respect to officers at the FTC; in reaching this conclusion, the Court noted the FTC's structure as (a) "a body of experts," (b) with long, staggered terms, (c) that was designed to be "nonpartisan" and act "with entire impartiality."  *Id.* at 624–25.

The Supreme Court recently made clear that the analysis in *Humphrey's Executor* applies with particular force to the Federal Reserve.  In a case about the President's removal of a member of the National Labor Relations Board ("NLRB") and a member of the Merit Systems Protection Board ("MSPB"), the Court permitted the removals to take effect but specifically distinguished

the removal protections for Federal Reserve Governors.  As the Supreme Court's decision in *Trump v. Wilcox* makes clear, the Federal Reserve's structural safeguards function to preserve the historical tradition of an independent central bank.  145 S. Ct. at 1415.  The "for cause" statutory removal provision provided by the FRA is essential to protecting this independence.

**FACTUAL BACKGROUND**

Governor Cook is a distinguished economist with a background in academia, policy, and research.  She holds a Ph.D. in economics from the University of California, Berkeley, with a focus on macroeconomics and international economics.  She received a BA in philosophy from Spelman College. As a Marshall Scholar, she received a second BA in philosophy, politics, and economics from Oxford University.

Prior to her appointment to the Board, Governor Cook was a professor of economics and international relations at Michigan State University, a research associate at the National Bureau of Economic Research, a member of the faculty of Harvard University's Kennedy School of Government, and a National Fellow at Stanford University, among other academic positions. She served as a senior economist on the Council of Economic Advisers under President Barack Obama from August 2011 to August 2012.  She was a senior adviser on finance and development in the U.S. Department of Treasury's Office of International Affairs from September 2000 to September 2001.

She has previously directed the American Economic Association's Summer Program for disadvantaged students from 2018 to 2021 and was elected a member of the American Economic Association's Executive Committee in 2019.

**PROCEDURAL HISTORY**

On January 14, 2022 President Joseph R. Biden nominated Governor Cook to fill an unexpired seat on the Board of Governors ending in January 2024. She was confirmed by the Senate on May 10, 2022 and thereafter began serving on the Federal Reserve Board, based in Washington D.C. She was subsequently renominated by President Biden and confirmed by the Senate in September 2023 for an additional, full 14-year term as Governor. Governor Cook is the first Black woman to sit on the Federal Reserve's Board in its 111-year history.

President Trump has repeatedly chastised the Federal Reserve for refusing to lower interest rates, posting on *Truth Social* that the "Fed should cut Rates by 3 Points" and should "Bring down the Fed Rate, NOW!!!"[10] As recently as August 19, 2025, President Trump posted on *Truth Social*, "Could somebody please inform Jerome 'Too Late' Powell that he is hurting the Housing Industry, very badly? People can't get a Mortgage because of him. There is no Inflation, and every sign is pointing to a major Rate Cut. 'Too Late' is a disaster!"[11]

President Trump has threatened to fire Chairman Powell for being unwilling to cut interest rates and he has publicly demanded that Chairman Powell resign.[12] On August 1, 2025, President Trump posted on *Truth Social*, "'Too Late' Powell should resign, just like Adriana Kugler, a Biden Appointee, resigned. She knew he was doing the wrong thing on Interest Rates. He should resign, also!"[13]

---

[10] Eric Revell, *Trump says Federal Reserve should lower interest rates by 3 points*, Fox Bus. (July 15, 2025), https://www.foxbusiness.com/economy/trump-says-federal-reserve-should-lower-interest-rates-3-points.

[11] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 19, 2025, 6:38 PM), https://truthsocial.com/@realDonaldTrump/115057827631877948.

[12] Christine Zhang, *How Trump's Attacks on the Fed Chair Have Intensified*, N.Y. Times (July 24, 2025), https://www.nytimes.com/interactive/2025/07/24/business/economy/trump-powell-fed-timeline.html.

[13] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 1, 2025, 6:05 PM), https://truthsocial.com/@realDonaldTrump/posts/114955773655328634.

Despite President Trump's open and clear displeasure with Chairman Powell and the Federal Reserve Board, interest rates change only when a majority of the 12-member committee votes to do so. The committee consists of the Federal Reserve chairperson, the other six members of the Board of Governors, the Federal Reserve Bank of New York president, and four other regional Federal Reserve System presidents on a rotating basis, who represent districts across the country. In 2025, at each Federal Open Market Committee (FOMC) meeting, Governor Cook has voted with Chairman Powell in electing not to lower short-term interest rates.

On August 15, 2025, Federal Housing Finance Agency ("FHFA") Director William Pulte—using social media as the vehicle to publicize his actions—sent a referral letter to Attorney General Pamela Bondi and Department of Justice Special Attorney Edward Martin, Jr., accusing Governor Cook of mortgage fraud. Director Pulte's letter alleged that Governor Cook "appears" to have claimed two different homes as her main residence in 2021 to "potentially" get lower interest rates and better loan terms. Director Pulte publicly released his referral letter on August 20, 2025, without notice to Governor Cook.[14] Governor Cook was never provided with any opportunity to respond to the allegations before the referral was made to DOJ.

The same day that Director Pulte publicly released the referral letter to DOJ, President Trump posted on his *Truth Social* page, "Cook must resign, now!!!" and linked a *Bloomberg* news story about Director Pulte's referral letter.[15] Two days after Director Pulte released his referral letter, President Trump stated he would fire Governor Cook if she did not resign, telling reporters, "[w]hat she did was bad. So I'll fire her if she doesn't resign."[16]

---

[14] Bill Pulte (@pulte), X (Aug. 20, 2025, 8:05 AM), https://x.com/pulte/status/1958138434171629636.

[15] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 20, 2025, 8:31 AM), https://truthsocial.com/@realDonaldTrump/posts/115061104213677946.

[16] Kevin Breuninger, *Trump Says He'll Fire Fed Governor Lisa Cook 'If She Doesn't Resign'*, CNBC (Aug. 22, 2025), https://www.cnbc.com/2025/08/22/trump-fire-fed-lisa-cook-powell.html.

On the evening of August 25, 2025, just five days after Director Pulte released the referral letter, President Trump did what he promised, signed and publicly posted a two-page letter on *Truth Social* addressed to Governor Cook that purported to fire her from the Board of Governors of the Federal Reserve, "effective immediately" and without legitimate cause, not alleging any misconduct by Governor Cook in her official capacity, but relying on the unsubstantiated allegation in Director Pulte's letter.[17]  Governor Cook, along with the rest of the world, learned of her purported firing for the first time from the President's social media post.

The following day, August 26, 2025, President Trump publicly discussed his unilateral action to allegedly fire Governor Cook, telling reporters if she had done her "job properly, we wouldn't have problems like Lisa Cook," and adding, "I think we have to have lower interest rates, yes."  When asked about the referral allegations, President Trump stated, "she *seems* to have had an infraction, and she can't have an infraction. Especially that infraction because she's in charge of, if you think about it, mortgages, and we need people that are 100 percent above-board, and it doesn't seem like she was."[18]  Governor Cook was never provided any opportunity to address or correct the unsubstantiated claims leveled against her by Director Pulte and President Trump.

**LEGAL STANDARD**

To obtain a temporary restraining order, a movant must demonstrate "(1) [she] is likely to succeed on the merits; (2) [she] is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in [her] favor; and (4) the issuance of a preliminary injunction is in the public interest." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quotation marks and citation omitted).

---

[17]  Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 25, 2025, 8:02 PM), https://truthsocial.com/@realDonaldTrump/posts/115092130707196133.

[18] The White House, *President Trump Participates in a Cabinet Meeting, Aug. 26, 2025* at 02:50, YouTube (Aug. 26, 2025), https://www.youtube.com/live/inRXd4OWt2M (emphasis added).

ARGUMENT

**I.     Governor Cook Has a Substantial Likelihood of Success on the Merits.**

**A.  Defendants Violated the Federal Reserve Act.**

Defendants violated the FRA by attempting to remove Governor Cook without any cognizable "cause" under 12 U.S.C. § 242. The "for cause" removal protection guaranteed by the FRA, which has been the bulwark of the Federal Reserve's independence for most of the past century, prevents the President from firing a Federal Reserve Board member except for "cause," meaning inefficiency, neglect of duty, malfeasance in office, or comparable misconduct. But here, the President has relied on a thinly-veiled pretext in an attempt to remove Governor Cook over her unwillingness to lower interest rates. And even if the President had been more careful in obscuring his real justification for targeting Governor Cook, the rationale that the President concocted—an unsubstantiated allegation that Governor Cook "may have" or "seems" to have erred in filling out a mortgage form in her capacity as a private citizen—does not amount to "cause" for removal within the meaning of the FRA. There is no conceivable interpretation of "for cause" removal protection that would allow the President to fire Governor Cook, either for his true motive or the pretextual one he has invented.

The prevailing understanding of "for cause" removal protection has long been anchored to "the *Humphrey's Executor* standard of 'inefficiency, neglect of duty, or malfeasance in office.'" *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 487 (2010) (quoting *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935)).  To be sure, the FRA does not expressly define "for cause."[19]  But the context surrounding the FRA's 1935 overhaul

---

[19] In interpreting the U.S. Securities and Exchange Commission's governing act, which also does not define cause, the Supreme Court and this Court have assumed the applicability of the "inefficiency, neglect of duty, or malfeasance in office" standard.  *See Free Enterprise Fund*, 561

indicates that "for cause" must be interpreted with the "inefficiency, neglect of duty, or malfeasance in office" ("INM") standard of *Humphrey's Executor* as a benchmark. Congress modified the FRA to insert the phrase "for cause" as part of the Banking Act of 1935, which the Senate debated at the same time the Supreme Court was hearing argument in *Humphrey's Executor*. *See* Gary Richardson & David Wilcox, *How Congress Designed the Federal Reserve to be Independent of Presidential Control*, 39 J. of Econ. Persp. 221, 229 (2025). "Senators and witnesses discussed [*Humphrey's Executor* and *Myers v. United States*, 272 U.S. 52 (1926)] . . . . Most thought . . . the Senate should wait for the court to hand down its decision in *Humphrey's Executor* before finalizing the language in the [Banking Act of 1935] legislation." *Id.*

Ultimately, Congress did wait for the Court before amending the FRA. In May 1935, the Court published its decision in *Humphrey's Executor*, which confirmed the constitutionality of INM removal restrictions, expressly holding that Congress had the authority to "forbid the[] removal" of certain officers by the President "*except for cause*," 295 U.S. at 629 (emphasis added). Three months later, Congress passed the Banking Act of 1935 to provide that the President could not remove Federal Reserve Board members except "for cause." 12 U.S.C. § 242. Because Congress's fundamental understanding of "cause" in 1935 was informed by the INM protections at issue in *Humphrey's Executor*, "for cause," within the meaning of the FRA, should be interpreted to encompass only INM and similar misconduct.

The unsubstantiated allegations leveled against Governor Cook do not amount to any inefficiency, neglect of duty, or malfeasance in office, and the President has not claimed otherwise. Nor do they constitute comparable misconduct. The INM standard refers to a confined set of

---

U.S. at 487; *SEC v. Bilzerian*, 750 F. Supp. 14, 16 (D.D.C. 1990) (citation omitted) ("[I]t is generally accepted that the President may remove a commissioner for inefficiency, neglect of duty, or malfeasance in office.").

offenses that are entirely distinct from the conduct of which Governor Cook has been accused. "When Congress first used the now-talismanic INM phrase in 1887, it defined these circumstances using terms that were already well-known." Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 6 (2021). "Inefficiency" was a term "to describe wasteful government administration caused by inept officers who gained their positions through political connections rather than merit." *Id.* "Neglect of duty indicated instances of 'nonfeasance'—a failure to perform one's duties in a way that caused injury to others." *Id.* And malfeasance in office "referred to a wrongful act committed *in the execution of one's duties* that caused injury to others." *Id.* (emphasis added).

The INM standard historically "gave the President removal power, not so the President might direct the commissions, but so there would be a ready alternative to impeachment." *Id.* at 7. Congress intended to create removal protections for term-limited officers that resembled those afforded to judges serving with life tenure. "This was how judges and scholars understood removal statutes when the Court decided *Humphrey's Executor*. And this was how legislators continued to understand these provisions when they drafted the Federal Reserve Act." *Id.* Plainly, "the law was not designed to permit the President to remove the heads of independent agencies for inefficiency or neglect of duty if they do not follow presidential policy directives or if they depart from the President's agenda." *Id.* at 8. But President Trump seeks permission to do just that: remove Governor Cook because she has departed from his agenda over interest rates.[20]

---

[20] Even if the President's authority to remove a Board member "for cause" encompasses circumstances beyond "inefficiency, neglect of duty, or malfeasance in office," the President does not have the power to unilaterally define "cause" and conclude, without evidence, that he has found it. Jane Manners and Lev Menand, the leading scholars in this realm, have asserted that "for cause" language "is best interpreted to encompass any of the recognized removal causes contained in the U.S. Code, including INM, immorality, ineligibility, offenses involving moral turpitude, and *conviction of a crime*." Manners & Menand, *The Three Permissions: Presidential Removal and*

The President's theory of "cause" has no limiting principle.  It would allow him to remove any Federal Reserve Board member with whom he disagrees about policy by accusing them—or having one of his allies within the administration accuse them–of anything he invents.  If this understanding of "cause" were correct, the statutory guarantee that has safeguard the Federal Reserve's independence for the past century would be reduced to an empty formality.  "[I]f Mr. Trump prevails, he will essentially control the FOMC because he will then be able to fire other board members at will, and the board can fire Fed regional bank presidents on the committee." Editorial, *What if Trump Runs the Federal Reserve?*, Wall St. J. (Aug. 26, 2025), https://www.wsj.com/opinion/donald-trump-lisa-cook-federal-reserve-fhfa-decd3fe6.

The President has no statutory authority to remove Governor Cook over a policy disagreement, which is the real reason he seeks her departure.  "Strictly as a matter of statutory interpretation, if the [INM] standard means anything, it means that the President cannot discharge a member of an independent agency simply because he disagrees with the agency's conclusions about policy or fact."  Cass Sunstein & Adrian Vermeule, *Presidential Review: The President's Statutory Authority over Independent Agencies*, 109 Geo. L.J. 637, 648 (2021).  President Trump has not been shy in commanding Governor Cook and other members of the Federal Reserve Board to lower interest rates or face consequences.  Since April 2025, the President has repeatedly issued public statements demanding that Chairman Powell resign over his unwillingness to lower interest rates. And when that public pressure campaign went nowhere, the President—with the help of Director Pulte—devised a plot to fire Chairman Powell, potentially through the pretextual justification of "fraud."  In July 2025, Director Pulte reportedly gave President Trump a draft of a letter firing Chairman Powell, which President Trump showed off during a meeting with

---

*the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. at 6 (emphasis added).  Neither the President's pretextual justification nor his real one fall within any of these categories.

lawmakers.[21]  Around the same time, on July 16, 2025, Director Pulte posted on *X* that renovations to the building that houses the Federal Reserve are "riddled" with fraud, and President Trump stated that Chairman Powell could potentially be fired for that "fraud," noting that "I mean it's possible there's fraud involved with the $2.5 billion renovation" of the Federal Reserve building.[22]

The President's attempt to remove Governor Cook, who throughout 2025 has consistently voted with Chairman Powell in declining to lower interest rates, marks the implementation of the same pretextual plot with a minor twist.  This time, instead of accusing Chairman Powell of "fraud" in his role as Federal Reserve Chairman, Director Pulte and the President have decided to accuse Governor cook of "potential" fraud in her role as a private citizen.  But those unsubstantiated allegations cannot camouflage the President's real reason for attempting to remove Governor Cook: he disagrees with her policy decisions.  This does not constitute "cause" within the meaning of the FRA.

Setting aside the fact that the President's purported "cause" for firing Governor Cook is invalid because it is nakedly pretextual, the President's proffered justification for firing Governor Cook would not constitute "cause" within the meaning of the FRA even if it were his true motive. This Court need not define the precise contours of legitimate "cause," but it is enough to say that bare allegations of "potential" mortgage fraud—in one's capacity as a private citizen years before taking office, nonetheless—fall woefully short.

Here, however, the President has pointed to nothing more than an unsubstantiated allegation in a general referral letter sent by Director Pulte – no investigation, no evidence, not even a formal charge to support his allegations.  Remarkably, the President and Director Pulte have

---

[21] Maggie Haberman & Colby Smith, *Trump Has Draft of Letter to Fire Fed Chair. He Asked Republicans if He Should Send It.*, N.Y. Times (July 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/trump-powell-firing-letter.html.
[22] *Id.*

not even asserted unambiguously that Governor Cook actually committed a crime. Director Pulte's referral to the Department of Justice states only that Governor Cook "potentially" committed mortgage fraud.

This cannot suffice. To begin with, the "potential[ity]" that Governor Cook mislabeled a home's purpose on a mortgage application well before her Board appointment without any allegation of its intentionality or materiality would not be the type of "offense" that would constitute "cause." Then, allowing such a charge to be the basis for Presidential action with no investigation, substantiation, formal charge or court finding could hardly be enough evidence on which a "cause" firing could occur. And, as explained below, due process protections entitle an officeholder to notice and a hearing to contest whatever evidence was presented.

Consequently, neither the type of "offense" the President cited nor the threadbare evidence against Governor Cook would constitute "cause" for removal even if the President's allegations were true—which they are not. After evaluating the evidence, whether an offense amounts to "cause" for removal should depend on a combination of when it occurred, whether it occurred in the performance of the officeholder's official duties, and how serious of an offense it is. The President would not have "cause" to remove a Federal Reserve Governor even if he possessed smoking gun evidence that she jaywalked in college. And here, he would not have "cause" to remove Governor Cook even if she had erred in filling out a form for a private mortgage *before* she assumed office. None of the alleged misconduct occurred during the performance of Governor Cook's duties as a Federal Board member. And the President and Director Pulte have not even alleged explicitly that Ms. Cook benefited from any clerical error, or that such an error was intentional. Even if Governor Cook had committed the infractions that the President alleges— which she did not—the President would lack "cause" to remove her under 12 U.S.C. § 242.

If the "distinct historical tradition"[23] of the Federal Reserve means anything, it is that the President cannot rely on brute force or clever shortcuts to circumvent Congress to bend the institution to his will.  History provides no sanction for an attempt to short-circuit "for cause" removal protections by conjuring up unfounded allegations of past wrongdoing.

That the President says he has found a "cause" does not magically make it so.  If the President and his allies can create "cause" by leveling pretextual and unfounded allegations of wrongdoing, then the protections of 12 U.S.C. § 242 are entirely meaningless. Under bedrock principles of statutory construction, this Court cannot adopt an interpretation of "for cause" that would "in practical effect render [statutory language] entirely superfluous in all but the most unusual circumstances."  *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).  Under the President's limitless conception of "cause," the removal protections that Congress afforded to Federal Reserve Board members would be reduced to a nullity.  And upon their erasure, the Federal Reserve's near-century of independence would be relegated to the ash heap of history.

### B. Defendants Violated Governor Cook's Fifth Amendment Due Process Rights and Statutory Right to Notice and a Hearing.

President Trump deprived Governor Cook of her procedural rights under both the Fifth Amendment and the Federal Reserve Act by purportedly "firing" her without notice or a hearing. The Fifth Amendment's Due Process Clause guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Here, President Trump has attempted to deprive Governor Cook of her property interest in her position as a Governor on the Federal Reserve Board without providing any process whatsoever.

There is no doubt that Governor Cook has a property right in her continued employment as a Governor on the Federal Reserve Board.  The Federal Reserve Act establishes that right by

---

[23] *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (May 22, 2025).

providing that Board members may not be fired without "cause." 12 U.S.C. § 242. The Supreme Court has expressly stated that where a statute provides a public employee with for cause removal protection, the employee possesses a property interest in her continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The D.C. Circuit recently reiterated the ongoing viability of this precise property interest. *See Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) ("[A] property interest exists if the employee can 'be removed only for cause.'") (quoting *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008)).

Because Governor Cook possesses a property interest in her position on the Board, the Due Process Clause guarantees that she cannot be removed without—at a minimum—"oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Loudermill*, 470 U.S. at 546. And critically, both the Supreme Court and D.C. Circuit have instructed that any such hearing must take place "*prior* to the discharge of an employee." *Loudermill*, 470 U.S. at 542 (emphasis added); *Esparraguera*, 101 F.4th at 40 ("Our cases are clear that, absent exigent circumstances not implicated here, the Due Process Clause requires, at minimum, that the government provide notice and some kind of hearing *before* final deprivation of a property interest.") (internal citation and quotation marks omitted) (emphasis in original).

Governor Cook received neither notice nor a hearing before her purported "firing." Instead, she found out about the attempt to remove her through President Trump's *Truth Social* post, which contained a letter addressed to Governor Cook stating that "you are hereby removed from your position on the Board of Governors of the Federal Reserve, *effective immediately*"[24] (emphasis added). Regardless of the factual basis underpinning the attempt to remove an employee with for

---

[24] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 25, 2025, 8:02 PM), https://truthsocial.com/@realDonaldTrump/posts/115092130707196133.

cause protection (and here, there is nothing more than an unsubstantiated allegation that Governor

Cook filled out a form incorrectly), the Supreme Court has explained that

> Some opportunity for the employee to present [her] side of the case is recurringly
> of obvious value in reaching an accurate decision. . . . Even where the facts are
> clear, the appropriateness or necessity of the discharge may not be; in such cases,
> the only meaningful opportunity to invoke the discretion of the decisionmaker is
> likely to be before the termination takes effect.

*Loudermill*, 470 U.S. at 543 (internal citations omitted).  Governor Cook was never afforded notice

or the opportunity to present her side of the case.  She was therefore deprived of her constitutional

right to due process under the Fifth Amendment.

Governor Cook's purported termination without notice and a hearing also violated her

statutory rights to these same protections under the FRA.  The Supreme Court has recognized that

"for cause" removal protections also create a *statutory* right to notice and a hearing.  *See Reagan*

*v. United States*, 182 U.S. 419, 425 (1901) ("[W]here the term of office is for a fixed period, notice

and hearing are essential."); *Shurtleff v. United States*, 189 U.S. 311, 314 (1903) ("It must be

presumed that the President did not make the removal for any cause assigned in the statute, because

there was given to the officer no notice or opportunity to defend.").  The President's attempt to

remove Governor Cook violates the procedural protections of the FRA, as the statute's inclusion

of "for cause" removal protection—a term of art—conferred in Governor Cook a statutory right to

notice and a hearing.  The President attempted to terminate her without even the pretense of either.

## II.    Governor Cook Will Suffer Irreparable Harm Absent Relief.

Emergency relief is necessary because, without it, Governor Cook is at the threshold of

suffering irreparable injury from Defendants' conduct—depriving her of her Presidentially-

appointed and Senate-confirmed role as a Federal Reserve Board Governor.  *See Berry v. Reagan*,

1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983).

Further highlighting the irreparable nature of Governor Cook's harm, during a Cabinet meeting on

August 26, 2025, President Trump said he has already named a group of candidates to replace her.[25]  Without emergency relief, Defendants are now likely to allow an unexpired vacancy to occur for which President Trump has indicated he is ready to fill.

President Trump's unlawful attempt to remove Governor Cook will also cause irreparable harm to her efforts as Governor to preserve the independence of the Federal Reserve Board.  *See Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) ("An integral part of the federal government, the Board conducts monetary policy, regulates banking institutions, and maintains the stability of the nation's financial system."). President Trump is already touting that the Federal Reserve Board "will have a majority very shortly" of members he has selected.[26]  President Trump's statements and actions are undermining the public's perception of the Federal Reserve as independent, directly threatening its mission of providing stability.  As the Supreme Court recognized in *Humphrey's Executor*, the "coercive influence of [at-will removal power] threatens the independence of a commission."  295 U.S. at 630.  Governor Cook was duty-sworn to maintain that independence.

To demonstrate irreparable harm, a moving party must satisfy two requirements.  *Radio Free Europe/Radio Liberty, Inc. v. Lake*, 772 F. Supp. 3d 79, 85 (D.D.C. 2025). "First, the harm must be certain and great, actual and not theoretical, and so imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (citations and quotation marks omitted).  "Second, the harm must be beyond remediation."  *Id.* (citations and quotation marks omitted).  Here, as in *Radio Free Europe/Radio Liberty, Inc.*, the harm movant currently faces is "great, actual and not theoretical" and is exceedingly imminent.  *Id.*

---

[25] CNBC, *President Trump holds a cabinet meeting at the White House — 8/26/2025*, YouTube at 02:32 (Aug. 26, 2025), https://www.youtube.com/watch?v=cbEPqUdelFo.
[26] CNBC, *President Trump holds a cabinet meeting at the White House — 8/26/2025*, YouTube at 02:33 (Aug. 26, 2025), https://www.youtube.com/watch?v=cbEPqUdelFo.

18

This Court has repeatedly "recognized irreparable harm in similar cases 'involving the removal of individuals appointed to independent, multimember boards based on the[ir] unlawful removal from office by the President and the obviously disruptive effect that such removal has on the organization's functioning.'" *Harper v. Bessent*, 2025 WL 2049207, at *13 (D.D.C. July 22, 2025) (quoting *LeBlanc v. U.S. Priv. & Civ. Lib. Oversight Bd.*, 2025 WL 1454010, at *30 (D.D.C. May 21, 2025)) (internal quotation marks and citation omitted). Irreparable harm in cases of removal of individuals appointed to independent boards is based on "the[ir] 'unlawful removal from office by the President' and 'the obviously disruptive effect' that such removal has on the organization's functioning." *Wilcox v. Trump*, 775 F. Supp. 3d 215, 235 (D.D.C. Mar. 6, 2025) (quoting *Berry*, 1983 WL 538, at *5); *see LeBlanc*, 2025 WL 1454010, at *28–33 (finding that plaintiffs had established irreparable harm via the threat of being removed as members of the U.S. Privacy and Civil Liberties Oversight Board). Here, President Trump's unlawful attempt to remove Governor Cook is causing her, and her ability to carry out her oath to protect the Federal Reserve, and subsequently, our nation's economy, irreparable harm.

### III.    The Balance of the Equities and Public Interest Favor Governor Cook.

The proper and independent functioning of the Federal Reserve Board, and the economic stability that it provides, is plainly in the public interest. The Federal Reserve board "serve[s] the public interest by providing the nation with a stable financial situation and by setting and implementing monetary policy." *TNB USA Inc. v. Fed. Reserve Bank of N.Y.*, 2020 WL 1445806, at *1 (S.D.N.Y. Mar. 25, 2020) (internal citation omitted). The D.C. Circuit has recognized the importance of the Federal Reserve's independence:

> The independence of financial regulators remains a prominent pattern today. The Federal Reserve Board is led by governors who can be removed only for cause during their fourteen-year terms. 12 U.S.C. § 242. The reason is simple: The Federal Reserve must "provide for the sound, effective, and uninterrupted operation of the banking system," and Congress found that a degree of independence was needed to "increase the ability of the banking system to promote stability." H.R. Rep. No. 74-742, at 1 (1935). By insulating the Board from *presidential control and political pressures*, Congress sought to ensure that the Federal Reserve would "reflect, not the opinion of a majority of special interests, but rather the well considered judgment of a body that takes into consideration all phases of national economic life.

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 92 (D.C. Cir. 2018) (internal citation omitted) (emphasis added). Here, President Trump's actions amount to the exact "presidential control and political pressures" from which Congress intended to insulate the Board. *Id.* The public interest favors maintaining the very stability that the Federal Reserve was created to preserve, at least until the novel issues presented by Governor Cook's attempted "firing" can be properly adjudicated.

The market's immediate reaction to President Trump's attempt to fire Governor Cook only underscores the strength of the public's interest in the Federal Reserve Board's independence. Shortly after President Trump announced his purported firing of Governor Cook, the dollar weakened against major currencies.[27] Long-dated U.S. Treasuries also fell.[28] As four former chairs of the Federal Reserve Board explained in a joint article in 2019:

> [R]esearch has shown that monetary policy based on the political (rather than economic) needs of the moment leads to worse economic performance in the long run, including higher inflation and slower growth. Even the perception that monetary-policy decisions are politically motivated, or influenced by threats that policy makers won't be able to serve out their terms of office, can undermine public

---

[27] *See* Laura Matthews & Jaspreet Kalra, *Dollar Weakens As Trump's Move To Fire Fed Governor Spooks Investors*, Reuters (Aug. 26, 2025), https://www.reuters.com/world/middle-east/dollar-weakens-trumps-move-fire-fed-governor-spooks-investors-2025-08-26/.

[28] *See* Ruth Carson et al., *Long US Bonds Fall as Threat to Fed's Cook Spurs Inflation Worry*, Bloomberg (Aug. 26, 2025), https://www.bloomberg.com/news/articles/2025-08-26/dollar-falls-with-treasuries-as-trump-seeks-to-oust-fed-s-cook.

confidence that the central bank is acting in the best interest of the economy. That can lead to unstable financial markets and worse economic outcomes.

Paul Volcker, Alan Greenspan, Ben Bernanke & Janet Yellen, *America Needs an Independent Fed*, Wall St. J. (Aug. 5, 2019), https://www.wsj.com/articles/america-needs-an-independent-fed-11565045308.[29]

The public's interest in financial stability and economic prosperity is not the only interest weighing against the President's attempted firing of Governor Cook. Another "public interest" is protecting Congress's express desire to maintain the Federal Reserve Board's independence. As Justice Kagan recently articulated

> [T]he relevant interest is not the 'wrongfully removed officer[s'],' but rather Congress's and, more broadly, the public's. What matters, in other words, is not that [an officeholder] would love to keep serving in [her] nifty job[]. What matters instead is that Congress provided for [her] to serve [her] full term[], protected from a President's desire to substitute his political allies.

*Trump v. Wilcox*, 145 S. Ct. at 1420 (Kagan, J., dissenting). Through the Federal Reserve Act, Congress expressed its clear will that Federal Reserve Board members be free from political interference. That is the interest that President Trump's attempted firing has imperiled.

The countervailing interest at stake, which President Trump seems to openly admit, is his desire to control the country's central bank. But that has never been within the scope of the President's power. "[T]he Fed's most important responsibility is administration of the money supply," (and resultingly, interest rates) and "unlike law enforcement, administration of the money supply is not an executive function – so the Fed's independence does not offend the traditional

---

[29] Additionally, several editorials published in U.S. newspapers since President Trump's August 25 letter was released clearly support and demonstrate that relief for Governor Cook is in the public interest. *See, e.g.*, Editorial, *Where's Your Evidence, Mr. President?*, N.Y. Times (Aug. 26, 2025); Editorial, *What if Trump Runs the Federal Reserve?*, Wall St. J. (Aug. 26, 2025); Editorial, *Here Are The Consequences Of A President Politicizing The Fed*, Wash. Post (Aug. 26, 2025); *see also* Janet Yellen, *Trump's Attack on the Fed Threatens US Credibility*, Finan. Times (Aug. 27, 2025).

principle that all executive power is vested in the President." *Consumers' Rsch. v. CPSC*, 98 F.4th 646, 656 (5th Cir. 2024) (Oldham, J., joined by seven other judges, dissenting from denial of rehearing en banc).   As DOJ recently conceded in trying to defend the President's firings of board members of a different agency:

> The early Congresses further provided that the Banks of the United States—like the Federal Reserve—would have a degree of insulation from the President's control. Congress provided that all of the First Bank's directors and 80% of the Second Bank's directors would not be subject to presidential removal at all, while the Federal Reserve Governors may be removed by the President only 'for cause.'  The Banks of the United States and their successor in the Federal Reserve represent a unique institution with a unique history and background.  Its historical pedigree cannot be generally extrapolated to other federal entities.

*Harris v. Bessent*, No. 25-5037, Reply Br. for Appellants at 15 (D.C. Cir. Apr. 11, 2025) (internal citations omitted).  The Government should have to live by its words argued to the Court from just four months ago.

The President has no legitimate interest in manipulating the composition of the Federal Reserve Board so that he can dictate interest rates.  As the Supreme Court recently reiterated, "[t]he Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States."  *Trump v. Wilcox*, 145 S. Ct. at 1415. The President seeks to upend that tradition.  Governor Cook asks only that the Court preserve the status quo, as such relief would vindicate important equities and public interests, while imposing a *de minimis* burden on the President, who seeks to exercise power outside of his Article II and statutory authority, and will soon enough have an opportunity to present his case and seek to defend his unprecedented conduct.

**CONCLUSION**

In light of President Trump's first-of-its kind attack on the independence of the Federal Reserve Board, and the clear and imminent harm facing Governor Cook should her removal be effectuated, Governor Cook moves for an immediate temporary restraining order (1) declaring that President Trump's August 25, 2025 attempted firing of Governor Cook is unlawful under the Federal Reserve Act and the Due Process Clause of the Fifth Amendment, and that Governor Cook is still a member of the Federal Reserve Board; and (2) enjoining Defendants the Federal Reserve Board of Governors, collectively and/or individually, and Chairman Jerome Powell from effectuating in any manner Governor Cook's purported removal from her position or in any way treating her as having been removed, or denying or obstructing her in accessing any of the benefits or resources of her Board position.


Dated: August 28, 2025                    Respectfully Submitted,

                                          */s/ Abbe David Lowell*
                                          Abbe David Lowell [Bar No. 358651]
                                          Brenna L. Frey*
                                          David A. Kolansky [DDC No. 7680722]
                                          Isabella M. Oishi [Bar No.  90018056]
                                          Jack Bolen*
                                          LOWELL & ASSOCIATES, PLLC
                                          1250 H Street, N.W., Suite 250
                                          Washington, DC 20005
                                          T: (202) 964-6110
                                          F: (202) 964-6116
                                          ALowellpublicoutreach@lowellandassociates.com
                                          BFrey@lowellandassociates.com
                                          DKolansky@lowellandassociates.com
                                          IOishi@lowellandassociates.com
                                          JBolen@lowellandassociates.com

                                          *Attorneys for Governor Lisa Cook*

Norman L. Eisen [Bar No. 435051]
Tianna J. Mays [Bar No. 90005882]
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
T: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org

*Attorneys for Governor Lisa Cook*

\* Application for admission or admission pro hac
vice forthcoming.