UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA D. COOK,** | : |
| | : |
| *Plaintiff,* | : |
| **v.** | :  No. 1:25-cv-02903-JMC |
| | : |
| **DONALD J. TRUMP,** *et al.* | : |
| | : |
| *Defendants.* | : |

## BRIEF OF *AMICI CURIAE* AZORIA CAPITAL, INC. AND JAMES T. FISHBACK IN SUPPORT OF DEFENDANT DONALD J. TRUMP

Steve Roberts
District of Columbia Bar No. 989338
Anne Marie Mackin
Texas State Bar No. 24078898
Jesse Vazquez
District of Columbia Bar No. 1657600
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
steve@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**ATTORNEYS FOR AZORIA CAPITAL INC. AND JAMES T. FISHBACK**

## AZORIA CAPITAL, INC.'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Local Civil Rule 7(o)(5) of the United States District Court for the District of Columbia, I, the undersigned, counsel for *amici curiae* make the following disclosures:

1. Azoria Capital, Inc. is a privately held corporation with no parent corporation and no publicly held corporation that owns 10% or more of its stock.

2. James T. Fishback is an individual and thus has no such disclosures.

Date: August 28, 2025

*/s/ Steve Roberts*
Steve Roberts
District of Columbia Bar No. 989338
Anne Marie Mackin\*
Texas State Bar No. 24078898
Jesse Vazquez
District of Columbia Bar No. 1657600
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
steve@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**ATTORNEYS OF RECORD FOR AZORIA CAPITAL, INC. AND JAMES T. FISHBACK**

ii

**TABLE OF CONTENTS**

AZORIA CAPITAL, INC.'s CORPORATE DISCLOSURE STATEMENT ............................... ii
TABLE OF CONTENTS.................................................................................................................iii
TABLE OF AUTHORITIES ........................................................................................................... iv
INTEREST OF AMICI..................................................................................................................... 1
INTRODUCTION ............................................................................................................................ 1
ARGUMENT.................................................................................................................................... 3
    I.    A Governor Accused of Mortgage Fraud Cannot Credibly Supervise the Financial System and the President has Removal Authority to Preserve Institutional Integrity................ 3
    II.    Forward Guidance, the Federal Reserve's Principal Monetary Tool, Depends Entirely on Credibility. ................................................................................................................................. 4
    III.    Plaintiff's Claims About Independence and Market Stability Invert the Real Risks. ........ 5
CONCLUSION................................................................................................................................. 5

## TABLE OF AUTHORITIES

**Statutes**

12 U.S.C. § 242 .................................................................................................................. 2, 3

**Other Authorities**

Alisdair McKay, Emi Nakamura & Jón Steinsson, The Power of Forward Guidance Revisited, 106 AM. ECON. REV. 3133 (2016) .................................................................................. 4

Antonios Sangvinatsos, *The Expectations Hypothesis* (Univ. of S. Cal., Marshall Sch. of Bus., Working Paper, Mar. 29, 2008), https://pages.stern.nyu.edu/~sternfin/asangvin/ExpHyp.pdf .. 4

Board of Governors of the Federal Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 28, 2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf ........................... 5

Edward Nelson, *The Emergence of Forward Guidance as a Monetary Policy Tool*, Fin. & Econ. Discussion Series, 2021-033 (Bd. of Governors of the Fed. Rsrv. Sys. 2021), https://doi.org/10.17016/FEDS.2021.033 ................................................................................. 4

Ronel Elul, Aaron Payne & Sebastian Tilson, *Owner-Occupancy Fraud and Mortgage Performance* (Fed. Rsrv. Bank of Phila., Working Paper No. 23-01, Jan. 2023), https://doi.org/10.21799/frbp.wp.2023.01 ............................................................................... 3

**INTEREST OF AMICI**[1]

Azoria Capital, Inc. ("Azoria") is an American institutional investment firm that actively manages investments in U.S. Treasury securities and interest rate derivatives. James T. Fishback Azoria's CEO, leads these efforts, drawing on his expertise in capital markets to navigate the economic impacts of monetary policy and regulatory decisions.

Azoria and Mr. Fishback have a profound interest in this case, as their business is directly and materially impacted not only by decisions of the Federal Reserve Board of Governors ("Board"), but also by the Board's integrity—both actual and perceived. Azoria's success hinges on the Board's ability to maintain market confidence through sound, impartial oversight—free from the taint of misconduct that could erode investor trust and disrupt financial flows. The President's authority to remove a Federal Reserve Governor for cause, particularly when substantiated allegations involve mortgage fraud, directly safeguards the integrity essential to our investments and the broader economy. As active market participants, Azoria and Mr. Fishback offer a unique perspective on how unchecked ethical lapses at the Board level could deter foreign investment, undermine forward guidance, and raise borrowing costs—risks that no party adequately represents.

**INTRODUCTION**

On the evening of Monday, August 25, 2025, President Donald J. Trump exercised his lawful authority under Section 10 of the Federal Reserve Act to remove Governor Lisa Cook from her post—for cause—after documentary evidence surfaced showing that she had purportedly falsified mortgage documents to secure favorable loan terms. The evidence was so serious that the

---

[1] Pursuant to Local Civil Rule 7(o)(5), counsel for *amici curiae* certifies that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

1

Director of the Federal Housing Finance Agency issued a public referral to the Department of Justice, which has confirmed an active investigation. As *amici* detailed in a legal memorandum issued the preceding Friday, attached as Exhibit A, substantiated evidence of a Governor being investigated for committing potential felonies rises to the level of justifying 'for cause' removal under the Federal Reserve Act.

While much has been written about how no President has ever before removed a Federal Reserve Governor, that is not the true anomaly here. What is truly unprecedented is the fact that a sitting Governor of the Federal Reserve System—an institution entrusted with the stewardship of the American financial system—has been publicly referred for criminal prosecution *for financial crimes*.

The complaint does not deny that this referral is real, public, and substantiated by contemporaneous documentation. Instead, it asserts that even if the conduct occurred, it is irrelevant to Governor Cook's statutory duties and thus cannot constitute "cause" for removal under 12 U.S.C. § 242. That contention not only misinterprets the text of the Federal Reserve Act, and the authority granted to the President under it, it misunderstands the nature of central banking in modern practice. The integrity of Federal Reserve Governors is not an abstract or peripheral matter. Credibility is the currency through which monetary policy works, supervisory authority commands compliance, and capital flows to U.S. markets. Integrity is not incidental to the job of a Federal Reserve Governor —it is the job.

When a Governor is referred for prosecution for the very frauds she is sworn to deter, the institution itself has become compromised. The Federal Reserve Act's plain text gives the President authority to remove such a Governor—and never has that authority been more necessary.

2

## ARGUMENT

**I.    A Governor Accused of Mortgage Fraud Cannot Credibly Supervise the Financial System and the President has Removal Authority to Preserve Institutional Integrity.**

The Federal Reserve Act provides that members of the Board of Governors serve fourteen-year terms, "***unless sooner removed for cause by the President***."[2] This language makes clear that the President has independent authority under the Federal Reserve Act to remove members of the Board of Governors if "cause" exists for removal. As explained in Exhibit A, the circumstances here merit such removal.

The Board of Governors is not a body of detached academics. It is the nation's top banking regulator. Its responsibilities include stress testing the largest financial institutions, setting capital requirements, and enforcing the Supplementary Leverage Ratio. These tasks presuppose honest mortgage underwriting and truthful borrower disclosures. The Federal Reserve Bank of Philadelphia's own analysis has concluded that occupancy fraud allows riskier borrowers to obtain credit at lower interest rates and that such loans perform substantially worse.[3]

In *amici*'s view, allowing Governor Cook to remain on the Board despite a credible criminal referral to the Department of Justice would communicate to markets and to supervised institutions that the Board holds itself to a lower standard than the banks it regulates. That double standard would erode confidence in supervisory enforcement, encourage skepticism of stress-test results, and weaken the effectiveness of regulatory oversight. The President's removal power exists precisely to prevent such an outcome. By removing Governor Cook, he worked to preserve

---

[2] 12 U.S.C. § 242 (emphasis added).
[3] Ronel Elul, Aaron Payne & Sebastian Tilson, *Owner-Occupancy Fraud and Mortgage Performance* (Fed. Rsrv. Bank of Phila., Working Paper No. 23-01, Jan. 2023), https://doi.org/10.21799/frbp.wp.2023.01.

the institution's credibility; by withholding action until such time that a criminal conviction is ascertained, the damage would already be done.

## II. Forward Guidance, the Federal Reserve's Principal Monetary Tool, Depends Entirely on Credibility.

Forward guidance is the practice by which central bankers such as Federal Reserve Governors signal their expectations for the future path of policy rates. In modern monetary policy, this communication is not ancillary but central. Extensive empirical research has shown that forward guidance influences household and market expectations about the future path of interest rates.[4] Under the "expectations hypothesis," the yield on the two-year Treasury note equals the expected federal funds rate over that period.[5] In other words, the cost of borrowing for households and businesses is influenced not just by current policy, but by what market participants believe policymakers like Federal Reserve Governors will do in the future.

When a Governor speaks, markets listen. But they do so only if they believe her. If the speaker stands credibly accused of financial fraud, the speaker's words lose power. The transmission channel that connects public statements and policy speeches to market outcomes is severed. Without credibility, forward guidance ceases to function as a policy instrument.

This matters profoundly to Americans. It means mortgage rates can jump unpredictably, small-business credit can dry up without warning, and household financial planning becomes more precarious. Stability in financial conditions depends on the credibility of those who shape expectations. A Governor who has been criminally referred to the Department of Justice—in

---

[4] Alisdair McKay, Emi Nakamura & Jón Steinsson, The Power of Forward Guidance Revisited, 106 AM. ECON. REV. 3133 (2016); Edward Nelson, *The Emergence of Forward Guidance as a Monetary Policy Tool*, Fin. & Econ. Discussion Series, 2021-033 (Bd. of Governors of the Fed. Rsrv. Sys. 2021), https://doi.org/10.17016/FEDS.2021.033.
[5] Antonios Sangvinatsos, *The Expectations Hypothesis* (Univ. of S. Cal., Marshall Sch. of Bus., Working Paper, Mar. 29, 2008), https://pages.stern.nyu.edu/~sternfin/asangvin/ExpHyp.pdf.

connection with her own mortgages—cannot provide that stability. The President's removal authority under Section 242 ensures that the Board as an institution can continue to use its most important tool effectively.

### III. Plaintiff's Claims About Independence and Market Stability Invert the Real Risks.

Plaintiff argues that removing Governor Cook threatens central bank independence and could destabilize markets. *See, e.g.*. Compl. ¶ 10. The opposite is true. Independence was designed to insulate Governors from dismissal over policy disagreements. It was never intended to immunize officials from the consequences of the kind of malfeasance that Governor Cook has been criminally referred to the DOJ over. Recent history underscores this point. The Federal Reserve tolerated Wells Fargo's pervasive and persistent misconduct for years before acting, and it admitted that supervisors failed to take forceful enough action before the collapse of Silicon Valley Bank.[6]

These supervisory failures have already weakened the Board's credibility. To now permit a Governor credibly accused of mortgage fraud to remain in office would confirm the view that the Fed selectively enforces its standards—some banks, some of the time, and never on its own officials entrusted with the awesome responsibility of overseeing supervision and setting rates that influence every mortgage, credit card, and business loan in American. That perception would do far more to shake markets than a decisive and lawful act of removal.

### CONCLUSION

President Trump's removal of Governor Cook "for cause" under 12 U.S.C. § 242 is statutorily authorized, grounded in substantiated allegations of serious misconduct that directly implicate her fitness for office. Far from eroding the Federal Reserve's independence or market

---

[6] Board of Governors of the Federal Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 28, 2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf

5

stability, this action preserves the Board's credibility—a vital interest for investors like amici. Upholding the removal serves the public interest and aligns with the FRA's text and purpose

Moreover, Governor Cook is entitled to the presumption of innocence in any criminal trial. But that presumption protects her liberty, not her tenure in high office. Nobody has a constitutional right to remain a Governor of the Board, to draw a taxpayer salary, or to cast binding votes on the trajectory of interest rates while credibly accused of conduct that strikes at the core of the Board's statutory mission.

*Amici* respectfully urge the Court to deny Plaintiff's request for Temporary Restraining Order.

Date: August 28, 2025

/s/ *Steve Roberts*
Steve Roberts
District of Columbia Bar No. 989338
Anne Marie Mackin
Texas State Bar No. 24078898
Jesse Vazquez
District of Columbia Bar No. 1657600
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
steve@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**ATTORNEYS OF RECORD FOR AZORIA CAPITAL, INC. AND JAMES T. FISHBACK**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), as incorporated by Local Rule 7(o)(5) of the United States District Court for the District of Columbia, I certify that the foregoing *amici curiae* brief complies with the applicable requirements as follows:

1. This brief contains 6 pages, excluding the parts exempted by FRAP 32(f), and does not exceed the 25-page limit under LCvR 7(o)(4).

2. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using 12-point Times New Roman font.

Date: August 28, 2025

*/s/ Steve Roberts*
Steve Roberts
District of Columbia Bar No. 989338
Anne Marie Mackin
Texas State Bar No. 24078898
Jesse Vazquez
District of Columbia Bar No. 1657600
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
steve@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**ATTORNEYS OF RECORD FOR AZORIA CAPITAL, INC. AND JAMES T. FISHBACK**

7