IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA D. COOK,

Plaintiff,

vs.

DONALD J. TRUMP, et al,

Defendants.

Civil Action
No. 1:25-CV-02903

August 29, 2025
10:00 a.m.

Washington, D.C.

---

TRANSCRIPT OF THE PROCEEDINGS
BEFORE THE HONORABLE JIA M. COBB
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: Abbe David Lowell, Esq.
LOWELL & ASSOCIATES, PLLC
1250 H St NW
Suite 250
Washington, DC 20005

For the Defendants: Yaakov M. Roth, Esq.
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, DC 20530

Joshua P. Chadwick, Esq.
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
20th & Constitution Avenue, NW
Washington, DC 20551

Court Reporter: Stacy Johns, RPR, RCR
Official Court Reporter

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription

**P R O C E E D I N G S**

DEPUTY CLERK: Your Honor, this is Civil Action 25-2903, Cook versus Trump, et al.

Will parties please come forward to the lectern, identify yourselves for the record this morning. We'll start with plaintiff's counsel first.

MR. LOWELL: Good morning, Your Honor. Abbe Lowell from Lowell and Associates on behalf of Governor Cook. Along with me are co-counsel that are on the record and have been identified to the Court.

THE COURT: Okay. Good morning, everyone.

MR. ROTH: Good morning, Your Honor. Yaakov Roth on behalf of the President. I'm here with John Bailey and Stephen Tagert.

THE COURT: Good morning.

MR. CHADWICK: Good morning, Your Honor. Joshua Chadwick on behalf of the Federal Reserve Board.

THE COURT: Mr. Chadwick, I just want to clarify, it's my understanding that you're not intending to offer any argument. You're here to the extent necessary to effectuate any potential injunctive relief, and you don't plan to weigh in on the merits separately from the DOJ; is that correct?

MR. CHADWICK: That's correct, Your Honor. Obviously, this case raises important and consequential questions, but I'll leave the argument to Mr. Roth and Mr. Lowell. But I'm of

course happy to answer any questions -- factual questions or otherwise that Your Honor may have, but not staking out legal positions today.

THE COURT: Okay. Fair enough. Before we get started, if I could just get an understanding of the plaintiff's plans for next steps in terms of scheduling. Do you intend to also file a motion for preliminary injunction?

MR. LOWELL: Yes, Your Honor. This was something that we needed to do as quickly as possible to get before you. That is our plan. And while you've asked me, I'd also point out that on my way into the courthouse today, I received a filing that the government made of 30-some-odd pages, which, to be honest, I have not had a chance to review or to incorporate. So it would be my plan, depending on the Court's schedule, to likely ask, depending on what you want, to respond to that before the Court rules.

But to answer your question --

THE COURT: Yes, that was going to be one of my requests. I do think that it would be helpful to have your response in writing to that. When do you intend to file that?

MR. LOWELL: If the Court permits, we'll try -- I would say for sure we'll do it by -- I realize Monday is a holiday. We'd do it over the weekend to get it done and file it over the weekend, if that's permissible with you.

THE COURT: You tell me.

MR. LOWELL: I will do it by the end of the weekend, for sure.

THE COURT: Okay.

MR. LOWELL: So that was one. And then in that regard as well, depending on -- and it may be that we can do what Your Honor's question sort of implies. Because the Federal Reserve Board is waiting for the Court's decision.

And so consequently, in terms of turning this into, for example, an expedited preliminary injunction set of briefs, which might include what the government filed this morning, what I'm saying is they are not taking any action today and they won't take any action until the Court rules. So the idea that we have to decide this based on the TRO, as opposed to your question as to whether we might turn this into a PI or even a summary judgment, we might be able to do that.

THE COURT: Since you're suggesting it, this case obviously raises some important questions that may be of first impressions, specifically as it relates to this Board. I have not made a judgment about irreparable harm. So I have to treat every TRO as if I need to address it immediately.

But if there is room to set an expedited schedule that allows for all parties to not be -- I know even the government wrote a very helpful brief for its position but it did so overnight. And so I certainly don't want the parties to not have time to make the arguments that they need to make.

I have questions today. But I'm also happy to set an expedited schedule for briefing this on the merits in a very short time frame, but that allows the parties to fully present their arguments.

MR. LOWELL: That, in a case like this, makes perfect sense to me, with the following understanding, however.

We came to you for a TRO.

THE COURT: Right.

MR. LOWELL: Because it was very unclear whether when the President uses his vehicle of choice, social media post, to fire somebody, that the Fed would either say that's not the way to do it or it would say it is the way to do it or to say we need to consider if it's the way to do it.

Governor Cook, we believe, is in her position as she was confirmed to be. If nobody is going to try to change that until we get the Court's decision on whatever expedition makes sense, we're satisfied to do it in the order that you just suggested.

If she has the ability to carry out her constitutional function. If she has the ability to do her job as the Governor. If nobody is locking her out of her office. If nobody is taking her salary away. If nobody is preventing her from being a governor, then we will conform to a schedule. And as I said, I don't know.

However, if the Fed decides, okay, this -- they talk

about uncertainty and it is, I understand from their position, uncertain. We don't think it's so uncertain, given the law.

But that being the case, we can do the schedule as long as we're here to preserve the status quo ante. And if we're going to preserve that, then we have the ability to conform to whatever schedule the Court wants. And I know that's a much longer-winded answer to your short question.

THE COURT: And there's a lot packed in there, including, essentially, if everyone can agree to the relief sought then we can have a briefing schedule that's longer.

MR. LOWELL: Indeed. And if that's not the case, then that's why I'm standing at your podium this morning.

THE COURT: Okay. I thought I was understanding you to say that while there is a significant time pressure, there's not an overnight time pressure.

MR. LOWELL: I feel that that's true, given what the Fed has said their position is and they're here. I think that's probably right.

THE COURT: I wasn't suggesting a months long -- I was suggesting an expedited briefing schedule over the next week or two.

MR. LOWELL: On a preliminary injunction, that would make sense.

THE COURT: Yes. Either preliminary injunction or expedited summary judgment briefing.

I actually have a lot of questions about how you propose a Court deal with the pretext issue and whether -- that does not feel like a question of law. It feels very fact based.

And so I guess my question is, does the PI motion resemble the ultimate summary judgment brief? If it's going to be the same briefs, then we might as well just do an expedited summary judgment schedule and just get the merits of the case resolved.

MR. LOWELL: For a procedural certainty for the issues that you know and are suggesting exist in this case, that would make sense.

THE COURT: Okay.

MR. LOWELL: Except for my caveat, which is the Governor has the right to remain as a Governor until such time as this Court, and then any other Court, depending on the ruling. That being the case, it may be that we move to what you just said, which is not your first question on preliminary injunction but might be an expedited summary judgment.

As you just raised, we have this phenomenon in this administration, which I am totally unused to but it's very helpful to be making these arguments, where I don't know what additional discovery on, for example, pretext I might need, because the President and the guy that carries out his orders, William Pulte, is so vocal in public about what they say that a

court or trier or fact could make the inferences necessary just from what they said, which I will get to when we get to arguing or answering your questions.

So I can't get ahead of the Court on this to tell you on a summary judgment if there's anything other than what's already out there in public that we would need to brief that.

I will do that promptly if that's the schedule we do. I've started thinking about it before I came here today because I realized that there was an issue of whether this has been a pretext from the beginning.

I don't know what else I would need.

So as we progress, Your Honor, if we can, we can figure what would be the need for any discovery when I answer your questions on the pretext part. And then we could see whether it informs your view that this should be a summary judgment or a preliminary injunction beyond 5:00 today. Does that make sense?

THE COURT: Yes. So you're going to file your written response to the government's opposition by --

MR. LOWELL: We could do it by the end of the day, to be honest. I suspect it would be more likely --

THE COURT: I'm not --

MR. LOWELL: It could be Monday.

THE COURT: You don't need to do that for my benefit. It's your motion. If you feel that you can get it in -- Monday

is a holiday, so Monday or I would say Tuesday morning.

MR. LOWELL: I would say early by the first thing on Tuesday morning.

THE COURT: Yes. If that works for you, then that works for me.

MR. LOWELL: It works for us. And I'm not uncognizant of the fact that you and everybody that is working is working, and this is supposed to be, quote, Labor Day weekend. So I think it's supposed to be the opposite of doing labor, but on the other hand, we don't mind doing the labor.

THE COURT: So maybe we'll talk scheduling at the end. But can I get the government's position or reaction to what was just said about scheduling?

MR. ROTH: Sure, Your Honor. I'm not totally sure how to react. I mean, part of what he was saying sounded like they're happy to extend it if they get a TRO in the meantime. It's not our position.

THE COURT: Okay.

MR. ROTH: It's their motion. We certainly don't have an objection to converting it to a PI motion. That might make sense, given that we have full briefing already and we'll certainly have complete briefing, it sounds like, within one business day. So treating it as a PI rather than a TRO might be sensible. We would not oppose that. If the plaintiff wants to seek expedited summary judgment, they can do that. I don't

really have a position on that.

MR. LOWELL: One more thing -- I'm sorry, Your Honor.

THE COURT: Come on up.

MR. LOWELL: One more thing to keep in mind. You did already point out what I think everybody knows. This very well may be some issues of first impression. I think you've already seen -- I think there may even have been a filing already but I haven't been able to read it -- that there are people in the country, scholars, academicians, former Board governors.

So whatever our merits argument were should also envision some schedule in which amicus may participate. This would be a case in which I think that would be helpful to the Court, certainly to the parties. These are issues in which various people who have written or teach or have actually served as governors may like to be heard.

So if we're going to do that schedule, I'd like to incorporate an idea of when something like that would be due for both sides. In fact, I think the first filing, lord knows how that person was able to figure it out, wants to be amicus on the side that what the President did was fine.

THE COURT: And while you brought that up, any objection to me granting leave for that brief to be filed?

MR. LOWELL: I didn't see it to know. But Your Honor, I believe the Court should accept amicus unless it's completely, you know, somebody that's sitting in a mountain

cabin that has nothing to say other than I want to be heard, yes.

But I think we have to do it on an individual basis. I think this applicant probably meets the standard of let's hear what this applicant has to say, but I know there will be others.

THE COURT: Any objection from the government to me just granting that motion?

MR. ROTH: No. We generally consent to amicus filing.

THE COURT: I will reflect on the order that that motion for leave to file is granted.

Why don't we talk about the merits a little bit and then circle back to scheduling at the end, because I'd like to leave here with a clear schedule of next steps.

So I'll hear from plaintiffs.

MR. LOWELL: Thank you, Your Honor. And especially in light of what you said, I think what I'd like to do is be as brief as to what I think the Court has to consider for purposes of keeping the status quo in place while the rest takes place.

And it can be boiled down to a handful of what I'll call the operative facts to maintain the status quo. And these operative facts are as follows.

Governor Cook, an extraordinarily qualified economist and professor, was nominated and confirmed to a 14-year term to the Federal Reserve Board to end on 2038.

On August the 25th at around 8:00 in the evening, pursuant to a social media post, the President purported to fire her, citing that he has that ability generally under Article 2, but specifically stating, because he at least read the statute, that he had to intone the word "for cause," which he did.

And unlike other cases, of which the government will probably bring to your attention, for example, the one about the Harper case on the NCUA, this statute embeds for cause in its very terms.

Cause, according to the President's action, was a released on August 20th, also by way of public communication in social media, of a referral letter that was dated five days before but for which Governor Cook had no notice until it was posted publicly for the world, sent by FHFA Director William Pulte saying -- and I think the words matter, Your Honor, that, quote, it appears, end quote, that Governor Cook did something he deems to be wrong, for what he said, and I quote, potentially, end quote, did for some economic advantage.

Not that she did it. Not that there was any investigation or charge, but just this person's view of what he said, quote, appears, end quote, to be the case.

It took the President barely 30 minutes using that public tweet, saying what it said, to demand that Governor Cook resign.

Now turning Director Pulte's, quote, appears, end quote, and, quote, potentially, end quote, to what he said was, quote, what she did was very bad, end quote.

THE COURT: Can I interrupt?

MR. LOWELL: Sure.

THE COURT: Can we just pause on the cause piece? And I know you're going to file a written response to the government's opposition. But you're arguing that I should interpret "cause" as has been defined in other statutes that provide specific grounds for cause for some boards and agencies.

The government is saying where cause is not defined, it's actually statutory interpretation 101 that I consider the plain meaning because Congress made a deliberate decision not to define "cause," and that that gives discretion to the President in that instance. And so I think I'm -- I know you will respond to it in writing.

MR. LOWELL: I can respond to it now, too.

THE COURT: Yes. But when you respond in writing, it would be very helpful to point to authority as to your response as to why the absence of a specific definition means that I kind of incorporate by reference the definition that might be provided in other statutes.

MR. LOWELL: Here's the Court's dilemma or here's the Court's choice. If the words "for cause" appear in a statute,

and we agree it doesn't have a defining section in that same statute for what cause, then the Court has to make a choice.

Either it means nothing, in which the President decides what "cause" is when he says it, like Humpty Dumpty deciding what word means when he says it, or it has to have some grounds in something that we can rely on.

There are two possibilities there. The first is to look at the statutes which have traditionally defined "for cause" and the cases interpreting it, which are the ones, for example, about what we call the IMN, the malfeasance and neglect of duty, or you can look to see if there is a different statute -- and the cases have talked about some which include phrases like "mental incapacity" or "physical disability."

That's not this. That's a case in which the statute itself basically left the framework of what is generally accepted to be public misconduct, like malfeasance, neglect of duty and inefficiency.

THE COURT: But my question is where other statutes have provided that and this one doesn't, what is your response to that must have been a deliberate choice and that this means something different than what's outlined in those other statutes?

MR. LOWELL: But because the statute doesn't have its definition section, where should we look for that definition? Why don't we look at when Congress passed that statute and what

they had going on at the time. And as we pointed out in our papers, what they had on at that time was the briefing, litigation and argument in Humphrey's Executor.

And in Humphrey's Executor of the statute, the FTC statute very clearly had those three elements as to what it means to be for cause. Couldn't be more explicit, that's what it said.

Congress recognized the Humphrey's executive decision as they were passing the Federal Reserve Act, and including the phrase "for cause" embedded in the statute. They say that in their legislative history. They said it on the debate. They were asked to wait for the decision. And when they did pass the statute with reference to Humphrey's Executor, they incorporated this 111 or more year definition of "for cause."

If Congress says, we are looking at a for-cause statute, and, by the way, Humphrey's Executor defines "for cause" and it says the IMN, it's not a big leap to say that that is a traditional way of interpreting official misconduct.

THE COURT: What about more recent Supreme Court precedent? I'm thinking of Collins v. Yellen that I read or one could read as suggesting that a for-cause restriction gives the President more removal authority than what was at issue in Humphrey's? Like how do I square that with --

MR. LOWELL: You square that in the context of what was at stake in both of those cases. In the Seila case that's

referenced by the Collins case, remember that in the Collins case you refer to, the distinctions are vast and apparent.

First, it is not the historic agency, which goes back to how the Federal Reserve Act incorporates that. It was not a multi-member board. It didn't have the dual functions of being quasi legislative. Interestingly enough, the parties in that case originally didn't even contest that the decision was going to violate the Separation of Powers Act. And it was about a single entity, the director.

And that is where the President has more authority, and we concede that. Because that's what the Supreme Court said and that's what it said in Collins, for example. It says that there are, quote, prohibits even modest restrictions on the President to remove the head of an agency with a single top officer.

So that line you quoted about having more authority in this context can't be unmoored from the context in which that line was written. And that line was written in a case that had that single top officer and all the differences between that agency and the Federal Reserve.

So you can take those words, as the government has done, and say, you see, he's got, quote, more discretion. But that's like taking the words out of why it was written for what it was done. That's where we would point the Court.

THE COURT: I understand that and I understand this is

a unique body. I'm jumping around a little bit.

MR. LOWELL: I'll follow your lead.

THE COURT: Am I right that it's your position that any conduct that predates confirmation cannot be a basis for cause? And if that is your position, where do I get that from, the text of the statute or the precedent? Is that, again, the kind of inefficiency malfeasance in office? Are you borrowing the in-office from those statutes and asking me to read that into this one?

MR. LOWELL: I think the answer is we're not taking that absolute position, certainly not at this point. It certainly is a good starting point for the concept of why you get removed from office.

THE COURT: It's helpful for me to understand --

MR. LOWELL: We're not taking that extreme.

THE COURT: You're not taking that position. So you make room -- we're going to have to discuss this in the discretion part but just to be clear, you're not taking the position that the fact that this alleged conduct predated confirmation is as a basis for it to not rise to the level of cause under the statute.

You're making room for the possibility that it is within a President's discretion to remove someone for cause based on conduct that is maybe -- only comes to light post-confirmation but was something that the person did before

they took the position?

MR. LOWELL: And you just added one of the elements I would have asked you to consider in your question to me. It is not an absolute position but it will be sliding scale of a number of factors.

Factor number one, was it known at the time of the person's confirmation and addressed? Because that would basically also inform the requirement of giving a person in that situation notice and opportunity to be heard.

What's the nature of the offense that occurred before the person became involved in the office for which that person is being removed? What was the process by which that event was proven to be the case? Is it an allegation on a social media tweet at 11:00 at night by the director of the FHA or is it something in which there was an adjudication?

A person who was convicted of bank fraud, who wants to be a bank regulator, and that conviction occurred five years before the person was nominated, and for whatever reason that didn't find its way into the confirmation, I could understand the President saying, oh, you know what, I don't know why you confirmed this person but this person shouldn't be on the board you confirmed him. I don't know why the President would have nominated such a person.

THE COURT: So the President can then say, I don't agree that this person should have been confirmed?

MR. LOWELL: That becomes a hypothetical that's going to be really difficult in a 14-year term in which somebody appoints the person in year one, a new President gets elected, and a President who gets elected, whatever the person's motive is, whether it's honestly they want to have good officers or they want to affect the economic interest rate of the United States, says I've changed the mind of the President's Office and this person should have not been nominated to begin with.

That's the slippery slope of where you go prior to the confirmation or the putting the person in power. To pick an earlier moment could be for cause in its official, but that's not a hypothetical that we have to get to. That's not a situation because of the facts of this case.

So the scale, Your Honor, it seems to me, would be what is the alleged offense that occurred before? What is the evidence of that offense that occurred before? Did that person have the opportunity to contest that so-called offense that occurred before? And if that was the case, what is its relationship to the kind of office that person is serving in?

There are so many variables, which is why I said I can't say that it's absolutely impossible --

THE COURT: Everything you just articulated makes perfect sense and I think is something that anyone making these decisions should consider. But if I were to adopt that and I was going to put a cite to say like see also or see EG or see

Supreme Court case that maps onto what you just said, where do I get the authority for that?

MR. LOWELL: Again, because we're in an area where the only removals have occurred for people -- or not. Sometimes the President has said, I get to remove somebody because I said so and Article 2 says I said so.

For example, one of the cases that we said -- I think it was the PCAOB or the NCUI case, the President made no qualms, is that he didn't have cause and he was doing it solely on his Article 2.

So I don't know that you find a Supreme Court, let alone lower court, decision that says these are the factors and that's why you indicated that you might be in a case of first impression.

THE COURT: Is there any authority that suggests that if I were to do something like that, that I wouldn't get smacked down? Basically, is there any authority you can point to from the D.C. Circuit or the Supreme Court that would find it appropriate for me to kind of articulate a framework by which the President exercises -- at least what the government's arguing is discretion and you may, in your written response, frame it a different way?

MR. LOWELL: I think that's what we'll do. We will address your point in our written response.

THE COURT: Please address that. Because if this is

the President within the President's discretion can remove for cause, I would want to see your best authority that it would be appropriate for a Court then to kind of articulate a framework of all that must be considered before determining whether past conduct could be something that's for cause.

MR. LOWELL: And I think on that, Your Honor, I think what I'm thinking, as I'm hearing you speak and I'm trying to figure out what to do the address the question, which is not easily found in other cases, is to flip the question.

Which is, I don't know that you're going to be able to, in deciding on the merits of this case, explain which of the things have to exist for it to be some conduct that occurred before an office holder held office when the whole point of the for-cause statute is to remove an office holder, which instinctively means it was for some malfeasance in office, but we can get to that. As opposed to the opposite, which is, well, what can it not be.

That's what this case is really about, if you think about it. We're arguing that it's very difficult to come up with an 11-page definition of what it is but it's not hard to come up with a one-sentence definition of what it's not.

And what it's not is FHA director sending out a missive to the world that says maybe, I think, potentially, it seems like, it appears that maybe Governor Cook did something wrong. And the President says, that's cause.

And so in the facts of this case, what we may have to adjudicate is whatever it is, it's not this.

And I understand the Court has to address what it is in some fashion, but I don't think the Court has to address that to dispositively decide this matter. But that is something we will address.

THE COURT: I think that goes nicely into the pretext argument. And if you could just explain a little bit more about -- let's assume I were to agree that the circumstances strongly indicate that this was pretext. I'm not saying I'm making that finding --

MR. LOWELL: I understand.

THE COURT: I'm just having a hypothetical so that we can just address the core issue is -- okay. So then what does a Court do? Because it seems to me that -- actually, let me take a step back.

Does that mean that if there is legitimate cause, let's say there is a cause that everyone on both sides -- on all sides agrees, that person disappeared for two years and didn't come to any meetings and didn't do any work. But it's also someone that a President has strong policy disagreements with, has not -- there's no love lost between them, they've made comments about each other and this is just the perfect opportunity now to remove someone that a President really wants to remove.

If the cause is legitimate, are you suggesting that I have to find that it was the sole reason, and that despite everyone's agreement that there was a cause in the world that happened that could be legitimate, that I nonetheless would have to inquire into was this the actual real motivation of the action?

Because that's what I usually typically think pretext, that there is a reason given. There's a cause given. But that's not the real reason. And we get to the motivation of the actor to figure out what was the real reason.

Are you suggesting that that would be my inquiry in a case like that where everyone agreed that there was cause?

MR. LOWELL: No.

THE COURT: Okay.

MR. LOWELL: A President of the United States, especially this President of the United States, could have a really bad motive to take an action to impose his will on things which are unprecedented, like the independence of the Federal Reserve Board.

And that motive could be something that he has articulated, and yet, the person against whom he is taking his action has actually done something for cause.

THE COURT: Okay.

MR. LOWELL: Motive would not bear on this Court's ability to confirm that whatever we define as permissible cause

is not affected by the bad motive of the actor.

THE COURT: Okay.

MR. LOWELL: These are not independent matters in this case. When you don't see something that feels like it fits the traditional definition of "cause," and I will in a minute address the facts that you could come to to understand my pretext issue, then they don't stand independently of each other.

In other words, if all we have is a tweet and all of it says might, maybe, could, possibly, potentially, and there's no notice, there's no opportunity, it's all based on this litigation by tweet, then it becomes more important to see if the record contains that which illuminates that there was no cause.

A bad motive can illuminate that there was no real cause to begin with. Cause cannot overcome -- cause can overcome bad motive but bad motive can illuminate the fact that there was no cause.

THE COURT: That's helpful. So when you say pretext, you're using it to say this evidence is further evidence that there was no cause.

MR. LOWELL: Correct.

THE COURT: Because we all can know what was happening here and that's just a bullet point under all of the reasons why there's no cause. It's not as if you're asking me to dive

into the President's motivations to determine what the actual reason was.

Why do I even need to look at that? Couldn't I just decide if I -- assuming it's reviewable, assuming there's the standard that you've asked the Court to adopt is the standard, don't I just look at that and make a decision? Isn't it kind of messy to then add the pretext point?

I understand, like for atmospherics I understand why it would be done. But in terms of my decision, do I really need to go to that point?

MR. LOWELL: The answer is more complicated than a yes or no. So I'm going to give it a shorter than what I would normally do to answer your question as briefly as I can.

The President's motive is -- let me answer your question directly. If there is abundantly clear that there -- whatever as I said to you five minutes ago, that there was no cause, that this can't be cause, I don't know what it is but I know what it's not. So your ruling could be, you know, it's not. You can't have Director Pulte's crazy midnight tweets be the same as cause. Then, yeah, you don't have to get to motive in a way.

On the other hand, because the President is asserting, as I understand the supplemental brief does, that he has wide discretion in these contexts and is going to say that you don't have to worry about the definition of what really cause is,

that's where you probably do have to address the atmospherics.

You say the word "pretext." We use the word "pretext." Pretext is not an end to itself. Pretext informs, as I said before, the possibility that it shows that there was no actual cause.

But the Court is right in that one sentence, that if there is literally no chance, no permutation, no possible mathematical formula in which what he did was cause, then maybe you don't have to talk about the atmospherics.

On the other hand, I don't know how the Court gets to that, given what happened in this case, without taking into consideration what happened even the day before Director Pulte went public on August 20th, on the 19th, when the President is still demanding that members of the Federal Reserve Board resign so that, quote, he can affect the interest rate.

You can't detach them in that fashion, although in a theoretical way the Court was right in that sense. But I don't think in this case you can detach them.

And in order to then further address your point about context and my point about how it informs cause or the lack of cause, let's just make sure we get this timeline right. Because if -- to put it another way, if there had been no demands by President Trump or Director Pulte to have Chairman Powell or Governor Barr or Governor Cook resign, so that the President, as he bragged on August the 26th at a cabinet

meeting, that he was now in a position to be able to, to use his words, quote, have a majority on the Federal Reserve Board.

If there was none of that and on August the 20th the President fired Governor Cook on the basis of a single social media posting by the director that said maybe, could have, seems, appears, possibly, had some effect before she was a Governor, then I wouldn't be sitting here and saying that what he said informs your decision on cause. On the other hand, I can't ignore what he said that gives ground to the idea that there was no cause.

You see what I'm saying? It could be but that's not what we have here. So that's where if you go through that or if you give me the two minutes, I will remind and put on the record why that is important, but you can tell me if that's okay.

THE COURT: Sure.

MR. LOWELL: Let me do that. Remember that this starts by somehow in April or May, which is not long before they take the actions they took -- and they're taking these actions in concert. By that, I mean the President and his FHA director.

They started seeking to pressure the Board to lower the interest rates. And when the Board, which has decades of history of taking economic analysis into account before they make that decision, said they were doing that and they weren't

ready to make that decision, they immediately started to call for the resignation of the chair. That happened in June. It happened in July. It even happened in August.

Governor Cook has stood fast with other members of the Board, including Chairperson Powell, agreeing that it was not ready for interest rate. And miraculously, the President's ire turned from Chairman Powell to Governor Cook. Both those individuals, when they were attacking Chairman Powell, what a surprise, came up with an allegation of fraud.

They said Chairman Powell had to resign because he was involved as the chair when there were renovations on the Fed building, and the Fed building renovations were riddled with, quote, fraud. This allegation of fraud has become the weapon of choice in removing at least the people on the Board, let alone other officers in the country.

In late July and early August, again, using the President's vehicles of social media, and more importantly his habit of calling people that he doesn't like nicknames, like children, started saying that Jay Powell was Jay "Too Late" Powell. And he says that often in whatever he has posted and said at his press conferences.

And then as I pointed out, Your Honor, not likely a coincidence that he did it again on August 19th, the day before Director Pulte took public aim at Governor Cook for the first time.

And then Director Pulte, who's been at the center of trying to create the atmospherics to create what he calls cause for the President to act on, and is far from being an objective arbiter of what really "wrongdoing" or what "cause" means, said the following, that maybe, maybe this is a violation, and he's put into words, therefore, taking the direction from the public aspect of Jay Powell committing fraud in his public body doing the renovations of a public building, which could, maybe, if they were true, become his in-office for-cause conduct to move backwards in time to 20 years before when Governor Cook applied for her first mortgage.

And so when you put in context the background, that's why, divorced from a definition that made any sense, the context and our allegation that it's pretextual comes into the Court's consideration of whether there was any cause to begin with.

I will point out, although it's not in the record but it will certainly be true soon, since the President acted and we challenged it, this is also something the Court should take into consideration. Not today, necessarily, but as we --

Director Pulte has posted 31 different additional tweets to backfill his original referral, as if you say something and, oh, wait, that wasn't so good, and the President acts on your not so good, and she is alleged to have been fired on the 25th, that what he posted last night or this morning at

2 in the morning can somehow rectify the problem.

That's evidence, again, that there was never cause to begin and it's just their efforts to get rid of governors, as the President bragged on the cabinet, so that he could have, quote, a majority. So that's the context in which we are asking the Court to consider this.

And then, as the cases say, and I know you already said it back to me in one of your questions, what we know about "for cause" is that it's not a policy dispute. That's what the Supreme Court has said in various contexts in various cases.

And what's interesting is what the President said on the 26th is bearing additional. What he said was, if Governor Cook had done the right thing, then we would have a proper board. And when said, what is proper, he said, not one that's honest, not one that is above board, not one that has never committed an infraction in their life, but he said, a Board that would lower the interest rates that I have demanded occur.

When the President of the United States makes clear to the public that what it takes to be a for-cause is somebody who will do what he says so that he can have a majority and lower the interest rate, this Court knows, as everybody in this courtroom, everybody in America, that what he's saying, let's take him at his word. "For cause" for the President means she won't go along with an interest rate drop and it's the context of all of those.

If you understand what he's trying to do, I don't mean to be hyperbolic, but given what we have seen him and his member of his administration say, almost any of them will make a public social tweet allegation against somebody, saying that before they took office or while they took office, and if that's what it takes to both define "cause," have the evidence, have the opportunity for notice and opportunity, then we might as well strike those provisions out of the Constitution.

And so that is why I'm asking the Court to consider how his conduct and his public statements basically prove the point that we're making.

And the Court, in another context, in the TRW case in 2001. When we're trying, as you are asking me, to come up with a statutory construction, certainly repeated the old statutory construction law that says courts should not adopt an interpretation that, quote, in practical terms would render the phrase entirely superfluous.

So that is a longer-winded answer to your question that was yes or no, but I do think, again, even if you don't use the word "pretext," we now understand what "for cause" means in the context of the facts of this case.

THE COURT: Going back just to kind of put a finer point on "cause," I understand the concerns and questions raised about acting on mere allegations and all kinds of circumstances. So I understand that these are allegations and

there was a referral letter and there's no finding of any kind, so I understand that.

Two questions. One is, if this were a situation where there was some admission of the underlying conduct -- I'm just trying to pose a hypothetical where the conduct is not in dispute, we're beyond allegations and everyone agrees that the conduct at issue here happened. Is that cause, or no, under your formulation?

I understand your briefs to be saying that even if everything alleged is accurate, that still wouldn't be cause. And so I want you to explain that position.

MR. LOWELL: An admission of conduct is not an admission of the following factors. A person's intentionality in the conduct. The materiality to either the offense -- I say offense in quotes, not that it's a formal charge but the allegation of wrongdoing.

THE COURT: Let me stop you there. I understand that. But those are the elements of criminal liability.

MR. LOWELL: Right.

THE COURT: So are you saying it has -- my hypothetical wasn't assuming criminal liability, even -- yes, my hypothetical is not necessarily assuming criminal liability, that you meet the mens rea requirements and the materiality requirements.

I'm just saying in a case where there is -- there's

allegations of fraud and then there's cases -- well, I guess it is. If you're calling it fraud, I guess you have to incorporate that. Let me not call it fraud.

Let's say in this case there were what people now understand to be misstatements on forms that don't rise to the level of fraud or that a government body in its discretion decides it's not going to pursue criminally, which --

MR. LOWELL: Happens.

THE COURT: People make that determination all the time, that for whatever reason they're not going to pursue the case.

But assume that there are no criminal charges, no investigation, but otherwise the elements are met, that there were misstatements on forms, that they were knowing misstatements, that the person apologizes. Is that cause?

MR. LOWELL: You're loading your question with words like "knowing." And as a lawyer, I can't accept the word without making sure we're on common ground.

THE COURT: I'm starting with "knowing." I'm starting with there's no criminal prosecution because the government, in its discretion for whatever reason, decides it's not going to pursue the case.

This is not this case. I'm taking you in a different case. That there's a fraud that is -- everyone agrees it's fraud and there's no dispute that what the person did was

unlawful, despite the fact that they're not being prosecuted or there are no legal findings to that effect. Would that be for cause?

MR. LOWELL: Could be. But as you said, that's hard to take out of the context. So let me answer it the way you first asked it to me, if you'd let me do that.

You said an admission of conduct. If a nominee who gets in office fills out a form that they were required to go get a loan or to fill out their financial disclosure form, and they are sitting there on their computer and it asks your income and they put in $10,000, because they made a typographical and it should have said a hundred thousand, and that person did that, then you have to find out whether that's an admission of conduct.

The form says what the form says. It says $10,000. It doesn't say 100,000. Then you have to figure out why does it say 10,000 and not 100,000, which is why you asked and I asked you what you meant by "knowing." And therefore, you have to factor that in.

Somebody could admit the conduct: I put $10,000 on the form, I did that. Then you have to ask the next question. Was it knowing? Was it intentional? Does it have any impact on what happened after that?

And that's why when we're in the hypothetical land, I can't just accept the premise that an admission of conduct is

enough to amount to cause without thinking about some of the other terms.

And you even yourself asked me, well, what if everybody agrees it was a violation but in prosecutorial discretion all these cases are rarely ever pursued. Those that have intentional misstatements on an application to a bank don't always get prosecuted as bank fraud.

But everybody admits that the person did it, that there was some level of knowing, it was intentionality, could that be cause? In that theoretical way, I suspect it could be cause. But we don't have any of those facts in this case.

THE COURT: What about the statement in the letter along the lines of at minimum this shows a degree of carelessness that I think, in my judgment, doesn't make you suitable to remain in this position?

Can you respond to that directly?

MR. LOWELL: I can. If I was disbarred or you were impeached because in one of our opinions we made a mistake that was not intentional but is what happens when human beings serve in the positions we are given, and that becomes cause for those, then that's a threshold that I don't think we can ever live up to. That would be way too severe.

But the problem with, again, that question back to me, is that this is not yet and this is the point. There's no basis to conclude that Governor Cook did anything that would

amount to what is being asked of me in the hypothetical.

For example, no one's asked, did she have an accountant that told her whatever it is that Pulte is accusing her of was the right way to do it? Is there a lawyer involved in the process?

That's the kind of development of when a person is supposed to be given an opportunity to be heard. That creates a record on which a President can take action for cause.

So in your question to me, you're right. If you and I can construct a hypothetical, everybody agrees on the conduct, everybody agrees on the knowing, everybody agrees on the intentionality, everybody agrees on the materiality, everybody agrees on its seriousness but no prosecution occurred, can that be for cause?

Yes. That can be for cause, given what it is, depending if it's, I don't know, something that deals with the person's economy as opposed to whether or not somebody lied about having a nonprescription drug that they shouldn't have had.

That depends as well.

But in your construct and my response to you, that's the factors that would have to be considered.

THE COURT: Okay. I think that takes us to -- I have a few questions about the due process argument. My understanding is that this statute does not lay out any

specific procedural requirements in connection with removal. We're all on the same page there?

MR. LOWELL: The statute itself --

THE COURT: Yeah. I mean, there's no scheme here. The statute doesn't outline what notice and opportunity to be heard has to look like in the context of removing someone.

MR. LOWELL: Not itself but the statute does talk about the need for a notice and an opportunity to be heard as creating that right, and then you refer to what does that mean in other contexts, like the Loudermill case, and I never --

THE COURT: What part of the statute are you -- you said the statute talks about notice and opportunity?

MR. LOWELL: The Federal Reserve Act itself creates -- give me one second.

THE COURT: Sure.

MR. LOWELL: With your indulgence.

THE COURT: Sure.

MR. LOWELL: I misspoke in the sense that the statute, you're right, doesn't say it, but the statute does create the right, the property right. And then you look to the cases which interpret the property right to determine what that means.

THE COURT: Okay. So this might be a case where you're saying she got absolutely no procedure, so I might not need to get into all of this. But what would those procedures

at minimum look like from your perspective?

MR. LOWELL: Reference to when -- let's do the building block of how you get to notice. What's adequate notice and opportunity to be heard? First, you have to decide whether or not there is a right that gives you that. And we, I think, are beyond the right.

All the cases point out that a for-cause candidate in this kind of a term, that is a property right. So when you do that, then you turn to what are the cases that interpret what that is.

And then you look to Loudermill or Esparraguerra and it says things like, an oral or written notice of charges, an explanation of the evidence supporting it and an opportunity to present her side of the story, are the words of those two D.C. -- the more recent D.C. Circuit referring to an earlier Supreme Court, and the important phrase that that has to be given to somebody, quote, prior, end quote, to the discharge.

There is a body of law that would define what proper notice and hearing is. And even the Reagan case that the Court is aware of in the 1901 Supreme Court mirrors that the Supreme Court stated that for-cause protection means in statutes some basis of notice and hearing are, quote, to use the terms of the Supreme Court, essential.

Now, I don't have the ability in all of the cases that you and I might talk about when we submit, or what we've

already submitted, to say more than what, again, it isn't. If it's supposed to be an oral or written notice of the charges, and we have Director Pulte saying, you know, maybe, it seems, it could have been, it appears, it was a potentiality.

Okay, that's not much. But let's say that was the notice of the charges, and it says possible mortgage fraud. Well, again, what was the mortgage fraud? Was it a possibility that when she applied to the mortgage and she was moving. from one primary residence to a second primary residence there was an overlap when both of them were called primary residence because she teaches at Harvard or she teaches in Massachusetts or she teaches in Michigan?

That's not clear. That's not notice of the charges. And if you're asking for an explanation of the evidence, I don't know what that phrase means but it certainly doesn't mean Director Pulte's in-the-middle-of-the-night allegations of the possibility of anything.

And then an opportunity to present her side of the story has never been given. And even in that last 31 tweets over the last 36 hours, I know one thing. I know that opportunity to be heard and to tell your side of the story is not for me to finally sign up after all these years to a social media account so that I can rebut his charges in the same ethernet that he's making them.

THE COURT: This is raised in the government's

opposition, so you'll respond in writing, but just even before the government's opposition I was trying to figure out the cases deal with employees. Is it your position that Governor Cook is analogous to employees?

MR. LOWELL: For purposes of what the due process clause gives her?

THE COURT: Yes. For purposes of whether she has a property right. And the government, in its opposition, which you'll respond to, indicates that she's a public official. I'll have some questions for them about this because I think the case deals with an elected official and I see a strong reason why an elected official wouldn't have a property right in his or her position.

But then that asks the question -- this is a kind of unique position. It's not quite an employee. It's not an elected official. It isn't a government official. And so --

MR. LOWELL: There are cases that you pointed out to. One that comes to mind -- let's set the framework. So you have me, an American citizen who somebody is taking action against, and what is the notice and opportunity that I get under the due process clause.

Then you have somebody that is at a position more official than I, and that can be, if you will, the elected official. Then you have a person to the side, which is an appointed official.

What we know is people in Governor Cook's position is not some sort of officer -- doesn't get less due process. In fact, because her position as a Presidentially-appointed, Senate-confirmed set of terms of a 14-year term has absolutely been deemed to be giving somebody in that position with a for-cause exclusion -- only way of being taken out of office, that has been held to be a property right.

And as to it being an officer, one of the cases will respond and admit to is the Shurtleff case, where an individual was an officer. So I haven't seen how they articulate their position yet.

THE COURT: What kind of officer? Remind me in that case.

MR. LOWELL: Again, with the Court's indulgence.

THE COURT: Okay.

MR. LOWELL: I think it was the general appraiser of the context of the agency. But again, we will address that in specific.

THE COURT: Would that person have had a statutory process prescribed?

MR. LOWELL: I will address that. I can't answer that. The case is just being brought to my attention.

THE COURT: I think here's what's interesting about this question and why I started asking what the process looks like. Because there's no -- we can talk about what the minimum

requirements are, but in terms of an opportunity to explain her side, that would be to the President and the decision maker.

Because there's some veins of due process cases that suggest that due process requires an independent decision maker from the person who makes the decision. And I don't think we would say that maps here, right?

MR. LOWELL: Right. That one is easy, right.

THE COURT: So it would be just the opportunity to explain -- I guess baked into that, if someone has a due-process right, I have to assume good-faith reception from the person getting the explanation. Otherwise, it's not a meaningful process.

But you're not suggesting anything more than notice and a clear explanation of the allegations, charges, however you want to frame them, against them and an opportunity to rebut and contest the explanations or otherwise explain them before the decision is made.

MR. LOWELL: Right.

THE COURT: And you're not suggesting that there's any other requirements that the statute would require me to map on to that basic minimum framework.

MR. LOWELL: What Your Honor just said is correct. And we can then put it into the context of this case. Because we could be here -- I would be at your podium depending on what happens in my answer to your question.

So let's say that the allegation against Governor Cook was made and let's say it was made -- President acted on the allegation but he didn't decide that on his own. He based it on an allegation made by one of the people in his administration, in this case the FHA director Bill Pulte.

Bill Pulte writes that he thinks Governor Cook did something wrong. It is in front of that person that we get the opportunity of notice and the opportunity to be heard --

THE COURT: In front of the --

MR. LOWELL: Before the President acts, if it is an agency that's implementing his action, then there's -- I don't pretend that I was going to walk into the Oval Office and make a 20-minute presentation to President Trump and say, by the way, Pulte is wrong. Maybe that is what could happen.

I certainly know that to give any meaning to notice and opportunity to be heard, there has to be that place somewhere. So where is it? President acts on the basis of what Pulte said. Pulte says it on the basis of who knows what. Maybe it's at that who-knows-what basis that we get the notice and opportunity to be heard, but it certainly has to be somewhere between him carrying it out and the allegation being made. It could have been at that point.

And the point I was going to make is let's say we have that opportunity, and Director Pulte says, yeah, I made the charge of mortgage fraud. You gave it your best shot. You

told us that it was advised by an accountant, there was a lawyer involved, it's not intentional, there's no materiality, there was no financial gain to her. I'm using the hypothetical.

And then he says, I think it's anyway, and the President acts on that. Then I might be in front of you and saying, on the basis of this record, it's like an APA claim. It was an arbitrary and capricious decision by an agency carrying out an improper motive of the President, but we're not there.

And that's the problem with these hypotheticals. Because what I do know is that nothing that's happened could satisfy any court's requirement that there was proper notice and an opportunity --

THE COURT: So what you're suggesting is even if minimum procedural requirements that satisfy constitutional standards are met, there could be a challenge to a decision at that point?

MR. LOWELL: No. I think -- no, because --

THE COURT: I guess yes, because you have a separate claim that this didn't rise to cause. This is not sufficient cause. So --

MR. LOWELL: That's difficult and you and I are both squinting because it is difficult.

If the President acts on his definition of cause, that

I, the President, have said this is cause, you certainly have the opportunity to see what the "this" is in the sentence.

If the "this" in the sentence is what Pulte says, which is what we have now, and we know that doesn't satisfy, I can't sit here and give you the five elements of what Pulte could have done better for which I would concede, okay, that's cause.

But I can say there is room for that without my saying -- because, again, it's not a criminal case. It's not a disciplinary action in front of the Bar or in front of the judicial conference. So I can't answer your question because that one is way into the hypothetical land.

I can say, though, that if there's notice and an opportunity to be heard, the Court would be equipped to decide whether it conforms to the case law and what that means.

And I can't answer today where that would be. As I said, I'm not trying to be flip, but I don't think it's me making a presentation in the Oval, but I know it has to be somewhere.

THE COURT: If we could finally talk about irreparable harm, just because I personally think the cases are all over the place here in this context. There is authority suggesting that kind of the right to continue in a statutorily-prescribed position is not irreparable. So if you could outline very clearly what the irreparable harm is.

MR. LOWELL: We did that a bit and we will address it to the extent that they challenge our having done that a bit. We think the case law is not that ambiguous, that a person appointed by the President, confirmed by the Senate -- and again, you can't detach this from the unique role that the Federal Reserve plays.

THE COURT: Right.

MR. LOWELL: I don't know whether the irreparable harm is the same in one of the cases in which it's an inferior officer who has been taken out of that person's job for things that we believe not to have been proper basis. And I'll come back to that in just a second as to the special place that the Federal Reserve -- and therefore, a special place that the federal governors play in the system, in which you're asking what is notice, what is opportunity to be heard and, now, what is irreparable harm.

But a Presidential appointee in a historic agency that every entity indicates has a special place in the constellation of the United States government informs whether or not removing that person, who took an oath and said I hereby will defend and uphold the Constitution of the United States, and then for a Governor even more than that, says I will make sure that we perform the job of Governors independently as we were charted to do back from the time that the central bank of the United States was formed, and you are taking away from me my ability

to do that.

It's not about the salary, as in those cases. It's not a monetary damage issue. You've taken my right away to do my job, and my job is confirmed by the Senate and it is sworn to that I do it. And I think the cases we already cited indicate that that is irreparable harm. And to the extent the government's brief indicates that we're not right, that will be something that --

THE COURT: You're saying that's just -- that sounds like an argument that I can't perform my statutory functions. Which I understood cases -- I'm trying to think the state of play in recent Circuit and Supreme Court decisions, that there was some suggestion that that type of argument is not irreparable harm, the inability of the person to carry out statutorily-mandated functions.

Are you saying that -- it is true that none of those cases involved this body. So are you saying that those are distinguishable by nature of the unique functions of this Board, and, if so, if you could just explain that and spin that out a little more.

MR. LOWELL: We will do that but I'll look at the Albert versus Employment Benefits case of the D.C. Circuit, an integral part of the federal government. The Board conducts the monetary policy, regulates institutions, maintains the stability.

Governor Cook, along with her brothers and sisters, agreed that that was the charge that they accepted to do that created in her being a Governor that was confirmed and has only a for-cause removal, a property right.

If she is not allowed to pursue what she was given the statutory and Senate-confirmed reason to do, and she's being able -- and being taken it away, we believe that that now is in the area in which that does equal irreparable harm.

And we will, again, further address it because I haven't seen the way that they have attacked that issue.

THE COURT: You also reference the fact that you say that the executive -- the President is having discussions about a replacement, and that that is irreparable -- your point there is that if a replacement is put on and there's nothing that --

MR. LOWELL: Well, that gets us into -- and there has been case law now -- as to whether reinstatement, for example. But how do you do that -- now, again, I don't know how this all works at the speed of light.

The President has already announced a number of candidates that he has in mind. The President has stated as recently as three days ago -- today's the 29th, three days ago, that he will now have a majority of the Board.

The Senate of the United States, under the present administration -- how should I say this -- has not necessarily been stellar in its advise and consent role. So theoretically,

that could end up being something that he nominates and says the vacancy exists. There's an opening. I now nominate John Doe. The Senate takes it up next week. The Senate decides to confirm or the President says it's there.

That is irreparable harm and that hypothetical isn't so hypothetical in the world we live in these days. He's already said that. He's already said he wants a majority. He's bragged that he's going to get it. And he has nominees, and I think that would qualify for sure under the factual circumstances of this matter as we are appearing in front of you.

THE COURT: And is it also your argument in terms of irreparable harm that deprivation of the due-process rights are irreparable? That that --

MR. LOWELL: They are in the context of, then, before we get a chance to say, wait, don't do it, she's already out of office and kicked out of the building and doesn't have the ability to function. Then those overlap in terms of that function.

THE COURT: Is there any authority -- and if you don't have it now, I would be interested to see it in your reply -- where a person was fired or removed in violation of due process requirements, and the relief was interim restatement to receive potentially more process?

MR. LOWELL: I have to look at what Judge Ali ruled in

the NCUI case. Because the issue there was, for example, was reinstatement with whatever. And I think the issue was not just, okay, you get back pay. Back pay wasn't enough, et cetera. So I will look at that. We will address that as well in our supplement. So we will do that as well.

THE COURT: Okay. And if you were -- if I were to grant some sort of preliminary relief, can we just confirm that we're on the same page about what you're saying the remedy is? You're agreeing -- and that's why you've sued the Federal Reserve -- or named the Federal Reserve and its chair, because any injunctive relief, you're acknowledging, could not be directed to the President; is that correct?

MR. LOWELL: We've acknowledged that -- and it's been interesting, in the last two days I've been looking at the law about why it's always assumed that you can't enjoin the President from being unconstitutional.

And I know that there's some academic and scholarly works out there, but for the purposes of this case, we don't have to decide that. We have to decide that -- this is the famous, Judge. If a tree falls in the forest and there's nobody there, does it make a noise?

If the President was sitting around and saying, I think Governor Cook is fired and nobody took any action against it, then I might not have to be here. But given that the Fed is saying we are an uncertain terms, that's very trepidatious.

Who knows what they'll do tomorrow and the next day.

So consequently, we do believe that what you just said creates the need for the relief. And the relief, for purposes of the preliminary place we're at, is that at least for now we have shown likelihood of success on the merits, either because, whatever it means, "for cause" can't be this. And whatever "notice" and "opportunity" means, it can't be this. So we then only need for now a likelihood of success on those in order to meet that criterion of preliminary relief.

We've addressed the issue of whether or not there's irreparable harm, and we believe that there is.

THE COURT: Can we talk a little bit more about that. Because I'm thinking specifically of the D.C. Circuit's stay decision in the Dellinger case, where it said, even assuming the removal was unlawful and even assuming that that creates a cognizable injury, that's not an irreparable injury.

MR. LOWELL: But again, I have to remember that in the Dellinger case we're talking, again, about that other criteria, single director, Board staggered, term, special circumstance of what a Governor does.

THE COURT: I understand that. And I understand that specifically in my consideration of the balance of the equities. But why is that relevant for irreparable harm, the nature of the entity?

MR. LOWELL: I think for three reasons. One, I think

irreparable harm also depends on what is the property right. And if there's a property right as well, then the question becomes what is being -- what is she being deprived of?

And if what she's being deprived of is more than simply I want my paycheck, but I want the ability to satisfy the oath I took, the statutory right I was given not to be removed for anything but cause, that I have also committed myself to the independence of the Federal Reserve Board, all those will stack up to amount to irreparable harm, and we'll address Dellinger as well when we do that.

THE COURT: Okay.

MR. LOWELL: So back to your question. Then if we got to that piece, at least for now until we flesh out these and some of the other questions, then what we need to do is basically to tell everybody that the status quo stays in place. That's the relief we're asking this Court to do.

She should not be taken out of her office. She shouldn't be disconnected to her electronics. She should be able to participate in the meetings. She should do all the things that she did a week ago before all this started because that is the status quo ante.

That's the relief we're asking this Court, at least at the TRO or at the preliminary level. If that's what you asking me as to what is the relief we're asking for, that's the relief we're asking for.

THE COURT: Okay.

MR. LOWELL: I know you have questions. You'll probably get me allowed to stand up again when the government is done.

THE COURT: Yes.

MR. LOWELL: I think I would like to just -- because so many of the things you asked does reflect on the unique position that the Federal Reserve and its Governors play, I could not be more struck by the irony of what I was able to glance -- and I want to point out just glance because it deserves more than a glance -- the brief filed by the government before I had a chance to read all 30-some-odd pages this morning and what it says about the President's power.

What it says about the President's power that now they want to apply to the Federal Reserve. What they say the President's power is to apply to the Federal Reserve, notwithstanding the many years of Humphrey's Executor and Wilcox and others.

But what struck me, Your Honor, was they made that filing today. And I couldn't help but notice that filing of 30 pages, among others, is signed by my brother, Mr. Roth, who now says that position. So when he gets up, maybe he'll address why in the brief he filed in the Harris versus Bessent case, he put his signature on the following quote.

The early Congresses further provided that the banks

of the United States, like the Federal Reserve, would have a degree of insulation from the President's control. Congress provided that all -- emphasis added -- all of the first bank's directors and 80 percent of the second bank's directors would not be subject to Presidential removal; emphasis at all.

While the Federal Reserve Governors may be removed by the President only for cause, the Federal Reserve Act, quote, the banks of the United States and their successors in the Federal Reserve represent, quote -- well, this is all a quote -- sub-quote, a unique institution with unique history and background. Its historical pedigree cannot be general extrapolated to other federal entities or agents.

That was just three months ago. And now I read that part in his brief today. He signed both but he's changed his view.

Thank you for your time.

THE COURT: Okay. Thank you. I'll hear from government.

MR. ROTH: Good morning, Your Honor.

THE COURT: Good morning.

MR. ROTH: I'm happy to just proceed unless Your Honor has questions you want to start with.

THE COURT: I have questions. So with respect to cause, I understand the government's acknowledged that cause should be -- it's limited -- it can't be a policy disagreement.

MR. ROTH: Correct.

THE COURT: So beyond that it could be any reason that's articulated?

MR. ROTH: Yes.

THE COURT: Okay. What if -- would a policy disagreement cover if a president said there are members of the board who are refusing to look at all of this data suggesting there's no inflation and there's no reason to keep interest rates at the current level, and I'm concerned that they're only taking these positions to make my administration look bad and they're not faithfully discharging their duties to at least consider this other evidence and whatever. And so I don't think that they have the intellectual ability or the judgment to remain. Is that a political disagreement or is that something else?

MR. ROTH: Still sounds like a policy decision to me.

THE COURT: All right. So anything that relates to firing based on a position that the officer takes is off limits?

MR. ROTH: I don't know if I would go quite that far. I mean, you can imagine some extreme case where someone exercises their power in an abusive way, and that's sort of beyond the pale and is treated as cause.

But I think if you're within the realm of reasonable policy disputes, the Supreme Court has told us that's not cause

for purposes of these statutes and we're not disputing that here.

THE COURT: Given the specific information that plaintiff's counsel just made about the unique nature of this Board and the need for independence, does it make sense that there would be such broad discretion?

MR. ROTH: Yeah, I mean, just to go back to what counsel was saying at the end, I don't understand what the contradiction is. We've said in many other cases, including the one that he cites, that, generally speaking, Congress does not have the authority to restrict Presidential removal of executive officers.

And we've always carved out in our briefs in -- Federal Reserve, and said Federal Reserve might be different because it has a unique historical background.

And that's why in this removal letter the President did not say, like he has in other removals, You are removed pursuant to Article 2, period. He said, You are removed for cause and here's why. So he is invoking the statutory for-cause removal provision, and our position is he has satisfied that provision, not that that provision is unconstitutional.

The reason for that difference relates to the unique historical features of the Federal Reserve. And that is why there is a -- we're not at this point saying no limits

whatsoever.

The limit is that it can't be just, well, I want my people there or I don't like the way you are -- as a policy matter, the way you're exercising your duties. That's what the Supreme Court said in Wiener and Humphrey's Executor that "cause" means. But beyond that, the statute doesn't provide any further description.

And Reagan does say when the statute just says "cause" or "causes" without further specification, that means it's discretionary and it's not reviewable by the Court.

THE COURT: It can really be for any -- the most de minimis reason one could think of that's unrelated to policy decisions? It could really just be any reason at all?

MR. ROTH: Your Honor, maybe I want to separate sort of the reviewability question from the sort of, like, what does the statute mean.

THE COURT: Okay.

MR. ROTH: The statute means a reason that calls into question the individual's fitness or ability to serve.

THE COURT: Okay.

MR. ROTH: And then it's the President's determination as to whether that standard has been satisfied. And I think under Reagan, there isn't supposed to be review of that determination. Certainly, to the extent there is review, it's going to be very deferential review.

And I was sort of struck by counsel's statements about how, look, it's a sliding scale. And there's so many factors, there's so many variables. The type of conduct, its relationship to the office, how serious it is, when it happened, all of these things have to be taken into account.

Well, that sounds to me like the epitome of a discretionary determination and that's when the President's power is at its apex, in making those judgment calls and weighing those variables.

THE COURT: What is reviewable in this context? Certainly someone could say I was fired without cause and that would be something that a court could review?

MR. ROTH: I think what would be reviewable is if the President did not give a cause, then somebody could say, hey, I'm entitled to cause, and that hasn't been satisfied because he didn't give a cause.

Once you have the cause, I think the only question really under the cases is is it just a mere policy disagreement that is out of bounds.

THE COURT: And is that reviewable?

MR. ROTH: I think it's what the statute means. I don't think it's reviewable under Reagan but I think it's what the statute means.

THE COURT: But if there was a violation of that, there's no recourse for someone?

MR. ROTH: That's how I read Reagan, but I'll be quick to add that to the extent the Court thinks there's room for judicial review, that would be what would be the most obvious situation for judicial review.

THE COURT: I think plaintiff's counsel could tell I'm uncomfortable with the pretext argument, but I also am uncomfortable with an idea that could someone explicitly say I want to get a majority on the board, so let's go dig in and find reasons to kick all these people off so I can get my people in.

MR. ROTH: Right.

THE COURT: And then the letter says, this is the reason.

MR. ROTH: Right. The Supreme Court decisions say, we look at the President's determination and the rationale he has given. They're very, very reluctant to allow courts to probe that or probe the sincerity of that. That's Trump versus Hawaii but it also goes back to Nixon.

And Your Honor's questions about, like, well, how are we going to tell? We need to depose the President and say did he really mean it? No. I mean, the courts don't do that. And so it's kind of a dead end in that way, and I think that is why we are stuck with a determination the President made on its face.

Now, I will add that in addition to being legally

foreclosed, I don't think this is a particularly strong pretext argument. There is -- until this referral came out, I'm not aware of any statements the President ever made about Dr. Cook. They say, well, he tried to get Chairman Powell to resign. Okay, but this isn't Chairman Powell. This is Dr. Cook. And the referral came about her. That's when this arose.

There's nothing in the President's statements, either contemporaneous or after, that suggests that the removal was for any reason other than the reason given in the letter.

Now, maybe he's happy to have an opening that he can fill, but that's different from the question of what was the reason and the basis for the removal.

THE COURT: My question was -- let's put it purely hypothetical, because I don't want to suggest or have you acknowledge that this might have happened here.

But in a case where there are explicit statements of a desire to remove members who have policy disagreements, can I look to those? Or you're saying no?

MR. ROTH: The way I read Trump versus Hawaii is there is, at minimum, extreme reluctance to go down that path. I don't want to make categorical statements, never, no hypothetical. But generally speaking, the rule is we look at what the President has said and we evaluate it on its own terms.

And that's the presumption of good faith that the

Supreme Court has reiterated over and over again in this context.

I'll also just say while we're talking about the cause and the referral, counsel said repeatedly, oh, it's just a maybe, we don't know, it's allegations. That's not really what's going on.

The referral letter attaches the documents. It's not like, oh, maybe something happened. They're right there. I looked at them. They have the signature. They make contradictory representations. They're within two weeks of each other.

Now, maybe there's an explanation that that goes to certainly criminal liability. Maybe she didn't read it. Maybe her lawyer told her it was fine. I don't know. They haven't said any of that.

They've been very careful in this brief not to make any representations about what actually happened, any defense, any articulation of what the explanation is for what, on its face, is a contradictory representation about the intent to use and occupy two properties as principal residence at the same time.

THE COURT: What if a stated cause is demonstrably false? That's still not anything that anyone can do anything about?

MR. ROTH: I'm glad we don't have that case, Your

Honor. It's a difficult situation. I acknowledge it's a difficult hypothetical. And that's the thing about non-reviewability rules is they allow for hypotheticals that are uncomfortable.

But again, to the extent that we're going to have judicial review at all, it's going to be a deferential form of review where we're looking at the material and saying is this an extreme abuse of discretion or is this within the range.

And I just don't see the argument that for a very senior financial regulatory official, making contradictory representations on financial documents with no explanation given -- and again, we're now a week later. We have filings, still no explanation given. That that's not a reasonable ground to say a person -- that there's cause for removal? I just don't see it.

THE COURT: I read your brief and I had a strong reaction to the suggestion that there was notice and an opportunity here because of the social media post, and that she didn't respond to it and so that in five days the President acted.

We'll go back to your argument that this is not a protected property interest. But if it was, I mean, you're not suggesting that what happened here would satisfy due process requirements?

MR. ROTH: Oh, yeah, no, I absolutely am. And we can

look at it step by step.

Notice of the concern was given on August 20th.

THE COURT: That's the social media post?

MR. ROTH: It's a -- yes.

THE COURT: Was anything sent to her directly?

MR. ROTH: Well, she certainly knew about it because she was asked about it.

THE COURT: I'm not necessarily equating this to a civil case but you still have to serve someone. You have to give them information.

MR. ROTH: But if there's actual notice, Your Honor, that generally satisfies.

THE COURT: So actual notice. And then in terms of -- how did she know that she had five days to respond?

MR. ROTH: She didn't know she had five days, Your Honor. But the President certainly made clear in that initial statement that he considers this as potential grounds for removal.

And there was, at least as far as the record appears, no response, no intent, no letter saying, hey, I disagree with this, give me a chance to tell you why. No statement of, this is false, I never signed this, or the President is wrong because my lawyer told me this was allowed. Nothing.

No communication at all to the President from a principal officer of the United States over this period of

time. And, again, still today we don't know.

THE COURT: Again, this is why I was asking plaintiff's counsel what the procedures would look like. But at minimum, when you -- when someone has an opportunity to be heard, don't they have to be given information about what their rights and obligations are with respect to that?

MR. ROTH: Well, Your Honor, I think part of the problem of importing this framework into this context is that it doesn't map on very well because a lot of these concepts are -- they're built around sort of civil service statutes that give precise procedures and rights and remedies.

And none of that applies when we're talking about a senior level principal officer, and that's why no case has held that those protections apply to principal officers of the United States, to my knowledge.

THE COURT: Yes, I agree. I'm struggling with that.

MR. ROTH: But I'm trying to get to the purpose of it. The purpose of it is is there some sort of obvious mistake that is sort of potentially being made and is there a chance to remedy that mistake?

And I'm not sure here what the mistake, possible mistake would have been, and they haven't said it. The point of a hearing -- it's not a formal hearing, It's an opportunity to tell your side of the story -- is is there some material, factual dispute. You got it wrong, right? That's not my

signature.

What is that? Like, they haven't said what it is. And I think if there was something like that, then we would have heard it by now, if not in public, then in the filings.

So what's the purpose of saying the President needs to hear her out? Well, what is it that she's going to say and how is it going to change the conclusion in his letter that either this was intentional and, therefore, potentially criminal or, at minimum, it was negligent and therefore itself grounds for removal? I just haven't heard what the story is that she wants to share that would change that in any conceivable way.

THE COURT: What is your reaction to -- when I read the plaintiff's opening brief, I thought they were taking the position that pre-office or pre-position conduct was off limits. They're not going that far.

What is your response to -- what if it's something that was known to the President making the appointment and known to the Senate who confirmed the person?

MR. ROTH: Yeah.

THE COURT: It feels weird to then allow -- and look, there are a lot of things that courts can't review that feel weird. So I'm not suggesting that I fill in a gap that doesn't exist. I'm going to look very closely at the reviewability question.

But if this were reviewable to some degree, it feels

weird that an administration could kind of go back and second-guess the determinations of prior administrations and Congress in their advise and consent role.

MR. ROTH: I had a similar reaction. I think if it was something that was known at the time, it's much harder to say that it's cause later because the presumption is that has gone through the political process and a judgment has been made. But again, that's not the facts here.

THE COURT: I know. But if I rule in a certain way, I want to make sure that it's not something that's just unique to this situation.

MR. ROTH: Of course. I absolutely understand that. I said before that I thought cause is a reason that is more than mere policy disagreement that bears on the individual's ability or fitness to do the job. You could add to that that was not known at the time of confirmation.

THE COURT: How is that fleshed out? What if there's disagreements about what's known at the time? Then you have to look at their materials that they submitted to the Senate and depose the White House officials who did the vetting.

MR. ROTH: I don't think we're going to depose. That's usually a hard no.

THE COURT: Right. That's why I'm thinking of the most kind of extreme example of how you would look into this.

MR. ROTH: Right. And look, that plays into the

reviewability argument, which is maybe we don't go down the road at all. We can define what we think the statute means. And the President is constitutionally obligated to follow the laws of the United States faithfully. And so that applies whether it's reviewable or not.

But yeah, once you start getting into review, we do have a lot of questions that are going to come up.

THE COURT: But then I keep going back to what everyone has agreed is the unique nature of this Board and the need for independence and how that maps on to all of these questions.

Because in other areas where matters aren't reviewable, their independence is not what's going on. This is purely within the prerogative of the President to decide who to pardon, to decide a number of things that courts don't get involved with.

What about the unique nature and the importance of this being an independent body that is not supposed to be responsive to any type of political pressure?

MR. ROTH: Right. Your Honor, all I could really say is that's why we are not contesting for present purposes the legitimacy of the for-cause removal provision. Which is very different from arguments that have been made in the other removal cases over the past number of months.

But that is separate from reviewability. They're two

separate questions. I think on reviewability the governing case law is Reagan, which says it's still committed to the President's discretion. The President has a constitutional obligation to follow the law. It doesn't always mean it's subject to judicial review.

THE COURT: Right. But I think it's kind of circular. In the sense that where there is cause, it's not reviewable, to me is different from the question of if there's cause, which necessarily requires a court to determine what cause is.

If I adopt your definition or if the case law compels that definition, then once a reason is articulated that's outside that definition, it could be highly differential, nothing to do, nothing further to review.

But in the first instance, do you dispute that a court has an obligation to consider an argument? Because their argument essentially boils down to this is not cause. So I was essentially removed from my position without cause.

MR. ROTH: Yeah. We are -- our initial position is that under Reagan it's not reviewable. But I am sort of quickly pivoting to the point that, to the extent it's reviewable, it's a discretionary and therefore deferential level of review.

And all of the factors that counsel on the other side said are relevant are things that are appropriate for the President to take into account, and I don't think this

determination sort of comes close to the edges of that. And, therefore, they can't show likelihood of success on the merits on the substantive claim.

THE COURT: I agree with you when I think about kind of what procedural protections would look like; it is difficult to map on. But I also, as I said, understand very clearly why the case law makes clear that elected officials don't have a protected property interest in their positions. And I understand very clearly why employees do.

MR. ROTH: Right.

THE COURT: This doesn't seem to fit neatly in either category. And it I guess if I had to say what it's closer to, I think I would put it closer to an employee than an elected official. How do I decide --

MR. ROTH: Let me make two points on that. Number one, I think Taylor is the case we cited that involves an elected official.

THE COURT: Yeah.

MR. ROTH: I think that the other case we cited, Crenshaw, not an elected official.

THE COURT: Okay. I'll look at that.

MR. ROTH: And then the second thing I would say is for constitutional purposes the relevant distinction is not elected versus appointed. That's not really a distinction that has a lot of significance legally in the doctrine.

It's between officers and employees. That's the distinction that comes up over and over again in the case law. And of course, you have principal officers and inferior officers and then employees. So there's really three categories.

But the way I see it, the higher you get through that, the lower the standard of sort of any procedural due process protections that apply, because those are much more sensitive political positions than mere employees.

THE COURT: Anything you want to say about irreparable harm?

MR. ROTH: Yeah, I do. I think of irreparable harm, often I think of it as together with the other equitable factors. It's sort of the balance, sort of trying to figure out, all right, if the Court gets it wrong one way versus the other way, who's going to be hurt more.

And I think Wilcox and Boyle resolve it pretty decisively in the government's favor in these removal cases.

The Supreme Court said in Wilcox, I think the harm of having somebody in office who was -- sort of is wrongfully there, that harm outweighs the harm of somebody being wrongfully removed from office for a period --

THE COURT: Isn't that in the context of the Article 2 power? Do you agree that this Board doesn't exercise substantial executive power or would you take issue with that?

MR. ROTH: I don't think we've said that and I don't know that I've taken a position on that.

THE COURT: Okay.

MR. ROTH: But yes, Wilcox is different in the sense that the argument we were making in Wilcox -- the government was making in Wilcox was that the restriction on removal was unconstitutional and, therefore, the President had the power to remove at will.

Whereas the argument we're making here is that the President has satisfied the statutory restriction of for-cause removal. To me, that's a difference that goes to the merits.

For the purposes of the balance-of-harms consideration, where we're just looking at what's worse, somebody being out of office when they should be in or somebody being in office when they should be out, I read the Supreme Court's decision in Wilcox to say that one outweighs the other.

And then the Supreme Court reiterated in Boyle that that governs. Lower courts need to follow that in materially similar cases. And I think those are the same factors we're considering here for purposes of the non-merits piece of the injunction calculus.

THE COURT: If I could go back to the due process question, because you were drawing a distinction between employees and officers.

MR. ROTH: Yeah.

THE COURT: And I'm recalling cases that seem to equate the protections because they arise from the for-cause provisions of the statutes. Meaning that where a statute allows removal for cause, that that's what provides a property interest. Can you speak to that?

MR. ROTH: They make sort of a constitutional due process argument and then they make a sort of the statute confers the protection. But I think, again, they'll take the Court back to Reagan because I think that -- respectfully, I think they're misreading the case.

What the Supreme Court said was that if the statute provides a list of causes, then you need to be told which one is the one that covers you. And then there's some opportunity to say, no, that's wrong, it's not -- I don't fit within it.

But the court said when there's no list, that doesn't apply. That was true in Reagan and it's equally true here. And that makes sense because when we're not talking about a sort of reticulated scheme where you could say, no, I'm not covered by C-5, this is cause. It's very open-ended. That standard doesn't really make any sense in that context.

THE COURT: Let's make a huge assumption that there was a due process violation of some sort. What would be the appropriate remedy and is that in and of itself a form of irreparable harm that maybe makes it distinct from other cases that I don't necessarily understand if those cases also involve

specific constitutional --

MR. ROTH: Let me take the second piece of that first. I don't think it's different from an irreparable harm standpoint because I think that the thing that is being deprived is the office or the employment, which is the same thing as in all the other removal cases that we've been talking about.

By the way, the most recent one to sort of catalog the law is the Perlmutter. The Library of Congress case goes through this in a lot of detail.

THE COURT: Yeah.

MR. ROTH: So I understand, like often we say deprivation of First Amendment rights is irreparable harm. That's because you want to speak. You're not speaking. You can't go back in time and speak.

Here, if the argument is, well, I was entitled to an opportunity to challenge this in advance, I didn't get it, what's the consequence? The consequence is I'm not in office right now when I should be. That's exactly the same harm that is addressed in those other cases.

In terms of what the remedy would be if the Court found that there should have been that opportunity, I think that's really tricky because, again, I have not heard -- I still have not heard, at least, from my understanding, what they think the hearing would accomplish, what is the fact they

want to present. And I think --

THE COURT: I don't even know if they're saying that there needs to be a hearing, so to speak.

MR. ROTH: I'm using that in a colloquial sense. The opportunity to be heard, to say what.

THE COURT: A response. Using it colloquially, like that it's just responding by letter and having it read might be sufficient.

MR. ROTH: Right. So the remedy really isn't reinstatement. It's like, okay, send the letter and maybe the President will change his mind. Sometimes he changes his mind about things.

But I don't see how that gets them to reinstatement. And I just don't think they've made the showing that would be necessary for a preliminary injunction, that that would make a difference under these circumstances when I think the President's letter was pretty clear.

Either it's A or it's B but either way I conclude that it's cause. And I have not heard anything from them to say, oh, no, it's neither A nor B, there's some third explanation for this that doesn't actually track either of those possibilities. And if that existed, I would have expected to have heard it.

THE COURT: If I can go back, again, I think the acknowledgment that it can't be for policy disagreements, I'm

trying to think how that -- when there is an accusation or an allegation in a complaint that someone has been fired for personal policy agreements, President's letter does not reflect that, yes, it's highly deferential. But what does a Court do?

Deferential doesn't mean that there's no probing of it, it just means that you assume good faith and defer. But it doesn't mean that there's not a review, that there's not an inquiry that takes place. So what does that look like?

MR. ROTH: Well, I think the Supreme Court decisions really don't contemplate it. So it's hard for me to tell you like, oh, in these circumstances that would be allowed.

The way I read those cases, you don't probe. When the President is statutorily empowered to make a determination that's discretionary and he makes the determination and on its face it's valid, we don't probe the sincerity or the motives. That's just the general rule.

And again, if there's some extreme case, I don't want to be super categorical but I can't concede that like, oh, yeah, if it was on these facts we think the Court would be allowed to call them in for a deposition and ask him, did you really mean it, or override it when its on its face it's valid. That's Trump versus Hawaii. We litigated that.

THE COURT: Okay. I don't have any other questions unless you wanted to say more in response.

MR. ROTH: No. I think I covered the points I wanted

to cover.

Thank you, Your Honor, for your time.

THE COURT: All right. Thank you.

MR. LOWELL: Let me take the time to respond to what counsel said and only what counsel said.

THE COURT: Okay. You have the last word. It's your motion.

MR. LOWELL: Thank you. First thing that I wrote down that he said was this is not that case where the President is just asserting, I have Article 2 power, period. He said the President concedes that he has Article 2 power but had to frame it in the statute's requirement for cause.

But, Your Honor, there's no difference if the President says, I have Article 2 power, and by the way, I am putting in the single word "cause" without explaining in any fashion the basis of that cause. Or, as we have been spending many minutes on, what does it mean to get to the point where there is the ability to contest that cause.

In other words, just putting the word "cause" next to Article 2 doesn't make it better. The cause has to stand for something, and just simply using the word doesn't seem enough.

So if that's not enough, the President gave you what he meant. Again, I point out the August 26th public statement, when he said if she had acted properly.

And you would have thought that that would have then

followed with look what she did on her alleged form. But that's not what he said. The propriety of what he said was that she wouldn't go along with an interest rate, which the government agrees would be a policy issue, which the courts have said is not the same as cause.

Counsel then said you defer to the President if there's, quote, any reason to call into question a person's fitness.

Any reason? Not in the face of something that calls for cause. So they're synonymous? Any reason now is cause.

Well, what does he mean by any reason? I have to because you and I and he are dealing with hypotheticals. I don't know what that could possibly mean.

Could the President decide that it was cause because Federal Governor Cook decides to attend her meetings in a pants suit versus a dress, and he doesn't think that is enough respect for the institution? That's cause.

Did he mean that she teaches at a school that he disagrees with because of their DEI policies, and that's cause? Or you don't agree with my decision to lower the interest rates because you didn't consider the right factors?

Well, we know that can't be. So where along the continuum is, to use counsel's phrase, any reason to call into question a person's fitness?

Then, as to the issue of my explaining that, again,

we're being very cautious, I use the word "pretext" in its context of what you asked me about. When there's no cause, you look at its surrounding. If a word in a statute isn't clear, you look for the surrounding words to make it clear and other such things.

And he said, well, sure, he said that about Chairman Powell. He never said anything about Governor Cook at the time that he was railing about Chairman Powell. Okay, we'll accept that. But when he took his best swing in his baseball bat against the Chairman and that didn't get him what he wanted, then he took the swing at the next person up at the plate. And that has context.

It doesn't answer the question if he misuses the word "fraud" or he misuses the FHA, and it doesn't succeed against the first Governor and then he moves to the next Governor, that has context.

Counsel said you look at what the President said. And I've already indicated more than once, and I won't do it a third time, what it is the President said when it was asked what it was to be proper.

And then I want to talk about this idea that Governor Cook has had all this opportunity to respond and hasn't. Really? She's had all this opportunity? It was this posting at a social media by Director Pulte.

And then in the brief, counsel for the government says

they took great pains not to discuss the allegations. But today in court stands up and says, well, look at the allegations. She had these two different entries and he says they're contradictory.

I don't accept his conclusion that they're contradictory. Certainly not here. But at the same time he can't have it both ways. He can't say that she had an opportunity -- and we're not getting into the merits. And he says in all this briefing there's not one part which talks about what she would have answered.

That's not the place for this. The place is not in the pleading in which we say she hasn't been given an opportunity. By the way, we don't say here is the response to the President having no basis to remove her, but let me tell you in the next 15 pages what her defense to an allegation would be if it was properly made against her.

There is, then, opportunity but it's not in the briefing as to whether or not there should be a TRO because whatever "cause" means, it means something different than what was done to seek her removal.

And it can't be, as I said when I rose to the podium the first time, that we're supposed to litigate the merits of this underlying, unsubstantiated charge by way of, as I said, my now having to sign on to social media, which I've avoided for however many years, so that I can respond in that fashion.

There's a place for that response, with documents and facts and that could be the chair -- to the Pulte or whatever. But it's certainly not in a brief that's raising that this shouldn't have happened the way it did. And it's not because we have the ability to respond even to the 31 remaining tweets. I guess you call it a tweet even if it's not on Twitter. I don't remember. But anyway, that's not the place.

And as to his saying look at what the President did, boy, did she have an opportunity. Wow, 30 minutes after Director Pulte posted, 30 minutes, the President said she needs to resign because what she did was bad. And if she doesn't resign -- not answer the charge, not give me information, not give Pulte. If she doesn't resign, I'm going to fire her.

That is not an opportunity to be heard.

As to the issue of the officers of not having -- and we will address this but I did before raise the issue of the case. It is Shurtleff versus United States. It's a Supreme Court case in 1903.

I thought in their brief and at the podium he said that if there's an officer, there's no due process right. You're parsing whether it's an employee or an officer or an elected officer and appointed officer. That case directly contradicts the idea that if the person is an officer, and whether it doesn't distinguish between senior and not, that officer's removal does get the right to have due process.

So we will address that. But I think that parsing as to what kind of officer gets that you'll see doesn't solve the problem of what happened here.

And again, I point out this notion that if we're trying to figure out what processes do, which is always the phrase a court uses, not only as what processes do is where that should take place, and we haven't had that opportunity.

And if what the government is now saying is, well, you should have -- first, Pulte does it privately to the Attorney General on the 15th. No one knows about that. Then he decides to make it public, not to her but to the world, on the 20th, making the allegations in that first one. There's no particular way that you could address that.

And that decision or lack of decision to answer him right away in a public media is what the due process clause allows or requires? I don't think so.

And then he has added now the phrase "reason to call into question a person's fitness." So I question, okay, by who? We know. The President.

And he has added, okay, so now we'll add that was known at the time. And Your Honor has already come to that question.

So that's an interesting concession. I can assure you that in the vetting process of the United States Senate for something as important as the Governor of the Federal Reserve

Board, her financial documents, bank records, loans, et cetera were submitted as part of the vetting and part of the presentation, and the Senate had the opportunity to look at them.

And so if they're saying that there's this glaring contradiction between two houses that at one point might have been, quote, contradictory because they're both principal, well, again, I don't know how you want to go back in time but I will tell you that -- and if all I need to do is in our next show that we submitted -- we, the Governor submitted all of that into the Senate, we can do that as well.

So I like the concession and, therefore, if that's the case, we'll take it. And therefore, a new President shouldn't undo what the past President did of everything that Director Pulte did was before them at the time that they made their decision to confirm.

The next thing he said was on the irreparable harm, and I think Your Honor questioned that and questioned it in the right way as to whether we were talking about an agency that has that executive power when he talks about Wilcox and others.

And consequently, he mentioned -- or you mentioned Dellinger. I think the question was Dellinger was allowed to remain in office for the period that goes to the litigation, which goes, again, to not removing somebody in the context of these issues being litigated for the irreparable harm.

And then, I think, he also then concluded with two points that I'll conclude on. The first is that he said, so if the issue is whether somebody should be out, is out when they should be in, versus the harm about that she is in when she should be out, that's a tautology that basically turns on its head everything we've been discussing for the last however many minutes or hours.

Again, it goes to the issue of what do you mean should be out when she should be in. That, then, underscores all the issues of what is for cause, what is the opportunity to contest that cause.

And it's certainly not counsel for the government sitting at a podium or me representing Governor Cook that should be the ones to figure out, now, at this juncture, that she should have been out when in or should have been in when out. That's what a process requires.

Then you ask if the due process, what is the remedy. And I think I need to point out the slight contradiction in the positions of the government, where at one hand they say, well, she had five days to answer a tweet and she didn't. And they say, well, you could have put it into your brief on the issues we're here today for, but that's not the place it should be.

And so, consequently, she got all the opportunity she needed and she didn't take it. So consequently, it stands uncontradicted. So consequently, everything that happened is

okay and this should stand. None of that is the case.

And finally, I just want to, again, point out that we are in a unique situation because of the history of the Fed and its Governors, et cetera.

But it shouldn't be that the government gets to say look at how unique the Fed is as a way of defending their dismissal of an NLRB member or a Consumer Product Safety Board member or a PCAOB member. Because they say, so look, if it was the Fed we wouldn't be saying this, and now it is the Fed and they're saying the same thing. Thank you.

MR. ROTH: Am I able to make just a couple quick points?

THE COURT: Sure.

MR. ROTH: Sorry, I know it's surrebuttal but just to clean up a couple things.

THE COURT: Okay.

MR. ROTH: So counsel mentioned a few times this August 26th press statement.

THE COURT: Yes.

MR. ROTH: I think it's a YouTube clip. I confess, I haven't watched it. But based on the way it was quoted in their brief, I understood it to be saying something very different.

I thought the quote was that if the reporters had done their job, we would not have Dr. Cook on the Board because

these issues would have been fleshed out years ago. So I did not understand that at all to be some sort of concession of, oh, well, the real reason was something about interest rates. But I have to watch it.

The second point, counsel says the brief is not the place to make our case about why this was unfair or not a legitimate rationale for termination because we were entitled to make that argument to the President first. That seems to be what he's saying.

But Your Honor, we're here in equity. They're asking for preliminary injunction. They need to show why it matters. They need to show what is the fact in dispute that they would have contested had they been given the chance, because otherwise this is all futile.

And I don't need to go as far as to say it's unclean hands that they haven't contested, like the underlying facts, but it's certainly not enough to get an injunction.

And then, finally, on Dellinger and the balance of harms, the way the injunction factors work, you consider the merits and then separately you ask if one side is -- we assume one side is right on the merits and the Court goes the other way, what's the harm? Compare that to if --

THE COURT: Right.

MR. ROTH: The opposite. That's what I was saying with you weigh the harm of a wrongful person -- you know, a

person being in when they should be out versus being out when they should be in, it assumes the weight of the merits because that's a separate factor on the preliminary injunction test.

And under Dellinger, Dellinger was stayed. I don't know what counsel's referring to. Yes, he was allowed to -- he was reinstated and then the D.C. Circuit stayed that and said that's wrong, and then he dismissed the case.

So yes, he was temporarily allowed to remain but the D.C. Circuit overturned that decision. So I don't know how it helps him.

Thank you for your indulgence.

MR. LOWELL: Last sentence and then I'm done.

THE COURT: Okay.

MR. LOWELL: The difference is that the President has made clear what he'll do that's different than the facts of Dellinger. So by the time we get to the point of where Dellinger was, she'd be out of her job, her seat would be filled, it wouldn't be possible to do what was done to get her back when she should have never been taken out to begin with. We will address that further.

THE COURT: Okay.

MR. LOWELL: You've been very indulgent. I appreciate it.

THE COURT: No, this is very helpful.

Can I have you stay at the podium so we can just

figure out scheduling.

So you're going to file a reply on Tuesday. And then in terms of next -- does it make sense for me to ask the parties to just confer about next steps?

Because what's on the table is, instead of a TRO, this is a PI -- this converts to a PI. Or you're going to separately file a PI and then summary judgment, or we just expedite summary judgment and dispense with some of these preliminary steps.

MR. LOWELL: I think -- I'm sorry, go ahead.

MR. ROTH: I'm happy to confer. I'm not sure there's a purpose served to another motion.

THE COURT: Right. I'm trying to avoid --

MR. ROTH: Like if you're going to file a reply and maybe we have something we want to say, but that doesn't require a whole new motion, starting over.

MR. LOWELL: I don't disagree with that. I do think that as you have given us the ability, I want to read the 30 pages in detail and I will have a response. If I said something that you feel like you need to, I don't know, you should probably do that.

I don't know that we need that interim step but what we do need to figure out is what's going to happen in between.

And again, using your Dellinger point, it's not going to work. If the government's position is let this play out for

another day or three days, seven days, and in the interim the president fills the seat that Governor Cook should have never been relieved of -- I will talk to counsel and the Federal Reserve --

THE COURT: I do agree. I have so many cases where there's different iterations of the same brief being filed over and over with different labels, and if we could just get to the point and give me a little time to think about these novel issues.

So yeah, if you want to just talk and let me know what you're going to do. I certainly would give you -- both sides an opportunity to supplement what they filed, because I know everyone did it on very quick timelines.

Okay. And if you could do that on Tuesday in connection with this reply and let me know what's coming, that would be helpful.

MR. LOWELL: We'll try to do that. We'll figure out a way to get in touch.

THE COURT: Okay. If there's nothing else, thank you everyone.

(Proceedings concluded at 12:02 PM)

C E R T I F I C A T E

I, Stacy Johns, certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

/s/ Stacy Johns Date: August 29, 2025

Stacy Johns, RPR, RCR
Official Court Reporter

DEPUTY CLERK: [1] 2/2
MR. CHADWICK: [2] 2/16 2/23
MR. LOWELL: [84] 2/7 3/8 3/21 4/1 4/4 5/5 5/9 6/11 6/16 6/22 7/10 7/14 8/20 8/23 9/2 9/6 10/2 10/4 10/23 11/16 13/5 13/18 13/24 14/23 15/24 17/2 17/10 17/15 18/2 19/1 20/3 20/23 21/6 22/12 23/13 23/15 23/24 24/3 24/22 25/11 27/17 32/12 32/19 33/8 33/16 34/4 35/17 37/3 37/7 37/13 37/16 37/18 38/2 40/5 40/17 41/14 41/16 41/21 42/7 42/18 42/22 43/10 44/19 44/23 46/1 46/8 47/21 48/15 49/15 49/25 50/13 51/17 51/25 52/12 53/2 53/6 76/4 76/8 86/12 86/14 86/22 87/10 87/17 88/17
MR. ROTH: [57] 2/12 9/14 9/19 11/9 54/19 54/21 55/1 55/4 55/16 55/20 56/7 57/14 57/18 57/21 58/13 58/21 59/1 59/11 59/14 60/19 61/25 62/25 63/4 63/6 63/11 63/15 64/7 64/17 65/19 66/4 66/12 66/21 66/25 67/20 68/18 69/10 69/15 69/19 69/22 70/12 71/1 71/4 71/25 72/6 73/2 73/12 74/4 74/9 75/9 75/25 84/11 84/14 84/17 84/20 85/24 87/11 87/14
THE COURT: [138]

**$**

$10,000 [3] 34/11 34/15 34/20

**/**

/s [1] 89/8

**0**

02903 [1] 1/4

**1**

10,000 [1] 34/17
100,000 [2] 34/16 34/17
101 [1] 13/13
10:00 [1] 1/5
11 [1] 21/20
11-page [1] 21/20
1100 [1] 1/18
111 [1] 15/14
11:00 [1] 18/14
1250 [1] 1/14
12:02 [1] 88/21
14 [3] 11/24 19/2 41/4
14-year [3] 11/24 19/2 41/4
15 [1] 79/15
15 pages [1] 79/15
15th [1] 81/10
1901 [1] 38/20
1903 [1] 80/18
19th [2] 26/13 28/23
1:25 [1] 1/4
1:25-CV-02903 [1] 1/4

**2**

2 [10] 12/4 20/6 20/10 30/1 56/18 70/23 76/10 76/11 76/14 76/20
20 [2] 29/10 43/13
20 years [1] 29/10
20-minute [1] 43/13
20005 [1] 1/15
2001 [1] 31/13
2025 [2] 1/5 89/8
2038 [1] 11/25
20530 [1] 1/19
20551 [1] 1/22
20th [6] 1/21 12/12 26/13 27/3 63/2 81/11
25 [1] 2/3
25-2903 [1] 2/3
250 [1] 1/14
25th [2] 12/1 29/25
26th [4] 26/25 30/12 76/23 84/18
29 [2] 1/5 89/8
2903 [1] 2/3
29th [1] 48/21

**3**

30 [7] 3/12 12/23 53/12 53/21 80/9 80/10 87/19
30 minutes [3] 12/23 80/9 80/10
30 pages [2] 53/21 87/19
30-some-odd [2] 3/12 53/12
31 [3] 29/21 39/19 80/5
36 [1] 39/20
36 hours [1] 39/20

**5**

5 [1] 72/19
5:00 [1] 8/16

**8**

80 [1] 54/4
80 percent [1] 54/4
8:00 [1] 12/1

**A**

a.m [1] 1/5
Abbe [2] 1/13 2/7
ability [15] 5/19 5/20 6/5 12/3 23/25 38/24 46/25 49/18 52/5 55/13 57/19 66/15 76/18 80/5 87/18
able [9] 4/15 10/8 10/19 21/10 27/1 48/7 52/19 53/9 84/11
about [77] 4/19 6/1 7/1 7/25 8/8 9/13 11/12 12/8 14/10 14/12 15/19 16/8 16/16 21/18 21/19 22/9 22/23 25/25 26/9 26/19 26/20 30/8 31/24 35/1 35/12 36/18 36/24 37/8 37/12 38/25 40/10 41/23 41/25 45/20 47/2 48/12 50/8 50/15 51/12 51/18 53/13 53/14 56/4 58/1 59/19 60/3 60/6 61/3 61/17 61/19 61/24 62/2 63/6 63/7 64/5 64/12 66/18 67/17 69/4 70/10 72/17 73/7 74/12 78/2 78/6 78/7 78/8 78/21 79/10 81/10 82/19 82/20 83/4 85/3 85/6 87/4 88/8
above [2] 30/15 89/5
above-entitled [1] 89/5
absence [1] 13/21
absolute [2] 17/11 18/4
absolutely [5] 19/21 37/24 41/4 62/25 66/12
abundantly [1] 25/15
abuse [1] 62/8
abusive [1] 55/22
academic [1] 50/17
academicians [1] 10/9
accept [5] 10/24 33/17 34/25 78/8 79/5
accepted [2] 14/16 48/2
accomplish [1] 73/25
according [1] 12/11
account [4] 27/24 39/23 58/5 68/25
accountant [2] 36/3 44/1
accurate [2] 32/10 89/4
accusation [1] 75/1
accusing [1] 36/3
acknowledge [2] 60/15 62/1
acknowledged [2] 50/13 54/24
acknowledging [1] 50/11
acknowledgment [1] 74/25
act [6] 15/9 16/4 16/8 29/3 37/13 54/7
acted [4] 29/18 43/2 62/20 76/24
acting [1] 31/24
action [13] 1/3 2/2 4/11 4/12 12/11 23/6 23/17 23/22 36/8 40/19 43/11 45/10 50/23
actions [2] 27/19 27/20
actor [2] 23/10 24/1
acts [5] 29/24 43/10 43/17 44/6 44/25
actual [5] 23/5 25/1 26/5 63/11 63/13
actually [7] 7/1 10/14 13/13 22/15 23/22 61/17 74/21
add [5] 25/7 59/2 59/25 66/15 81/20
added [4] 18/2 54/3 81/17 81/20
addition [1] 59/25
additional [3] 7/23 29/21 30/12
address [22] 4/20 20/24 20/25 21/8 22/3 22/4 22/6 22/14 24/6 26/1 26/19 41/17 41/21 46/1 48/9 50/4 52/10 53/23 80/16 81/1 81/13 86/20
addressed [3] 18/7 51/10 73/20
adequate [1] 38/3
adjudicate [1] 22/2
adjudication [1] 18/15
administration [6] 7/21 31/3 43/5 48/24 55/10 66/1
administrations [1] 66/2
admission [6] 32/4 32/12 32/13 34/7 34/14 34/25
admit [2] 34/20 41/9
admits [1] 35/8
adopt [4] 19/24 25/5 31/15 68/10
advance [1] 73/17
advantage [1] 12/19
advise [2] 48/25 66/3
advised [1] 44/1
affect [2] 19/6 26/15
affected [1] 24/1
after [4] 34/23 39/22 60/8 80/9
again [37] 17/6 20/3 28/16 28/23 30/2 31/19 35/23 39/1 39/7 41/14 41/17 45/9 46/5 48/9 48/17 51/17 51/18 53/3 61/1 62/5 62/12 64/1 64/2 66/8 70/2 72/8 73/23 74/24 75/17 76/23 77/25 81/4 82/8 82/24 83/8 84/2 87/24
against [9] 23/21 31/4 40/19 42/15 43/1 50/23 78/10 78/14 79/16
agencies [1] 13/11
agency [8] 16/3 16/14 16/20 41/17 43/11 44/8 46/17 82/19
agents [1] 54/12
ago [6] 25/16 48/21 48/21 52/20 54/13 85/1
agree [9] 6/9 14/1 18/25 22/9 64/16 69/4 70/24 77/20 88/5
agreed [3] 23/12 48/2 67/9
agreeing [2] 28/5 50/9
agreement [1] 23/3
agreements [1] 75/3
agrees [10] 22/19 32/6 33/24 35/4 36/10 36/11 36/11 36/12 36/13 77/4
ahead [2] 8/4 87/10
aided [1] 1/25
aim [1] 28/24
al [2] 1/6 2/3
Albert [1] 47/22
Ali [1] 49/25
all [51] 4/22 16/19 21/4 22/19 24/9 24/9 24/11 24/23 24/24 30/25 31/24 33/9 35/5 37/2 37/25 38/7 38/24 39/22 45/21 48/17 52/8 52/19 52/20 53/12 54/3 54/3 54/5 54/9 55/7 55/17 57/13 58/5 59/9 62/6 63/24 67/2 67/10 67/20 68/23 70/15 73/6 76/3 78/22 78/23 79/9 82/9 82/10 83/9 83/23 85/2 85/14
allegation [12] 18/13 28/9 28/13 29/14 31/4 32/16 43/1 43/3 43/4 43/21 75/2 79/15
allegations [10] 31/24 31/25 32/6 33/1 39/16 42/14 61/5 79/1 79/3 81/12
alleged [5] 17/19 19/15 29/24 32/10 77/1
allow [3] 59/16 62/3 65/20
allowed [8] 48/5 53/3 63/23 75/11 75/20 82/22 86/5 86/8
allows [4] 4/22 5/3 72/4 81/16
almost [1] 31/3
alone [2] 20/12 28/15
along [6] 2/8 30/24 35/13 48/1 77/3 77/22
already [14] 8/6 9/21 10/5 10/6 10/7 30/7 39/1 47/5 48/19 49/7 49/7 49/16 78/18 81/21
also [19] 3/7 3/10 5/1 10/10 12/12 18/8 19/25 22/21 29/19 48/11 49/12 52/1 52/7 59/6 59/18 61/3 69/6 72/25 83/1
although [2] 26/16 29/17
always [5] 35/7 50/15 56/13 68/4 81/5
am [7] 7/21 17/3 59/6 62/25 68/19 76/14 84/11
ambiguous [1] 46/3
Amendment [1] 73/13
America [1] 30/22

**A**

**American [1]** 40/19
**amicus [4]** 10/11 10/19 10/24 11/9
**among [1]** 53/21
**amount [3]** 35/1 36/1 52/9
**analogous [1]** 40/4
**analysis [1]** 27/24
**announced [1]** 48/19
**another [4]** 26/22 31/12 87/12 88/1
**answer [18]** 3/1 3/17 6/7 8/13 17/10 25/11 25/13 25/14 31/18 34/5 41/21 42/25 45/11 45/16 78/13 80/12 81/14 83/20
**answered [1]** 79/10
**answering [1]** 8/3
**ante [2]** 6/4 52/21
**any [49]** 2/19 2/21 3/1 4/11 4/12 7/16 8/13 10/21 11/7 12/20 17/4 20/15 20/17 22/20 22/20 29/13 29/15 31/3 32/1 34/22 35/11 36/25 42/19 43/15 44/13 49/20 50/11 50/23 55/2 57/7 57/11 57/13 60/3 60/9 61/15 61/17 61/17 61/18 65/11 67/19 70/7 72/20 75/23 76/15 77/7 77/9 77/10 77/11 77/23
**anyone [2]** 19/23 61/23
**anything [12]** 8/5 35/25 39/17 42/13 52/7 55/17 61/23 61/23 63/5 70/10 74/19 78/7
**anyway [2]** 44/5 80/7
**APA [1]** 44/7
**apex [1]** 58/8
**apologizes [1]** 33/15
**apparent [1]** 16/2
**appear [1]** 13/25
**APPEARANCES [1]** 1/12
**appearing [1]** 49/10
**appears [7]** 12/17 12/22 13/1 21/24 27/6 39/4 63/19
**applicant [2]** 11/4 11/5
**application [1]** 35/6
**applied [2]** 29/10 39/8
**applies [2]** 64/12 67/4
**apply [5]** 53/15 53/16 64/14 70/8 72/16
**appointed [5]** 40/25 41/3 46/4 69/24 80/22
**appointee [1]** 46/17
**appointment [1]** 65/17
**appoints [1]** 19/3
**appraiser [1]** 41/16
**appreciate [1]** 86/22
**appropriate [4]** 20/19 21/3 68/24 72/23
**April [1]** 27/18
**arbiter [1]** 29/4
**arbitrary [1]** 44/8
**are [70]** 2/9 2/9 4/11 7/11 10/8 10/13 11/22 14/7 14/9 15/15 16/2 16/13 17/7 19/20 20/12 23/1 23/11 23/18 24/3 30/5 31/13 31/25 32/18 32/20 33/12 33/13 34/2 34/10 35/5 35/20 37/11 38/6 38/9 38/14 38/22 40/17 42/1 44/17 44/23 45/21 46/25 47/16 47/17 47/17 49/10 49/13 49/15 50/25 55/6 55/7 56/17 56/18 57/3 59/19 59/23 60/16 62/4 64/6 64/10 65/21 67/7 67/21 68/18 68/24 68/24 68/24 70/8 71/19 77/12 84/3
**area [2]** 20/3 48/8
**areas [1]** 67/12
**aren't [1]** 67/12
**arguing [4]** 8/2 13/8 20/21 21/19
**argument [21]** 2/20 2/25 10/10 15/3 22/8 36/24 47/10 47/13 49/12 59/6 60/2 62/9 62/21 67/1 68/15 68/16 71/5 71/9 72/7 73/16 85/8
**arguments [4]** 4/25 5/4 7/22 67/23
**arise [1]** 72/2
**arose [1]** 60/6
**around [4]** 12/1 17/1 50/22 64/10
**Article [9]** 12/4 20/6 20/10 56/18 70/23 76/10 76/11 76/14 76/20
**Article 2 [9]** 12/4 20/6 20/10 56/18 70/23 76/10 76/11 76/14 76/20
**articulate [3]** 20/19 21/3 41/10
**articulated [4]** 19/22 23/21 55/3 68/11
**articulation [1]** 61/18
**as [101]**
**ask [6]** 3/15 34/21 75/20 83/17 85/20 87/3
**asked [14]** 3/10 15/12 18/3 25/5 34/6 34/17 34/18 35/3 36/1 36/2 53/7 63/7 78/2 78/19
**asking [15]** 17/8 24/25 30/6 31/9 31/13 39/14 41/24 46/14 52/16 52/22 52/23 52/24 52/25 64/2 85/10
**asks [2]** 34/10 40/14
**aspect [1]** 29/7
**asserting [2]** 25/22 76/10
**Assistant [1]** 1/16
**ASSOCIATES [2]** 1/13 2/8
**assume [5]** 22/9 33/12 42/10 75/6 85/20
**assumed [1]** 50/15
**assumes [1]** 86/2
**assuming [6]** 25/4 25/4 32/21 32/22 51/14 51/15
**assumption [1]** 72/21
**assure [1]** 81/23
**atmospherics [4]** 25/8 26/1 26/9 29/2
**attaches [1]** 61/7
**attacked [1]** 48/10
**attacking [1]** 28/8
**attend [1]** 77/15
**attention [2]** 12/8 41/22
**Attorney [2]** 1/16 81/9
**August [13]** 1/5 12/1 12/12 26/13 26/25 27/3 28/3 28/16 28/23 63/2 76/23 84/18 89/8
**August 19th [1]** 28/23
**August 20th [3]** 12/12 26/13 63/2
**August 26th [2]** 76/23 84/18
**authority [11]** 13/20 15/22 16/10 16/16 20/2 20/15 20/17 21/2 45/22 49/20 56/11
**Avenue [1]** 1/21
**avoid [1]** 87/13
**avoided [1]** 79/24
**aware [2]** 38/20 60/3
**away [5]** 5/22 46/25 47/3 48/7 81/15

**B**

**B [2]** 74/18 74/20
**back [22]** 11/13 16/3 22/16 30/8 31/22 35/23 46/12 46/24 50/3 50/3 52/12 56/7 59/18 62/21 66/1 67/8 71/22 72/9 73/15 74/24 82/8 86/19
**backfill [1]** 29/22
**background [3]** 29/12 54/11 56/15
**backwards [1]** 29/10
**bad [8]** 13/3 23/17 24/1 24/15 24/17 24/17 55/10 80/11
**Bailey [1]** 2/13
**baked [1]** 42/9
**balance [4]** 51/22 70/14 71/12 85/18
**bank [6]** 18/16 18/17 35/6 35/7 46/24 82/1
**bank's [2]** 54/3 54/4
**banks [2]** 53/25 54/8
**Bar [1]** 45/10
**barely [1]** 12/23
**Barr [1]** 26/24
**baseball [1]** 78/9
**based [7]** 4/13 7/4 17/24 24/11 43/3 55/18 84/21
**basic [1]** 42/21
**basically [6]** 14/15 18/8 20/17 31/10 52/15 83/5
**basis [14]** 11/3 17/4 17/20 27/4 35/25 38/22 43/17 43/18 43/19 44/7 46/11 60/12 76/16 79/14
**bat [1]** 78/9
**be [186]**
**bear [1]** 23/24
**bearing [1]** 30/12
**bears [1]** 66/14
**became [1]** 18/11
**because [78]** 4/6 5/9 7/24 8/8 11/13 12/4 13/14 14/23 16/11 18/7 19/13 20/3 20/5 20/25 22/15 23/7 24/23 25/22 26/22 28/10 33/20 34/11 35/18 39/11 40/10 41/3 41/25 42/3 42/23 44/12 44/19 44/20 44/24 45/9 45/11 45/21 48/9 50/1 50/10 51/5 51/13 52/20 53/6 53/10 56/15 58/15 60/14 62/18 63/6 63/23 64/9 66/6 67/12 68/15 70/8 71/23 72/2 72/9 72/17 73/4 73/14 73/23 77/12 77/14 77/19 77/21 79/18 80/4 80/11 82/7 84/3 84/8 84/25 85/7 85/13 86/2 87/5 88/12
**become [2]** 28/13 29/9
**becomes [4]** 19/1 24/12 35/20 52/3
**been [42]** 2/9 8/9 10/7 10/8 13/9 14/20 18/25 19/8 26/22 29/1 29/24 39/4 39/19 41/5 41/7 43/22 46/10 46/11 48/16 48/25 50/13 50/14 57/22 58/15 61/16 64/22 66/7 67/23 73/6 73/22 75/2 76/16 79/12 82/7 83/6 83/15 83/15 85/1 85/13 86/19 86/22 88/3
**before [31]** 1/9 3/4 3/9 3/16 8/8 12/14 17/25 18/10 18/18 19/15 19/16 19/18 21/4 21/13 26/4 26/12 27/6 27/18 27/24 28/23 29/10 31/5 40/1 42/17 43/10 49/15 52/20 53/12 66/13 80/16 82/15
**begin [5]** 19/8 24/16 29/15 30/3 86/19
**beginning [1]** 8/10
**behalf [3]** 2/8 2/13 2/17
**being [32]** 5/23 6/3 7/17 16/5 18/12 29/3 34/1 36/1 41/6 41/8 41/22 43/21 48/3 48/6 48/7 49/1 50/16 52/3 52/3 52/4 59/25 64/19 67/18 70/21 71/14 71/15 73/4 78/1 82/25 86/1 86/1 88/6
**beings [1]** 35/19
**believe [6]** 5/14 10/24 46/11 48/7 51/2 51/11
**benefit [1]** 8/24
**Benefits [1]** 47/22
**Bessent [1]** 53/23
**best [3]** 21/2 43/25 78/9
**better [2]** 45/6 76/20
**between [8]** 16/19 22/22 43/21 70/1 71/23 80/24 82/6 87/23
**beyond [6]** 8/16 32/6 38/6 55/2 55/23 57/6
**big [1]** 15/17
**Bill [2]** 43/5 43/6
**bit [6]** 11/12 17/1 22/8 46/1 46/2 51/12
**block [1]** 38/3
**board [31]** 1/20 2/17 4/7 4/18 10/9 11/25 16/5 18/21 23/19 26/14 27/2 27/22 27/23 28/5 28/14 30/14 30/15 30/16 47/19 47/23 48/22 51/19 52/8 55/7 56/5 59/8 67/9 70/24 82/1 84/7 84/25
**boards [1]** 13/10
**body [6]** 17/1 29/7 33/6 38/18 47/17 67/18
**boiled [1]** 11/20
**boils [1]** 68/16
**borrowing [1]** 17/7
**both [11]** 10/18 15/25 22/18 28/7 31/6 39/10 44/23 54/14 79/7 82/7 88/11
**bounds [1]** 58/19
**boy [1]** 80/9
**Boyle [2]** 70/17 71/17
**bragged [3]** 26/25 30/4 49/8
**Branch [1]** 1/18
**brief [20]** 4/23 7/6 8/6 10/22 11/18 25/23 47/7 53/11 53/23 54/14 61/16 62/16 65/13 78/25 80/3 80/19 83/21 84/22 85/5 88/6
**briefing [9]** 5/2 6/10 6/20 6/25 9/21 9/22 15/2 79/9 79/18
**briefly [1]** 25/13
**briefs [4]** 4/9 7/7 32/9 56/13
**bring [1]** 12/8
**broad [1]** 56/6
**brother [1]** 53/21

**B**
**brothers [1]** 48/1
**brought [2]** 10/21 41/22
**building [5]** 28/12 28/12 29/8 38/3 49/17
**built [1]** 64/10
**bullet [1]** 24/24
**business [1]** 9/23

**C**
**C [4]** 2/1 72/19 88/22 89/1
**C-5 [1]** 72/19
**cabin [1]** 11/1
**cabinet [2]** 26/25 30/4
**calculus [1]** 71/21
**call [9]** 11/21 14/10 28/1 33/3 75/20 77/7 77/23 80/6 81/17
**called [2]** 19/17 39/10
**calling [2]** 28/18 33/2
**calls [4]** 29/2 57/18 58/8 77/9
**came [5]** 5/7 8/8 28/9 60/2 60/6
**can [62]** 4/5 6/3 6/9 6/10 8/12 8/12 8/25 9/12 9/25 11/20 13/4 13/6 13/18 14/6 14/11 16/21 18/24 20/17 21/1 21/16 21/17 22/14 24/15 24/16 24/17 24/23 25/13 26/15 26/18 27/14 30/1 30/20 35/16 35/17 35/21 36/8 36/10 36/13 36/15 39/23 40/23 41/25 42/23 45/8 45/13 50/7 51/12 55/21 57/11 59/9 60/10 60/17 61/23 62/25 67/2 72/5 74/24 79/25 81/23 82/11 86/25 86/25
**can't [29]** 8/4 16/17 19/21 25/17 25/19 26/16 27/9 33/17 34/25 41/21 45/5 45/11 45/16 46/5 47/10 50/15 51/6 51/7 54/25 57/2 65/21 69/2 73/15 74/25 75/18 77/22 79/7 79/7 79/21
**candidate [1]** 38/7
**candidates [1]** 48/20
**cannot [3]** 17/4 24/16 54/11
**capricious [1]** 44/8
**careful [1]** 61/16
**carelessness [1]** 35/14
**carries [1]** 7/24
**carry [2]** 5/19 47/14
**carrying [2]** 43/21 44/9
**carved [1]** 56/13
**case [80]** 2/24 4/16 5/5 6/3 6/11 7/8 7/11 7/17 10/12 12/9 12/22 14/14 15/25 16/1 16/2 16/7 16/18 18/13 19/13 19/18 20/1 20/8 20/13 21/11 21/18 22/1 23/12 24/4 26/11 26/18 31/12 31/21 32/25 33/4 33/11 33/22 33/23 33/24 35/11 37/10 37/23 38/19 40/11 41/9 41/13 41/22 42/23 43/5 45/9 45/15 46/3 47/22 48/16 50/1 50/18 51/14 51/18 53/24 55/21 60/16 61/25 63/9 64/13 68/2 68/10 69/7 69/16 69/19 70/2 72/10 73/9 75/17 76/9 80/17 80/18 80/22 82/13 84/1 85/6 86/7
**cases [36]** 12/7 14/9 14/12 15/25 20/7 21/9 30/7 30/10 33/1 35/5 37/20 38/7 38/9 38/24 40/3 40/17 41/8 42/3 45/21 46/9 47/2 47/5 47/11 47/17 56/9 58/18 67/24 70/18 71/19 72/1 72/24 72/25 73/6 73/20 75/12 88/5
**catalog [1]** 73/8
**categorical [2]** 60/21 75/18
**categories [1]** 70/5
**category [1]** 69/12
**cause [132]**
**causes [2]** 57/9 72/12
**cautious [1]** 78/1
**caveat [1]** 7/14
**center [1]** 29/1
**central [1]** 46/24
**certain [1]** 66/9
**certainly [22]** 4/24 9/19 9/22 10/13 17/11 17/12 29/18 31/14 39/15 43/15 43/20 45/1 57/24 58/11 61/13 63/6 63/16 79/6 80/3 83/12 85/17 88/11
**certainty [1]** 7/10
**certify [1]** 89/3
**cetera [3]** 50/4 82/1 84/4
**Chadwick [3]** 1/20 2/17 2/18
**chair [4]** 28/2 28/11 50/10 80/2
**Chairman [9]** 26/23 28/7 28/8 28/10 60/4 60/5 78/6 78/8 78/10
**Chairperson [1]** 28/5
**challenge [3]** 44/17 46/2 73/17
**challenged [1]** 29/19
**chance [7]** 3/13 26/7 49/16 53/12 63/21 64/19 85/13
**change [4]** 5/15 65/7 65/11 74/11
**changed [2]** 19/7 54/14
**changes [1]** 74/11
**charge [6]** 12/21 32/15 43/25 48/2 79/23 80/12
**charges [7]** 33/12 38/12 39/2 39/6 39/13 39/23 42/14
**charted [1]** 46/23
**children [1]** 28/19
**choice [5]** 5/10 13/25 14/2 14/20 28/14
**circle [1]** 11/13
**Circuit [6]** 20/18 38/15 47/12 47/22 86/6 86/9
**Circuit's [1]** 51/13
**circular [1]** 68/6
**circumstance [1]** 51/19
**circumstances [5]** 22/9 31/25 49/10 74/16 75/11
**cite [1]** 19/25
**cited [3]** 47/5 69/16 69/19
**cites [1]** 56/10
**citing [1]** 12/3
**citizen [1]** 40/19
**civil [5]** 1/3 1/18 2/2 63/9 64/10
**claim [3]** 44/7 44/21 69/3
**clarify [1]** 2/18
**clause [3]** 40/6 40/21 81/15
**clean [1]** 84/15
**clear [12]** 11/14 17/18 25/15 30/18 39/13 42/14 63/16 69/7 74/17 78/3 78/4 86/15
**clearly [4]** 15/5 45/25 69/6 69/9
**clip [1]** 84/20
**close [1]** 69/1
**closely [1]** 65/23
**closer [2]** 69/12 69/13
**co [1]** 2/9
**co-counsel [1]** 2/9
**COBB [1]** 1/9
**cognizable [1]** 51/16
**coincidence [1]** 28/23
**Collins [4]** 15/20 16/1 16/1 16/12
**colloquial [1]** 74/4
**colloquially [1]** 74/6
**COLUMBIA [1]** 1/1
**come [10]** 2/4 10/3 21/19 21/21 22/20 24/6 31/13 46/11 67/7 81/21
**comes [5]** 17/24 29/14 40/18 69/1 70/2
**coming [1]** 88/15
**comments [1]** 22/23
**committed [3]** 30/16 52/7 68/2
**committing [1]** 29/7
**common [1]** 33/18
**communication [2]** 12/12 63/24
**Compare [1]** 85/22
**compels [1]** 68/10
**complaint [1]** 75/2
**complete [1]** 9/22
**completely [1]** 10/25
**complicated [1]** 25/11
**computer [2]** 1/25 34/10
**computer-aided [1]** 1/25
**concede [3]** 16/11 45/6 75/18
**concedes [1]** 76/11
**conceivable [1]** 65/11
**concept [1]** 17/12
**concepts [1]** 64/9
**concern [1]** 63/2
**concerned [1]** 55/9
**concerns [1]** 31/23
**concert [1]** 27/20
**concession [3]** 81/23 82/12 85/2
**conclude [3]** 35/25 74/18 83/2
**concluded [2]** 83/1 88/21
**conclusion [2]** 65/7 79/5
**conduct [19]** 17/4 17/19 17/24 21/5 21/12 29/9 31/10 32/4 32/5 32/7 32/12 32/14 34/7 34/14 34/20 34/25 36/10 58/3 65/14
**conducts [1]** 47/23
**confer [2]** 87/4 87/11
**conference [1]** 45/11
**conferences [1]** 28/21
**confers [1]** 72/8
**confess [1]** 84/20
**confirm [4]** 23/25 49/4 50/7 82/16
**confirmation [7]** 17/4 17/20 17/25 18/7 18/19 19/10 66/16
**confirmed [11]** 5/15 11/24 18/21 18/22 18/25 41/4 46/4 47/4 48/3 48/6 65/18
**conform [2]** 5/23 6/6
**conforms [1]** 45/15
**Congress [8]** 13/14 14/25 15/8 15/15 54/2 56/10 66/3 73/9
**Congresses [1]** 53/25
**connection [2]** 37/1 88/15
**consent [3]** 11/9 48/25 66/3
**consequence [2]** 73/18 73/18
**consequential [1]** 2/24
**consequently [6]** 4/8 51/2 82/21 83/23 83/24 83/25
**consider [11]** 5/13 11/18 13/13 18/3 19/24 30/6 31/9 55/12 68/15 77/21 85/19
**consideration [5]** 20/12 29/15 29/20 51/22 71/13
**considered [2]** 21/4 36/22
**considering [1]** 71/20
**considers [1]** 63/17
**constellation [1]** 46/18
**Constitution [3]** 1/21 31/8 46/21
**constitutional [6]** 5/19 44/16 68/3 69/23 72/6 73/1
**constitutionally [1]** 67/3
**construct [2]** 36/10 36/21
**construction [2]** 31/14 31/15
**Consumer [1]** 84/7
**contains [1]** 24/13
**contemplate [1]** 75/10
**contemporaneous [1]** 60/8
**contest [5]** 16/7 19/17 42/16 76/18 83/10
**contested [2]** 85/13 85/16
**contesting [1]** 67/21
**context [25]** 15/24 16/17 16/17 26/20 29/12 29/14 30/5 30/24 31/12 31/21 34/5 37/6 41/17 42/23 45/22 49/15 58/10 61/2 64/8 70/23 72/20 78/2 78/12 78/16 82/24
**contexts [3]** 25/24 30/10 37/10
**continue [1]** 45/23
**continuum [1]** 77/23
**contradiction [3]** 56/9 82/6 83/18
**contradictory [6]** 61/10 61/19 62/10 79/4 79/6 82/7
**contradicts [1]** 80/23
**control [1]** 54/2
**converting [1]** 9/20
**converts [1]** 87/6
**convicted [1]** 18/16
**conviction [1]** 18/17
**COOK [30]** 1/3 2/3 2/8 5/14 11/23 12/14 12/17 12/24 21/24 26/24 27/4 28/4 28/7 28/24 29/10 30/13 35/25 40/4 43/1 43/6 48/1 50/23 60/3 60/5 77/15 78/7 78/22 83/13 84/25 88/2
**Cook's [1]** 41/1
**core [1]** 22/14
**correct [6]** 2/22 2/23 24/22 42/22 50/12 55/1
**could [58]** 3/5 8/1 8/14 8/20 8/23 15/21 18/19 19/11 21/5 22/8 23/4 23/16 23/20 24/6 24/10 25/18 27/5 27/11 29/8

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 93 of 103


**C**

**could... [39]** 30/4 34/4 34/20 35/9 35/10 39/4 42/24 43/14 43/22 44/12 44/17 45/6 45/20 45/24 47/19 49/1 50/11 53/9 55/2 57/12 57/13 58/11 58/12 58/14 59/5 59/7 66/1 66/15 67/20 68/12 71/22 72/18 77/13 77/14 80/2 81/13 83/21 88/7 88/14
**couldn't [3]** 15/6 25/3 53/20
**counsel [17]** 2/6 2/9 56/4 56/8 59/5 61/4 64/3 68/23 76/5 76/5 77/6 78/17 78/25 83/12 84/17 85/5 88/3
**counsel's [3]** 58/1 77/23 86/5
**country [2]** 10/9 28/15
**couple [2]** 84/11 84/15
**course [3]** 3/1 66/12 70/3
**court [71]** 1/1 1/23 1/24 2/10 3/16 3/21 4/12 6/6 7/2 7/16 7/16 8/1 8/4 10/13 10/24 11/18 14/2 15/19 16/11 16/24 20/1 20/11 20/12 20/18 21/3 22/3 22/4 22/15 25/5 26/6 26/10 26/17 29/19 30/6 30/10 30/21 31/9 31/12 38/16 38/19 38/20 38/21 38/23 45/14 47/12 52/16 52/22 55/25 57/5 57/10 58/12 59/2 59/14 61/1 68/9 68/14 70/15 70/19 71/17 72/9 72/11 72/15 73/21 75/4 75/9 75/19 79/2 80/18 81/6 85/21 89/9
**court's [10]** 3/14 4/7 5/16 13/24 13/25 23/24 29/15 41/14 44/13 71/16
**courthouse [1]** 3/11
**courtroom [1]** 30/22
**courts [7]** 31/15 59/16 59/21 65/21 67/15 71/18 77/4
**cover [2]** 55/6 76/1
**covered [2]** 72/19 75/25
**covers [1]** 72/13
**crazy [1]** 25/19
**create [3]** 29/2 29/2 37/19
**created [1]** 48/3
**creates [4]** 36/7 37/13 51/3 51/15
**creating [1]** 37/9
**Crenshaw [1]** 69/20
**criminal [8]** 32/18 32/21 32/22 33/12 33/20 45/9 61/13 65/8
**criminally [1]** 33/7
**criteria [1]** 51/18
**criterion [1]** 51/9
**current [1]** 55/9
**CV [1]** 1/4

**D**

**D [2]** 1/3 2/1
**D.C [8]** 1/7 20/18 38/15 38/15 47/22 51/13 86/6 86/9
**damage [1]** 47/3
**data [1]** 55/7
**Date [1]** 89/8
**dated [1]** 12/13
**David [1]** 1/13
**day [7]** 8/20 9/8 9/23 26/12 28/23 51/1 88/1
**days [11]** 12/13 48/21 48/21 49/6 50/14 62/19 63/14 63/15 83/20 88/1 88/1
**DC [3]** 1/15 1/19 1/22
**de [1]** 57/11
**dead [1]** 59/22
**deal [2]** 7/2 40/3
**dealing [1]** 77/12
**deals [2]** 36/16 40/11
**debate [1]** 15/11
**decades [1]** 27/23
**decide [12]** 4/13 22/5 25/4 38/4 43/3 45/14 50/19 50/19 67/14 67/15 69/14 77/14
**decides [7]** 5/25 14/4 33/7 33/21 49/3 77/15 81/10
**deciding [2]** 14/5 21/11
**decision [26]** 4/7 5/16 13/14 15/8 15/12 16/7 20/12 25/6 25/9 27/8 27/25 28/1 42/2 42/4 42/5 42/17 44/8 44/17 51/14 55/16 71/16 77/20 81/14 81/14 82/16 86/9
**decisions [5]** 19/24 47/12 57/13 59/14 75/9
**decisively [1]** 70/18
**deemed [1]** 41/5
**deems [1]** 12/18
**defend [1]** 46/20
**Defendants [2]** 1/7 1/16
**defending [1]** 84/6
**defense [2]** 61/17 79/15
**defer [2]** 75/6 77/6
**deferential [5]** 57/25 62/6 68/21 75/4 75/5
**define [5]** 13/15 23/25 31/6 38/18 67/2
**defined [3]** 13/9 13/12 14/8
**defines [1]** 15/16
**defining [1]** 14/1
**definition [14]** 13/21 13/22 14/24 14/24 15/14 21/20 21/21 24/5 25/25 29/13 44/25 68/10 68/11 68/12
**degree [3]** 35/13 54/2 65/25
**DEI [1]** 77/19
**deliberate [2]** 13/14 14/20
**Dellinger [11]** 51/14 51/18 52/10 82/22 82/22 85/18 86/4 86/4 86/16 86/17 87/24
**demand [1]** 12/24
**demanded [1]** 30/17
**demanding [1]** 26/14
**demands [1]** 26/23
**demonstrably [1]** 61/22
**Department [1]** 1/17
**depending [6]** 3/14 3/15 4/5 7/16 36/16 42/24
**depends [2]** 36/20 52/1
**depose [3]** 59/20 66/20 66/21
**deposition [1]** 75/20
**deprivation [2]** 49/13 73/13
**deprived [3]** 52/3 52/4 73/5
**Deputy [1]** 1/16
**description [1]** 57/7
**deserves [1]** 53/11
**desire [1]** 60/17
**despite [2]** 23/2 34/1
**detach [3]** 26/16 26/18 46/5
**detail [2]** 73/10 87/19
**determination [9]** 33/9 57/21 57/24 58/7 59/15 59/23 69/1 75/13 75/14
**determinations [1]** 66/2
**determine [3]** 25/1 37/21 68/9
**determining [1]** 21/4
**development [1]** 36/6
**did [40]** 4/23 10/4 10/20 12/6 12/17 12/19 12/20 13/3 15/12 17/25 19/16 21/24 26/8 28/23 33/25 34/13 34/21 35/8 35/25 36/2 43/6 46/1 52/20 56/17 58/14 59/20 63/14 66/20 75/20 77/1 77/18 80/4 80/8 80/9 80/11 80/16 82/14 82/15 85/1 88/13
**didn't [18]** 10/23 16/5 16/7 18/19 20/9 22/20 22/20 43/3 44/21 58/16 61/13 62/19 63/15 73/17 77/21 78/10 83/20 83/24
**difference [5]** 56/23 71/11 74/16 76/13 86/14
**differences [1]** 16/19
**different [17]** 14/11 14/21 20/22 29/21 33/23 56/14 60/11 67/23 68/8 71/4 73/3 79/3 79/19 84/23 86/15 88/6 88/7
**differential [1]** 68/12
**difficult [7]** 19/2 21/19 44/23 44/24 62/1 62/2 69/5
**dig [1]** 59/8
**dilemma [1]** 13/24
**directed [1]** 50/12
**direction [1]** 29/6
**directly [4]** 25/15 35/16 63/5 80/22
**director [21]** 12/15 13/1 16/9 18/14 21/22 25/19 26/12 26/23 27/5 27/21 28/24 29/1 29/21 39/3 39/16 43/5 43/24 51/19 78/24 80/10 82/14
**directors [2]** 54/4 54/4
**disability [1]** 14/13
**disagree [2]** 63/20 87/17
**disagreement [5]** 54/25 55/6 55/14 58/18 66/14
**disagreements [4]** 22/21 60/17 66/18 74/25
**disagrees [1]** 77/19
**disappeared [1]** 22/19
**disbarred [1]** 35/17
**discharge [1]** 38/17
**discharging [1]** 55/11
**disciplinary [1]** 45/10
**disclosure [1]** 34/9
**disconnected [1]** 52/18
**discovery [2]** 7/23 8/13
**discretion [13]** 13/15 16/22 17/18 17/23 20/21 21/1 25/24 33/6 33/21 35/5 56/6 62/8 68/3
**discretionary [4]** 57/10 58/7 68/21 75/14
**discuss [2]** 17/17 79/1
**discussing [1]** 83/6
**discussions [1]** 48/12
**dismissal [1]** 84/7
**dismissed [1]** 86/7
**dispense [1]** 87/8
**dispositively [1]** 22/5
**dispute [6]** 30/9 32/6 33/25 64/25 68/14 85/12
**disputes [1]** 55/25
**disputing [1]** 56/1
**distinct [1]** 72/24
**distinction [4]** 69/23 69/24 70/2 71/23
**distinctions [1]** 16/2
**distinguish [1]** 80/24
**distinguishable [1]** 47/18
**DISTRICT [3]** 1/1 1/1 1/10
**dive [1]** 24/25
**Division [1]** 1/18
**divorced [1]** 29/13
**do [88]** 3/6 3/9 3/19 3/20 3/22 3/23 4/1 4/5 4/15 5/12 5/12 5/13 5/17 5/20 6/3 7/7 8/7 8/7 8/20 8/24 9/25 10/16 11/3 11/17 15/23 17/5 20/1 20/16 20/23 21/8 22/15 22/20 25/3 25/9 25/13 26/1 27/17 30/20 31/1 31/19 34/6 36/4 38/2 38/8 44/12 46/24 47/1 47/3 47/5 47/21 48/2 48/6 48/17 48/17 49/16 50/5 51/1 51/2 52/10 52/14 52/16 52/19 59/21 61/23 66/15 67/6 68/13 68/14 69/9 69/14 70/12 70/24 75/4 78/18 81/5 81/6 82/9 82/11 83/8 86/15 86/18 87/17 87/21 87/23 88/5 88/11 88/14 88/17
**doctrine [1]** 69/25
**documents [4]** 61/7 62/11 80/1 82/1
**Doe [1]** 49/3
**does [28]** 7/3 7/5 8/16 22/14 22/17 25/23 34/16 34/22 36/25 37/7 37/9 37/19 48/8 50/21 51/20 53/7 56/5 56/10 57/8 57/15 75/3 75/4 75/8 76/17 77/11 80/25 81/9 87/3
**doesn't [33]** 14/1 14/19 14/23 28/18 34/16 35/14 37/5 37/19 39/15 41/2 45/4 49/17 57/6 64/9 65/22 68/4 69/11 70/24 72/15 72/20 74/21 75/5 75/7 76/20 76/21 77/16 78/13 78/14 80/11 80/13 80/24 81/2 87/15
**doing [5]** 9/9 9/10 20/9 27/25 29/7
**DOJ [1]** 2/22
**don't [91]**
**DONALD [1]** 1/6
**done [13]** 3/23 16/22 16/24 23/22 25/9 30/13 45/6 46/2 53/4 79/20 84/24 86/12 86/18
**down [6]** 11/20 20/17 60/20 67/1 68/16 76/8
**Dr. [3]** 60/3 60/5 84/25
**Dr. Cook [3]** 60/3 60/5 84/25
**drawing [1]** 71/23
**dress [1]** 77/16

**D**

**drop [1]** 30/24
**drug [1]** 36/18
**dual [1]** 16/5
**due [19]** 10/17 36/24 40/5 40/20 41/2 42/3 42/4 42/10 49/13 49/22 62/23 70/7 71/22 72/6 72/22 80/20 80/25 81/15 83/17
**due-process [2]** 42/10 49/13
**Dumpty [1]** 14/4
**duties [2]** 55/11 57/4
**duty [2]** 14/11 14/17

**E**

**E [4]** 2/1 2/1 89/1 89/1
**each [3]** 22/23 24/7 61/11
**earlier [2]** 19/11 38/15
**early [3]** 9/2 28/16 53/25
**easily [1]** 21/9
**easy [1]** 42/7
**economic [3]** 12/19 19/6 27/24
**economist [1]** 11/23
**economy [1]** 36/17
**edges [1]** 69/1
**effect [2]** 27/6 34/2
**effectuate [1]** 2/20
**efforts [1]** 30/3
**EG [1]** 19/25
**either [11]** 5/11 6/24 14/3 32/14 51/5 60/7 65/7 69/11 74/18 74/18 74/21
**elected [12]** 19/3 19/4 40/11 40/12 40/16 40/23 69/7 69/13 69/17 69/20 69/24 80/22
**electronics [1]** 52/18
**elements [5]** 15/5 18/2 32/18 33/13 45/5
**else [3]** 8/11 55/15 88/19
**embedded [1]** 15/10
**embeds [1]** 12/9
**emphasis [2]** 54/3 54/5
**employee [3]** 40/15 69/13 80/21
**employees [7]** 40/3 40/4 69/9 70/1 70/4 70/9 71/24
**employment [2]** 47/22 73/5
**empowered [1]** 75/13
**end [16]** 4/1 8/20 9/11 11/13 11/25 12/17 12/19 12/22 13/1 13/2 13/3 26/3 38/17 49/1 56/8 59/22
**ended [1]** 72/19
**enjoin [1]** 50/15
**enough [8]** 3/4 16/6 35/1 50/3 76/21 76/22 77/16 85/17
**entirely [1]** 31/17
**entities [1]** 54/12
**entitled [4]** 58/15 73/16 85/7 89/5
**entity [3]** 16/9 46/18 51/24
**entries [1]** 79/3
**envision [1]** 10/11
**epitome [1]** 58/6
**equal [1]** 48/8
**equally [1]** 72/16
**equate [1]** 72/2
**equating [1]** 63/8
**equipped [1]** 45/14
**equitable [1]** 70/13
**equities [1]** 51/23
**equity [1]** 85/10
**Esparraguerra [1]** 38/11
**especially [2]** 11/16 23/16
**Esq [3]** 1/13 1/16 1/20
**essential [1]** 38/23
**essentially [3]** 6/9 68/16 68/17
**et [5]** 1/6 2/3 50/3 82/1 84/4
**ethernet [1]** 39/24
**evaluate [1]** 60/23
**even [22]** 4/15 4/22 10/7 16/7 16/13 25/3 26/12 28/3 31/19 32/9 32/21 35/3 38/19 39/19 40/1 44/15 46/22 51/14 51/15 74/2 80/5 80/6
**evening [1]** 12/1
**event [1]** 18/12
**ever [3]** 35/5 35/21 60/3
**every [2]** 4/20 46/18
**everybody [12]** 9/7 10/5 30/21 30/22 35/4 35/8 36/10 36/11 36/11 36/12 36/12 52/15
**everyone [9]** 2/11 6/9 22/18 23/12 32/6 33/24 67/9 88/13 88/20
**everyone's [1]** 23/3
**everything [5]** 19/22 32/10 82/14 83/6 83/25
**evidence [8]** 19/16 24/20 24/20 30/2 31/6 38/13 39/14 55/12
**exactly [1]** 73/19
**example [10]** 4/9 7/23 12/8 14/10 16/12 20/7 36/2 48/16 50/1 66/24
**Except [1]** 7/14
**exclusion [1]** 41/6
**executive [5]** 15/8 48/12 56/12 70/25 82/20
**Executor [6]** 15/3 15/4 15/13 15/16 53/17 57/5
**exercise [1]** 70/24
**exercises [2]** 20/20 55/22
**exercising [1]** 57/4
**exist [3]** 7/11 21/12 65/23
**existed [1]** 74/22
**exists [1]** 49/2
**expected [1]** 74/22
**expedite [1]** 87/8
**expedited [8]** 4/9 4/21 5/2 6/20 6/25 7/7 7/19 9/25
**expedition [1]** 5/16
**explain [7]** 21/11 22/8 32/11 42/1 42/9 42/16 47/19
**explaining [2]** 76/15 77/25
**explanation [9]** 38/13 39/14 42/11 42/14 61/12 61/18 62/11 62/13 74/20
**explanations [1]** 42/16
**explicit [2]** 15/6 60/16
**explicitly [1]** 59/7
**extend [1]** 9/16
**extent [7]** 2/20 46/2 47/6 57/24 59/2 62/5 68/20
**extraordinarily [1]** 11/23
**extrapolated [1]** 54/12
**extreme [6]** 17/15 55/21 60/20 62/8 66/24 75/17

**F**

**F [1]** 89/1
**face [5]** 59/24 61/19 75/15 75/21 77/9
**fact [11]** 7/3 8/1 9/7 10/18 17/19 24/17 34/1 41/3 48/11 73/25 85/12
**factor [3]** 18/6 34/19 86/3
**factors [10]** 18/5 20/12 32/13 36/22 58/2 68/23 70/14 71/19 77/21 85/19
**facts [12]** 11/21 11/22 19/13 22/1 24/6 31/21 35/11 66/8 75/19 80/2 85/16 86/15
**factual [3]** 3/1 49/9 64/25
**Fair [1]** 3/4
**faith [3]** 42/10 60/25 75/6
**faithfully [2]** 55/11 67/4
**falls [1]** 50/20
**false [2]** 61/23 63/22
**famous [1]** 50/20
**far [5]** 29/3 55/20 63/19 65/15 85/15
**fashion [4]** 22/4 26/16 76/16 79/25
**fast [1]** 28/4
**favor [1]** 70/18
**features [1]** 56/24
**Fed [10]** 5/11 5/25 6/17 28/11 28/12 50/24 84/3 84/6 84/9 84/9
**federal [33]** 1/18 1/21 2/17 4/6 11/25 15/9 16/4 16/20 23/19 26/14 27/2 37/13 46/6 46/13 46/14 47/23 50/9 50/10 52/8 53/8 53/15 53/16 54/1 54/6 54/7 54/9 54/12 56/14 56/14 56/24 77/15 81/25 88/3
**feel [5]** 6/16 7/3 8/25 65/21 87/20
**feels [4]** 7/3 24/4 65/20 65/25
**few [2]** 36/24 84/17
**FHA [5]** 18/14 21/22 27/20 43/5 78/14
**FHFA [1]** 12/15
**figure [12]** 8/13 10/19 21/8 23/10 34/16 40/2 70/14 81/5 83/14 87/1 87/23 88/17
**file [9]** 3/7 3/20 3/23 8/18 11/11 13/7 87/2 87/7 87/14
**filed [6]** 4/10 10/22 53/11 53/23 88/6 88/12
**filing [6]** 3/11 10/7 10/18 11/9 53/20 53/20
**filings [2]** 62/12 65/4
**fill [3]** 34/9 60/11 65/22
**filled [1]** 86/18
**fills [2]** 34/8 88/2
**finally [4]** 39/22 45/20 84/2 85/18
**financial [5]** 34/9 44/3 62/10 62/11 82/1
**find [6]** 18/19 20/11 20/18 23/2 34/13 59/9
**finding [2]** 22/11 32/1
**findings [1]** 34/2
**fine [2]** 10/20 61/14
**finer [1]** 31/22
**fire [3]** 5/11 12/3 80/13
**fired [6]** 27/4 29/24 49/22 50/23 58/11 75/2
**firing [1]** 55/18
**first [24]** 2/6 4/17 7/18 9/2 10/6 10/18 14/7 16/3 20/13 28/24 29/11 34/6 38/4 54/3 68/14 73/2 73/13 76/8 78/15 79/22 81/9 81/12 83/2 85/8
**fit [2]** 69/11 72/14
**fitness [5]** 57/19 66/15 77/8 77/24 81/18
**fits [1]** 24/4
**five [8]** 12/13 18/17 25/16 45/5 62/19 63/14 63/15 83/20
**five days [4]** 62/19 63/14 63/15 83/20
**five minutes [1]** 25/16
**five years [1]** 18/17
**flesh [1]** 52/13
**fleshed [2]** 66/17 85/1
**flip [2]** 21/9 45/17
**follow [4]** 17/2 67/3 68/4 71/18
**followed [1]** 77/1
**following [4]** 5/6 29/5 32/13 53/24
**follows [1]** 11/22
**foreclosed [1]** 60/1
**foregoing [1]** 89/3
**forest [1]** 50/20
**form [8]** 34/8 34/9 34/15 34/15 34/21 62/6 72/23 77/1
**formal [2]** 32/15 64/23
**formed [1]** 46/25
**former [1]** 10/9
**forms [2]** 33/5 33/14
**formula [1]** 26/8
**formulation [1]** 32/8
**forward [1]** 2/4
**found [2]** 21/9 73/22
**frame [4]** 5/3 20/22 42/15 76/11
**framework [6]** 14/15 20/19 21/3 40/18 42/21 64/8
**fraud [16]** 18/16 28/9 28/13 28/13 29/7 33/1 33/2 33/3 33/6 33/24 33/25 35/7 39/6 39/7 43/25 78/14
**front [6]** 43/7 43/9 44/6 45/10 45/10 49/10
**FTC [1]** 15/4
**full [1]** 9/21
**fully [1]** 5/3
**function [3]** 5/20 49/18 49/19
**functions [4]** 16/5 47/10 47/15 47/18
**further [8]** 24/20 26/19 48/9 53/25 57/7 57/9 68/13 86/20
**futile [1]** 85/14

**G**

**G [1]** 2/1
**gain [1]** 44/3
**gap [1]** 65/22
**gave [2]** 43/25 76/22
**general [5]** 1/17 41/16 54/11 75/16 81/10
**generally [6]** 11/9 12/3 14/15 56/10 60/22 63/12
**get [50]** 3/4 3/5 3/9 3/23 5/16 7/8 8/2 8/2 8/4 8/25 9/12 9/16 17/5 17/13 19/12 20/2 20/5 20/16 21/16 23/9 25/20 26/21 30/3 34/9 35/7 37/25 38/3 40/20 41/2 43/7 43/19 49/8 49/16 50/3 53/3 59/8 59/9 60/4 64/17 67/15 70/6 73/17 76/17 78/10 80/25 85/17 86/16 86/18 88/7 88/18

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 95 of 103

## G


**gets [10]** 19/3 19/4 26/10 34/8 48/15 53/22 70/15 74/13 81/2 84/5
**getting [3]** 42/11 67/6 79/8
**give [14]** 25/12 27/13 37/14 43/15 45/5 58/14 58/16 63/10 63/21 64/11 80/12 80/13 88/8 88/11
**given [25]** 6/2 6/16 9/21 23/8 23/8 26/11 31/2 35/20 36/7 36/15 38/17 39/19 48/5 50/24 52/6 56/3 59/16 60/9 62/12 62/13 63/2 64/5 79/12 85/13 87/18
**gives [5]** 13/15 15/21 27/9 38/5 40/6
**giving [2]** 18/8 41/5
**glad [1]** 61/25
**glance [3]** 53/10 53/10 53/11
**glaring [1]** 82/5
**go [19]** 19/9 25/10 27/12 30/24 34/8 55/20 56/7 59/8 60/20 62/21 66/1 67/1 71/22 73/15 74/24 77/3 82/8 85/15 87/10
**goes [10]** 16/3 22/7 59/18 61/12 71/11 73/9 82/23 82/24 83/8 85/21
**going [43]** 3/18 5/15 6/5 7/6 8/18 10/16 13/7 15/1 16/7 17/17 19/1 19/25 21/10 25/12 25/24 31/22 33/7 33/10 33/21 43/12 43/23 49/8 57/25 59/20 61/6 62/5 62/6 65/6 65/7 65/15 65/23 66/21 67/7 67/8 67/13 70/16 80/13 87/2 87/6 87/14 87/23 87/24 88/11
**gone [1]** 66/7
**good [14]** 2/7 2/11 2/12 2/15 2/16 17/12 19/5 29/23 29/24 42/10 54/19 54/20 60/25 75/6
**good-faith [1]** 42/10
**got [5]** 16/22 37/24 52/12 64/25 83/23
**governing [1]** 68/1
**government [23]** 3/12 4/10 4/22 11/7 12/7 13/12 16/21 33/6 33/20 40/8 40/16 46/19 47/23 53/3 53/12 54/18 71/5 77/4 78/25 81/8 83/12 83/19 84/5
**government's [10]** 8/19 9/12 13/8 20/20 39/25 40/2 47/7 54/24 70/18 87/25
**governor [39]** 2/8 5/14 5/21 5/23 7/15 7/15 11/23 12/14 12/17 12/24 21/24 26/24 26/24 27/4 27/7 28/4 28/7 28/24 29/10 30/12 35/25 40/3 41/1 43/1 43/6 46/22 48/1 48/3 50/23 51/20 77/15 78/7 78/15 78/15 78/21 81/25 82/10 83/13 88/2
**governors [9]** 1/20 10/9 10/15 30/3 46/14 46/23 53/8 54/6 84/4
**governs [1]** 71/18
**grant [1]** 50/7
**granted [1]** 11/11
**granting [2]** 10/22 11/8
**great [1]** 79/1
**ground [3]** 27/9 33/18 62/14
**grounds [4]** 13/10 14/6 63/17 65/9
**guess [8]** 7/5 33/1 33/2 42/9 44/20 66/2 69/12 80/6
**guy [1]** 7/24


## H


**H [1]** 1/14
**habit [1]** 28/18
**had [31]** 3/13 12/5 12/14 15/1 15/2 15/5 16/18 26/22 27/6 28/10 30/13 36/19 41/19 53/12 62/16 63/14 63/15 66/4 69/12 71/7 76/11 76/24 78/22 78/23 79/3 79/7 81/7 82/3 83/20 84/24 85/13
**hand [5]** 9/10 25/22 26/10 27/8 83/19
**handful [1]** 11/20
**hands [1]** 85/16
**happen [2]** 43/14 87/23
**happened [17]** 23/4 26/11 26/12 28/2 28/3 28/3 32/7 34/23 44/12 58/5 60/15 61/8 61/17 62/23 80/4 81/3 83/25
**happening [1]** 24/23
**happens [3]** 33/8 35/19 42/25
**happy [6]** 3/1 5/1 9/16 54/21 60/10 87/11
**hard [4]** 21/20 34/4 66/22 75/10
**harder [1]** 66/5
**harm [28]** 4/19 45/21 45/25 46/8 46/16 47/6 47/14 48/8 49/5 49/13 51/11 51/23 52/1 52/9 70/11 70/12 70/19 70/21 70/21 72/24 73/3 73/13 73/19 82/17 82/25 83/4 85/22 85/25
**harms [2]** 71/12 85/19
**Harper [1]** 12/9
**Harris [1]** 53/23
**Harvard [1]** 39/11
**has [78]** 5/19 5/20 6/17 7/15 8/9 11/1 11/5 11/18 12/3 13/9 14/2 14/5 16/10 16/21 20/5 22/3 22/4 22/21 22/22 23/20 23/22 25/23 27/23 28/4 28/13 28/20 29/21 30/10 30/15 32/20 37/6 38/16 39/19 40/7 41/4 41/7 42/9 43/16 43/20 45/18 46/10 46/18 48/3 48/15 48/19 48/20 48/20 48/24 49/8 54/22 55/25 56/15 56/17 56/20 57/22 59/15 60/23 61/1 64/4 64/13 66/6 66/7 67/9 68/3 68/15 69/25 71/10 75/2 76/11 76/20 78/12 78/16 78/22 81/17 81/20 81/21 82/20 86/14
**hasn't [3]** 58/15 78/22 79/12
**have [167]**
**haven't [10]** 10/8 41/10 48/10 61/14 64/22 65/2 65/10 81/7 84/21 85/16
**having [10]** 16/16 22/13 36/18 46/2 48/12 70/20 74/7 79/14 79/24 80/15
**Hawaii [3]** 59/18 60/19 75/22
**he [100]**
**he'll [2]** 53/22 86/15
**he's [12]** 16/22 29/5 30/22 31/1 39/24 49/6 49/7 49/8 49/8 54/14 60/10 85/9
**head [2]** 16/14 83/6
**hear [4]** 11/5 11/15 54/17 65/6
**heard [22]** 10/15 11/1 18/9 36/7 37/6 37/8 38/4 39/21 43/8 43/16 43/20 45/14 46/15 64/5 65/4 65/10 73/23 73/24 74/5 74/19 74/23 80/14
**hearing [7]** 21/7 38/19 38/22 64/23 64/23 73/25 74/3
**held [3]** 21/13 41/7 64/13
**help [1]** 53/20
**helpful [9]** 3/19 4/23 7/22 10/12 13/20 17/14 24/19 86/24 88/16
**helps [1]** 86/10
**her [39]** 5/14 5/19 5/20 5/21 5/21 5/22 5/22 12/3 29/11 36/3 36/4 38/14 39/18 40/6 40/13 41/3 42/1 44/3 48/1 48/3 52/17 52/18 60/6 61/14 61/14 63/5 65/6 77/1 77/15 79/14 79/15 79/16 79/20 80/13 81/11 82/1 86/17 86/17 86/18
**here [31]** 2/13 2/20 6/4 6/17 8/8 11/14 24/24 27/7 27/12 32/7 37/4 42/6 42/24 45/5 45/22 50/24 56/2 60/15 62/18 62/23 64/21 66/8 71/9 71/20 72/16 73/16 79/6 79/13 81/3 83/22 85/10
**here's [4]** 13/24 13/24 41/23 56/19
**hereby [1]** 46/20
**hey [2]** 58/14 63/20
**higher [1]** 70/6
**highly [2]** 68/12 75/4
**him [8]** 18/22 30/23 31/2 43/21 75/20 78/10 81/14 86/10
**his [33]** 5/10 7/24 20/10 23/17 23/21 27/2 27/20 28/17 28/21 29/7 29/9 29/22 30/23 31/2 31/3 31/10 31/10 39/23 40/13 43/3 43/4 43/11 44/25 53/24 54/14 54/14 65/7 74/11 74/11 78/9 78/9 79/5 80/8
**historic [2]** 16/3 46/17
**historical [3]** 54/11 56/15 56/24
**history [4]** 15/11 27/24 54/10 84/3
**holder [2]** 21/13 21/14
**holiday [2]** 3/23 9/1
**honest [3]** 3/13 8/21 30/15
**honestly [1]** 19/5
**Honor [31]** 2/2 2/7 2/12 2/16 2/23 3/2 3/8 8/12 9/14 10/2 10/23 11/16 12/16 19/14 21/6 28/22 42/22 53/19 54/19 54/21 57/14 62/1 63/11 63/16 64/7 67/20 76/2 76/13 81/21 82/18 85/10
**Honor's [2]** 4/6 59/19
**HONORABLE [1]** 1/9
**hours [2]** 39/20 83/7
**House [1]** 66/20
**houses [1]** 82/6
**how [28]** 7/1 9/14 10/19 15/23 16/4 26/10 26/20 31/10 38/3 41/10 48/17 48/17 48/24 58/2 58/4 59/1 59/19 63/14 65/6 66/17 66/24 67/10 69/14 74/13 75/1 82/8 84/6 86/9
**however [5]** 5/6 5/25 42/14 79/25 83/6
**huge [1]** 72/21
**human [1]** 35/19
**Humphrey's [8]** 15/3 15/4 15/8 15/13 15/16 15/23 53/17 57/5
**Humpty [1]** 14/4
**hundred [1]** 34/12
**hurt [1]** 70/16
**hyperbolic [1]** 31/2
**hypothetical [16]** 19/1 19/12 22/13 32/5 32/21 32/22 34/24 36/1 36/10 44/4 45/12 49/5 49/6 60/14 60/22 62/2
**hypotheticals [3]** 44/11 62/3 77/12


## I


**I [437]**
**I'd [4]** 3/10 10/16 11/13 11/17
**I'll [12]** 2/25 11/15 11/20 17/2 40/10 46/11 47/21 54/17 59/1 61/3 69/21 83/2
**I'm [54]** 2/13 2/25 4/11 5/1 6/12 8/22 9/6 9/14 10/2 13/16 15/20 17/1 21/7 21/7 21/7 22/10 22/10 22/13 25/12 27/11 31/9 32/4 32/25 33/19 33/19 33/23 44/3 45/17 47/11 51/13 54/21 55/9 58/15 59/5 60/2 61/25 63/8 64/16 64/17 64/21 65/22 65/23 66/23 72/1 72/18 73/18 74/4 74/25 80/13 86/12 87/10 87/11 87/11 87/13
**I've [6]** 8/8 19/7 50/14 71/2 78/18 79/24
**idea [6]** 4/12 10/17 27/9 59/7 78/21 80/23
**identified [1]** 2/10
**identify [1]** 2/5
**ignore [1]** 27/9
**illuminate [2]** 24/15 24/17
**illuminates [1]** 24/13
**imagine [1]** 55/21
**immediately [2]** 4/20 28/1
**IMN [2]** 14/10 15/17
**impact [1]** 34/22
**impeached [1]** 35/18
**implementing [1]** 43/11
**implies [1]** 4/6
**importance [1]** 67/17
**important [6]** 2/24 4/17 24/12 27/14 38/16 81/25
**importantly [1]** 28/17
**importing [1]** 64/8
**impose [1]** 23/17
**impossible [1]** 19/21
**impression [2]** 10/6 20/14
**impressions [1]** 4/18
**improper [1]** 44/9
**inability [1]** 47/14
**incapacity [1]** 14/13

## I

**include [2]** 4/10 14/12
**including [4]** 6/9 15/9 28/5 56/9
**income [1]** 34/11
**incorporate [4]** 3/13 10/17 13/22 33/3
**incorporated [1]** 15/14
**incorporates [1]** 16/4
**Indeed [1]** 6/11
**independence [5]** 23/18 52/8 56/5 67/10 67/13
**independent [3]** 24/3 42/4 67/18
**independently [2]** 24/7 46/23
**indicate [2]** 22/10 47/6
**indicated [2]** 20/13 78/18
**indicates [3]** 40/9 46/18 47/7
**individual [2]** 11/3 41/9
**individual's [2]** 57/19 66/14
**individuals [1]** 28/8
**indulgence [3]** 37/16 41/14 86/11
**indulgent [1]** 86/22
**inefficiency [2]** 14/17 17/7
**inferences [1]** 8/1
**inferior [2]** 46/9 70/3
**inflation [1]** 55/8
**inform [1]** 18/8
**information [4]** 56/3 63/10 64/5 80/12
**informs [5]** 8/15 26/3 26/20 27/8 46/19
**infraction [1]** 30/16
**initial [2]** 63/16 68/18
**injunction [12]** 3/7 4/9 6/22 6/24 7/19 8/16 71/21 74/15 85/11 85/17 85/19 86/3
**injunctive [2]** 2/21 50/11
**injury [2]** 51/16 51/16
**inquire [1]** 23/5
**inquiry [2]** 23/11 75/8
**instance [2]** 13/16 68/14
**instead [1]** 87/5
**instinctively [1]** 21/15
**institution [2]** 54/10 77/17
**institutions [1]** 47/24
**insulation [1]** 54/2
**integral [1]** 47/23
**intellectual [1]** 55/13
**intend [2]** 3/7 3/20
**intending [1]** 2/19
**intent [2]** 61/19 63/20
**intentional [5]** 34/22 35/6 35/19 44/2 65/8
**intentionality [3]** 32/13 35/9 36/12
**interest [14]** 19/6 26/15 27/23 28/6 30/17 30/21 30/24 55/8 62/22 69/8 72/5 77/3 77/20 85/3
**interested [1]** 49/21
**interesting [4]** 30/11 41/23 50/14 81/23
**Interestingly [1]** 16/6
**interim [3]** 49/23 87/22 88/1
**interpret [3]** 13/9 37/21 38/9
**interpretation [2]** 13/13 31/16
**interpreting [2]** 14/9 15/18
**interrupt [1]** 13/4
**intone [1]** 12/5
**investigation [2]** 12/21 33/13
**invoking [1]** 56/19
**involve [1]** 72/25
**involved [6]** 18/11 28/11 36/4 44/2 47/17 67/16
**involves [1]** 69/16
**ire [1]** 28/6
**irony [1]** 53/9
**irreparable [25]** 4/19 45/20 45/24 45/25 46/8 46/16 47/6 47/14 48/8 48/13 49/5 49/13 49/14 51/11 51/16 51/23 52/1 52/9 70/10 70/12 72/24 73/3 73/13 82/17 82/25
**is [348]**
**isn't [9]** 25/6 39/1 40/16 49/5 57/23 60/5 70/23 74/9 78/3
**issue [18]** 7/2 8/9 15/22 22/14 24/7 32/7 47/3 48/10 50/1 50/2 51/10 70/25 77/4 77/25 80/15 80/16 83/3 83/8
**issues [8]** 7/10 10/6 10/13 82/25 83/10 83/21 85/1 88/9
**it [284]**
**it's [115]**
**iterations [1]** 88/6
**its [26]** 4/23 12/10 14/23 18/19 19/11 19/18 33/6 33/21 36/13 40/8 48/25 50/10 53/8 54/11 58/3 58/8 59/23 60/23 61/18 75/14 75/21 75/21 78/1 78/3 83/5 84/4
**itself [7]** 14/15 26/3 37/3 37/7 37/13 65/9 72/23

## J

**J [1]** 1/6
**Jay [3]** 28/19 28/19 29/7
**JIA [1]** 1/9
**job [8]** 5/20 46/10 46/23 47/4 47/4 60/15 84/25 86/17
**John [2]** 2/13 49/2
**Johns [4]** 1/23 89/3 89/8 89/9
**Joshua [2]** 1/20 2/16
**JUDGE [3]** 1/10 49/25 50/20
**judgment [15]** 4/15 4/19 6/25 7/6 7/8 7/19 8/5 8/16 9/25 35/14 55/13 58/8 66/7 87/7 87/8
**judicial [5]** 45/11 59/3 59/4 62/6 68/5
**July [2]** 28/3 28/16
**jumping [1]** 17/1
**juncture [1]** 83/14
**June [1]** 28/2
**just [72]** 2/18 3/5 5/17 7/7 7/8 7/18 7/20 8/1 9/13 11/8 12/21 13/6 17/18 18/2 19/22 20/1 22/8 22/13 22/14 22/23 24/24 25/3 25/6 26/21 30/3 31/22 32/4 32/25 34/25 40/1 41/22 42/8 42/22 45/21 46/12 47/9 47/19 50/3 50/7 51/2 53/6 53/10 54/13 54/21 56/4 56/7 57/2 57/8 57/13 58/18 61/3 61/4 62/9 62/15 65/10 66/10 71/13 74/7 74/14 75/6 75/16 76/10 76/19 76/21 84/2 84/11 84/14 86/25 87/4 87/7 88/7 88/10
**Justice [1]** 1/17

## K

**keep [3]** 10/4 55/8 67/8
**keeping [1]** 11/19
**kick [1]** 59/9
**kicked [1]** 49/17
**kind [19]** 13/22 17/7 19/19 20/19 21/3 25/6 31/22 32/1 36/6 38/8 40/14 41/12 45/23 59/22 66/1 66/24 68/6 69/4 81/2
**kinds [1]** 31/24
**knew [1]** 63/6
**know [59]** 4/22 5/24 6/6 7/11 7/22 8/11 10/23 10/25 11/5 13/7 13/16 18/20 18/20 18/22 20/11 21/10 24/23 25/17 25/18 25/18 26/10 30/7 30/8 36/16 39/3 39/15 39/20 39/20 41/1 43/15 44/12 45/4 45/18 46/8 48/17 50/17 53/2 55/20 61/5 61/14 63/14 63/15 64/1 66/9 71/2 74/2 77/13 77/22 81/19 82/8 84/14 85/25 86/5 86/9 87/20 87/22 88/10 88/12 88/15
**knowing [7]** 33/14 33/17 33/19 34/18 34/22 35/9 36/11
**knowledge [1]** 64/15
**known [7]** 18/6 65/17 65/18 66/5 66/16 66/18 81/21
**knows [7]** 10/5 10/18 30/21 43/18 43/19 51/1 81/10

## L

**L [1]** 1/18
**labels [1]** 88/7
**labor [3]** 9/8 9/9 9/10
**lack [2]** 26/20 81/14
**land [2]** 34/24 45/12
**last [7]** 29/25 39/19 39/20 50/14 76/6 83/6 86/12
**late [2]** 28/16 28/19
**later [2]** 62/12 66/6
**law [14]** 6/2 7/3 31/15 38/18 45/15 46/3 48/16 50/14 68/2 68/4 68/10 69/7 70/2 73/9
**laws [1]** 67/4
**lawyer [5]** 33/17 36/4 44/2 61/14 63/23
**lay [1]** 36/25
**lead [1]** 17/2
**leap [1]** 15/17
**least [9]** 12/4 20/20 28/14 51/4 52/13 52/22 55/11 63/19 73/24
**leave [4]** 2/25 10/22 11/11 11/14
**lectern [1]** 2/4
**left [1]** 14/15
**legal [2]** 3/2 34/2
**legally [2]** 59/25 69/25
**legislative [2]** 15/11 16/6
**legitimacy [1]** 67/22
**legitimate [4]** 22/17 23/1 23/4 85/7
**less [1]** 41/2
**let [16]** 20/11 22/15 25/14 27/17 28/14 32/17 33/3 34/5 34/6 69/15 73/2 76/4 79/14 87/25 88/10 88/15
**let's [15]** 11/4 22/9 22/18 26/21 30/22 33/4 38/2 39/5 40/18 43/1 43/2 43/23 59/8 60/13 72/21
**letter [13]** 12/13 32/1 35/12 56/16 59/12 60/9 61/7 63/20 65/7 74/7 74/10 74/17 75/3
**level [7]** 17/20 33/6 35/9 52/23 55/9 64/13 68/22
**liability [4]** 32/18 32/21 32/22 61/13
**Library [1]** 73/9
**lied [1]** 36/17
**life [1]** 30/16
**light [3]** 11/17 17/24 48/18
**like [54]** 5/5 7/3 9/15 9/22 10/15 10/16 10/17 11/13 11/17 14/4 14/13 14/16 15/23 16/23 19/25 20/16 21/24 23/12 23/18 24/4 25/8 28/18 28/18 33/17 37/6 37/10 38/1 38/12 41/25 44/7 47/10 53/6 54/1 55/16 56/17 57/3 57/15 58/6 59/19 61/8 64/3 65/2 65/3 69/5 73/12 74/6 74/10 75/8 75/11 75/18 82/12 85/16 87/14 87/20
**likelihood [3]** 51/5 51/8 69/2
**likely [3]** 3/15 8/21 28/22
**limit [1]** 57/2
**limited [1]** 54/25
**limits [3]** 55/19 56/25 65/15
**line [3]** 16/16 16/18 16/18
**lines [1]** 35/13
**LISA [1]** 1/3
**list [2]** 72/12 72/15
**literally [1]** 26/7
**litigate [1]** 79/22
**litigated [2]** 75/22 82/25
**litigation [3]** 15/3 24/12 82/23
**little [6]** 11/12 17/1 22/8 47/20 51/12 88/8
**live [2]** 35/22 49/6
**loading [1]** 33/16
**loan [1]** 34/9
**loans [1]** 82/1
**locking [1]** 5/21
**long [3]** 6/4 6/19 27/18
**longer [3]** 6/7 6/10 31/18
**longer-winded [2]** 6/7 31/18
**look [38]** 14/8 14/11 14/24 14/25 25/3 25/6 37/6 37/20 38/1 38/11 47/21 49/25 50/4 55/7 55/10 58/2 59/15 60/18 60/22 63/1 64/3 65/20 65/23 66/19 66/24 66/25 69/5 69/21 75/8 77/1 78/3 78/4 78/17 79/2 80/8 82/3 84/6 84/8
**looked [1]** 61/9
**looking [4]** 15/15 50/14 62/7 71/13
**looks [1]** 41/24
**lord [1]** 10/18
**lost [1]** 22/22

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 97 of 103


**L**

**lot [7]** 6/8 7/1 64/9 65/21 67/7 69/25 73/10
**Loudermill [2]** 37/10 38/11
**love [1]** 22/22
**Lowell [5]** 1/13 1/13 2/7 2/8 2/25
**lower [7]** 20/12 27/22 30/17 30/20 70/7 71/18 77/20

**M**

**M [2]** 1/9 1/16
**made [26]** 3/12 4/19 13/14 20/8 22/23 29/13 34/11 35/18 42/17 43/2 43/2 43/4 43/22 43/24 53/19 56/4 59/23 60/3 63/16 64/19 66/8 67/23 74/14 79/16 82/15 86/15
**maintain [1]** 11/21
**maintains [1]** 47/24
**majority [6]** 27/2 30/5 30/20 48/22 49/7 59/8
**make [40]** 4/25 4/25 6/23 7/12 8/1 8/17 9/20 14/2 17/17 25/6 26/21 27/25 28/1 31/3 33/9 35/14 43/12 43/23 46/22 50/21 55/10 56/5 60/21 61/9 61/16 66/10 69/15 72/6 72/7 72/20 72/21 74/15 75/13 76/20 78/4 81/11 84/11 85/6 85/8 87/3
**maker [2]** 42/2 42/4
**makes [9]** 5/5 5/16 19/22 30/18 42/5 69/7 72/17 72/24 75/14
**making [15]** 7/22 17/22 19/23 22/11 31/11 33/18 39/24 45/18 58/8 62/10 65/17 71/5 71/6 71/9 81/12
**malfeasance [4]** 14/10 14/16 17/7 21/15
**mandated [1]** 47/15
**many [10]** 19/20 53/7 53/17 56/9 58/2 58/3 76/17 79/25 83/6 88/5
**map [3]** 42/20 64/9 69/6
**maps [3]** 20/1 42/6 67/10
**Massachusetts [1]** 39/11
**material [2]** 62/7 64/24
**materiality [4]** 32/14 32/23 36/12 44/2
**materially [1]** 71/18
**materials [1]** 66/19
**mathematical [1]** 26/8
**matter [5]** 12/16 22/5 49/10 57/4 89/5
**matters [3]** 24/3 67/12 85/11
**may [12]** 3/2 4/5 4/17 7/17 10/6 10/7 10/11 10/15 20/21 22/1 27/18 54/6
**maybe [25]** 9/11 17/24 21/23 21/24 24/10 26/8 27/5 29/5 29/5 29/8 39/3 43/14 43/19 53/22 57/14 60/10 61/5 61/8 61/12 61/13 61/13 67/1 72/24 74/10 87/15
**me [58]** 2/9 3/10 3/25 5/6 9/5 10/22 11/7 17/8 17/14 18/3 19/14 20/19 22/15 22/15 24/25 25/14 27/13 27/14 27/17 30/8 31/13 32/17 33/3 34/5 34/6 34/6 35/3 35/23 36/1 36/9 37/14 39/22 40/19 41/12 42/20 45/17 46/25 52/24 53/3 53/19 55/16 58/6 63/21 63/23 68/8 69/15 71/11 73/2 75/10 76/4 78/2 79/14 80/12 83/13 87/3 88/8 88/10 88/15
**mean [22]** 9/15 22/17 27/20 31/1 37/4 37/9 39/15 55/21 56/7 57/16 59/21 59/21 62/22 68/4 75/5 75/7 75/21 76/17 77/11 77/13 77/18 83/8
**meaning [3]** 13/14 43/15 72/3
**meaningful [1]** 42/12
**means [24]** 13/21 14/3 14/5 14/20 15/6 21/15 29/4 30/23 31/21 37/22 38/21 39/15 45/15 51/6 51/7 57/6 57/9 57/18 58/21 58/23 67/2 75/6 79/19 79/19
**meant [2]** 34/18 76/23
**meantime [1]** 9/16
**mechanical [1]** 1/25
**media [12]** 5/10 12/2 12/13 18/13 27/5 28/17 39/23 62/18 63/3 78/24 79/24 81/15
**meet [2]** 32/23 51/9
**meeting [1]** 27/1
**meetings [3]** 22/20 52/19 77/15
**meets [1]** 11/4
**member [5]** 16/5 31/3 84/7 84/8 84/8
**members [4]** 26/14 28/4 55/6 60/17
**mens [1]** 32/23
**mental [1]** 14/13
**mentioned [3]** 82/21 82/21 84/17
**mere [4]** 31/24 58/18 66/14 70/9
**merits [15]** 2/22 5/2 7/8 10/10 11/12 21/11 51/5 69/2 71/11 71/20 79/8 79/22 85/20 85/21 86/2
**messy [1]** 25/7
**met [2]** 33/13 44/17
**Michigan [1]** 39/12
**middle [1]** 39/16
**midnight [1]** 25/19
**might [21]** 4/10 4/14 4/15 7/7 7/19 7/23 9/20 9/23 13/22 20/13 24/10 31/7 37/23 37/24 38/25 44/6 50/24 56/14 60/15 74/7 82/6
**mind [7]** 9/10 10/4 19/7 40/18 48/20 74/11 74/11
**minimis [1]** 57/12
**minimum [8]** 35/13 38/1 41/25 42/21 44/16 60/20 64/4 65/9
**minute [2]** 24/5 43/13
**minutes [7]** 12/23 25/16 27/13 76/17 80/9 80/10 83/7
**miraculously [1]** 28/6
**mirrors [1]** 38/20
**misconduct [2]** 14/16 15/18
**misreading [1]** 72/10
**missive [1]** 21/23
**misspoke [1]** 37/18
**misstatements [4]** 33/5 33/14 33/15 35/6
**mistake [5]** 35/18 64/18 64/20 64/21 64/22
**misuses [2]** 78/13 78/14
**modest [1]** 16/13
**moment [1]** 19/11
**Monday [4]** 3/22 8/23 8/25 9/1
**monetary [2]** 47/3 47/24
**months [3]** 6/19 54/13 67/24
**more [30]** 8/21 10/2 10/4 15/6 15/14 15/19 15/22 16/10 16/16 16/22 22/8 24/12 25/11 28/17 38/15 39/1 40/22 42/13 46/22 47/20 49/24 51/12 52/4 53/9 53/11 66/13 70/8 70/16 75/24 78/18
**morning [15]** 2/5 2/7 2/11 2/12 2/15 2/16 4/10 6/12 9/1 9/3 29/25 30/1 53/13 54/19 54/20
**mortgage [5]** 29/11 39/6 39/7 39/8 43/25
**most [4]** 57/11 59/3 66/24 73/8
**motion [10]** 3/7 7/5 8/25 9/19 9/20 11/8 11/11 76/7 87/12 87/16
**motivation [2]** 23/5 23/9
**motivations [1]** 25/1
**motive [11]** 19/4 23/17 23/20 23/24 24/1 24/15 24/17 24/17 25/14 25/20 44/9
**motives [1]** 75/15
**mountain [1]** 10/25
**move [2]** 7/17 29/9
**moves [1]** 78/15
**moving [1]** 39/8
**Mr. [4]** 2/18 2/25 2/25 53/21
**Mr. Chadwick [1]** 2/18
**Mr. Lowell [1]** 2/25
**Mr. Roth [2]** 2/25 53/21
**much [4]** 6/7 39/5 66/5 70/8
**multi [1]** 16/5
**multi-member [1]** 16/5
**must [2]** 14/20 21/4
**my [40]** 2/19 3/11 3/14 3/18 7/5 7/14 8/24 14/18 23/11 24/6 25/9 26/20 32/20 32/22 35/14 36/21 36/24 41/22 42/25 45/8 46/25 47/3 47/4 47/4 47/10 51/22 52/5 53/21 55/10 57/2 59/9 60/13 63/23 64/15 64/25 68/17 73/24 77/20 77/25 79/24
**myself [1]** 52/8

**N**

**N [1]** 2/1
**named [1]** 50/10
**nature [6]** 18/10 47/18 51/24 56/4 67/9 67/17
**NCUA [1]** 12/9
**NCUI [2]** 20/8 50/1
**neatly [1]** 69/11
**necessarily [6]** 29/20 32/22 48/24 63/8 68/9 72/25
**necessary [3]** 2/20 8/1 74/15
**need [28]** 4/20 4/25 5/13 7/23 8/6 8/11 8/13 8/24 25/3 25/10 37/8 37/25 51/3 51/8 52/14 56/5 59/20 67/10 71/18 72/12 82/9 83/18 85/11 85/12 85/15 87/20 87/22 87/23
**needed [2]** 3/9 83/24
**needs [3]** 65/5 74/3 80/10
**neglect [2]** 14/11 14/16
**negligent [1]** 65/9
**neither [1]** 74/20
**never [9]** 30/2 30/15 37/10 39/19 60/21 63/22 78/7 86/19 88/2
**new [3]** 19/3 82/13 87/16
**next [14]** 3/6 6/20 11/14 34/21 49/3 51/1 76/19 78/11 78/15 79/15 82/9 82/17 87/3 87/4
**nicely [1]** 22/7
**nicknames [1]** 28/18
**night [3]** 18/14 29/25 39/16
**Nixon [1]** 59/18
**NLRB [1]** 84/7
**no [69]** 1/4 11/9 12/14 20/8 22/22 23/13 24/11 24/11 24/13 24/15 24/18 24/21 24/25 25/12 25/16 26/5 26/7 26/7 26/7 26/22 27/10 31/19 32/1 32/7 33/12 33/12 33/20 33/25 34/2 35/24 36/2 36/13 37/4 37/24 41/25 44/2 44/3 44/19 44/19 55/8 55/8 56/25 58/25 59/21 60/18 60/21 62/11 62/13 62/25 63/20 63/20 63/20 63/21 63/24 64/13 66/22 72/14 72/15 72/18 74/20 75/5 75/25 76/13 78/2 79/14 80/20 81/10 81/12 86/24
**nobody [6]** 5/15 5/21 5/22 5/22 50/21 50/23
**noise [1]** 50/21
**nominate [1]** 49/2
**nominated [4]** 11/24 18/18 18/23 19/8
**nominates [1]** 49/1
**nominee [1]** 34/7
**nominees [1]** 49/8
**non [2]** 62/3 71/20
**non-merits [1]** 71/20
**non-reviewability [1]** 62/3
**none [4]** 27/3 47/16 64/12 84/1
**nonetheless [1]** 23/4
**nonprescription [1]** 36/18
**normally [1]** 25/13
**not [200]**
**nothing [9]** 11/1 14/3 44/12 48/14 60/7 63/23 68/13 68/13 88/19
**notice [29]** 12/14 18/9 24/11 31/7 37/5 37/8 37/12 38/3 38/4 38/12 38/19 38/22 39/2 39/6 39/13 40/20 42/13 43/8 43/15 43/19 44/13 45/13 46/15 51/7 53/20 62/17 63/2 63/11 63/13
**notion [1]** 81/4
**notwithstanding [1]** 53/17
**novel [1]** 88/8
**now [34]** 13/1 13/18 22/24 27/1 31/20 33/4 38/24 45/4 46/15 48/7 48/16 48/17 48/22 49/2

**N**

**now... [20]** 49/21 51/4 51/8 52/13 53/14 53/22 54/13 59/25 60/10 61/12 62/12 65/4 73/19 77/10 79/24 81/8 81/17 81/20 83/14 84/9
**number [6]** 18/5 18/6 48/19 67/15 67/24 69/15
**NW [3]** 1/14 1/18 1/21

**O**

**O [1]** 2/1
**oath [2]** 46/20 52/6
**objection [3]** 9/20 10/22 11/7
**objective [1]** 29/3
**obligated [1]** 67/3
**obligation [2]** 68/4 68/15
**obligations [1]** 64/6
**obvious [2]** 59/3 64/18
**obviously [2]** 2/23 4/17
**occupy [1]** 61/20
**occur [1]** 30/17
**occurred [8]** 18/10 18/17 19/15 19/16 19/18 20/4 21/13 36/13
**odd [2]** 3/12 53/12
**off [3]** 55/18 59/9 65/14
**offense [6]** 18/10 19/15 19/16 19/17 32/14 32/15
**offer [1]** 2/19
**office [28]** 5/21 17/7 17/8 17/13 18/11 19/7 19/19 21/13 21/13 21/14 21/16 29/9 31/5 31/5 34/8 41/6 43/12 49/17 52/17 58/4 65/14 70/20 70/22 71/14 71/15 73/5 73/18 82/23
**officer [16]** 16/15 16/19 41/2 41/8 41/10 41/12 46/10 55/18 63/25 64/13 80/20 80/21 80/22 80/22 80/23 81/2
**officer's [1]** 80/25
**officers [9]** 19/5 28/15 56/12 64/14 70/1 70/3 70/4 71/14 80/15
**official [16]** 1/24 15/18 19/11 40/9 40/11 40/12 40/16 40/16 40/23 40/24 40/25 62/10 69/14 69/17 69/20 89/9
**officials [2]** 66/20 69/7
**often [3]** 28/20 70/13 73/12
**oh [9]** 18/20 29/23 61/4 61/8 62/25 74/20 75/11 75/18 85/3
**okay [40]** 2/11 3/4 4/3 5/25 6/13 7/13 9/18 22/14 23/14 23/23 24/2 27/15 36/23 37/23 39/5 41/15 45/6 50/3 50/6 52/11 53/1 54/17 55/5 57/17 57/20 60/5 69/21 71/3 74/10 75/23 76/6 78/8 81/18 81/20 84/1 84/16 86/13 86/21 88/14 88/19
**old [1]** 31/14
**once [4]** 58/17 67/6 68/11 78/18
**one [46]** 3/18 4/4 9/22 10/2 10/4 12/8 14/19 15/21 17/9 18/2 18/6 19/3 20/7 21/21 26/6 30/8 30/14 30/15 30/15 32/3 35/18 37/14 39/9 39/20 40/18 41/8 42/7 43/4 45/12 46/9 51/25 56/10 57/12 69/16 70/15 71/16 72/12 72/13 73/8 79/9 81/10 81/12 82/6 83/19 85/20 85/21
**one's [1]** 36/2
**one-sentence [1]** 21/21
**ones [2]** 14/9 83/14
**only [10]** 17/24 20/4 41/6 48/3 51/8 54/7 55/9 58/17 76/5 81/6
**open [1]** 72/19
**open-ended [1]** 72/19
**opening [3]** 49/2 60/10 65/13
**operative [2]** 11/21 11/22
**opinions [1]** 35/18
**opportunity [47]** 18/9 19/17 22/24 24/11 31/7 31/7 36/7 37/5 37/8 37/12 38/4 38/13 39/18 39/21 40/20 42/1 42/8 42/15 43/8 43/8 43/16 43/20 43/24 44/14 45/2 45/14 46/15 51/7 62/18 64/4 64/23 72/13 73/17 73/22 74/5 78/22 78/23 79/8 79/13 79/17 80/9 80/14 81/7 82/3 83/10 83/23 88/12
**oppose [1]** 9/24
**opposed [3]** 4/13 21/16 36/17
**opposite [3]** 9/9 21/16 85/24
**opposition [5]** 8/19 13/8 40/1 40/2 40/8
**oral [2]** 38/12 39/2
**order [4]** 5/17 11/10 26/19 51/8
**orders [1]** 7/24
**original [1]** 29/22
**originally [1]** 16/7
**other [43]** 7/16 8/5 9/10 11/1 12/7 13/9 13/23 14/18 14/21 21/9 22/23 24/8 24/9 25/22 26/10 27/8 28/4 28/15 35/2 37/10 42/20 51/18 52/14 54/12 55/12 56/9 56/17 60/9 61/11 67/12 67/23 68/23 69/19 70/13 70/16 71/16 72/24 73/6 73/20 75/23 76/19 78/4 85/21
**others [4]** 11/6 53/18 53/21 82/20
**otherwise [5]** 3/2 33/13 42/11 42/16 85/14
**our [14]** 3/10 9/17 10/10 15/1 20/24 29/14 35/18 46/2 50/5 56/13 56/20 68/18 82/9 85/6
**out [66]** 3/2 3/10 5/19 5/21 7/24 8/6 10/5 10/19 15/1 16/23 21/8 21/22 23/10 28/22 29/17 31/8 34/5 34/8 34/9 34/13 34/16 36/25 38/7 40/2 40/17 41/6 43/21 44/9 46/10 47/14 47/20 49/16 49/17 50/18 52/13 52/17 53/10 56/13 58/19 60/2 65/6 66/17 70/15 71/14 71/15 76/23 81/4 81/5 83/3 83/3 83/5 83/9 83/14 83/15 83/16 83/18 84/2 85/1 86/1 86/1 86/17 86/19 87/1 87/23 87/25 88/17
**outline [2]** 37/5 45/24
**outlined [1]** 14/21
**outside [1]** 68/12
**outweighs [2]** 70/21 71/16
**Oval [2]** 43/12 45/18
**over [14]** 3/23 3/24 6/20 39/20 45/21 61/1 61/1 63/25 67/24 70/2 70/2 87/16 88/6 88/7
**overcome [2]** 24/16 24/17
**overlap [2]** 39/10 49/18
**overnight [2]** 4/24 6/15
**override [1]** 75/21
**overturned [1]** 86/9
**own [2]** 43/3 60/23

**P**

**P [2]** 1/20 2/1
**packed [1]** 6/8
**page [3]** 21/20 37/2 50/8
**pages [5]** 3/12 53/12 53/21 79/15 87/19
**pains [1]** 79/1
**pale [1]** 55/23
**pants [1]** 77/15
**papers [1]** 15/2
**pardon [1]** 67/15
**parsing [2]** 80/21 81/1
**part [10]** 8/14 9/15 17/18 37/11 47/23 54/14 64/7 79/9 82/2 82/2
**participate [2]** 10/11 52/19
**particular [1]** 81/13
**particularly [1]** 60/1
**parties [7]** 2/4 4/22 4/24 5/3 10/13 16/6 87/4
**pass [1]** 15/12
**passed [1]** 14/25
**passing [1]** 15/9
**past [3]** 21/4 67/24 82/14
**path [1]** 60/20
**pause [1]** 13/6
**pay [2]** 50/3 50/3
**paycheck [1]** 52/5
**PCAOB [2]** 20/8 84/8
**pedigree [1]** 54/11
**people [12]** 10/8 10/14 20/4 28/14 28/18 33/4 33/9 41/1 43/4 57/3 59/9 59/10
**percent [1]** 54/4
**perfect [3]** 5/5 19/23 22/23
**perform [2]** 46/23 47/10
**period [5]** 56/18 63/25 70/22 76/10 82/23
**Perlmutter [1]** 73/9
**permissible [2]** 3/24 23/25
**permits [1]** 3/21
**permutation [1]** 26/7
**person [38]** 10/19 17/25 18/8 18/11 18/11 18/16 18/18 18/21 18/21 18/23 18/25 19/3 19/8 19/10 19/16 19/19 22/19 23/21 33/15 33/25 34/13 35/8 36/6 40/24 41/19 42/5 42/11 43/7 46/3 46/20 47/14 49/22 62/14 65/18 78/11 80/23 85/25 86/1
**person's [9]** 12/21 18/7 19/4 32/13 36/17 46/10 77/7 77/24 81/18
**personal [1]** 75/3
**personally [1]** 45/21
**perspective [1]** 38/1
**phenomenon [1]** 7/20
**phrase [7]** 15/10 31/17 38/16 39/15 77/23 81/6 81/17
**phrases [1]** 14/13
**physical [1]** 14/13
**PI [7]** 4/14 7/5 9/20 9/23 87/6 87/6 87/7
**pick [1]** 19/10
**piece [4]** 13/6 52/13 71/20 73/2
**pivoting [1]** 68/20
**place [17]** 11/19 11/19 43/16 45/22 46/12 46/13 46/18 51/4 52/15 75/8 79/11 79/11 80/1 80/7 81/7 83/22 85/6
**plain [1]** 13/14
**plaintiff [3]** 1/4 1/13 9/24
**plaintiff's [6]** 2/6 3/6 56/4 59/5 64/3 65/13
**plaintiffs [1]** 11/15
**plan [3]** 2/21 3/10 3/14
**plans [1]** 3/6
**plate [1]** 78/11
**play [4]** 46/14 47/12 53/8 87/25
**plays [2]** 46/6 66/25
**pleading [1]** 79/12
**please [2]** 2/4 20/25
**PLLC [1]** 1/13
**PM [1]** 88/21
**podium [6]** 6/12 42/24 79/21 80/19 83/13 86/25
**point [37]** 3/10 10/5 13/20 16/24 17/11 17/12 20/17 20/24 21/14 24/24 25/7 25/10 26/19 26/20 29/17 31/11 31/23 35/24 38/7 43/22 43/23 44/18 48/13 53/10 56/25 64/22 68/20 76/17 76/23 81/4 82/6 83/18 84/2 85/5 86/16 87/24 88/8
**pointed [3]** 15/1 28/22 40/17
**points [4]** 69/15 75/25 83/2 84/12
**policies [1]** 77/19
**policy [15]** 22/21 30/9 47/24 54/25 55/5 55/16 55/25 57/3 57/12 58/18 60/17 66/14 74/25 75/3 77/4
**political [4]** 55/14 66/7 67/19 70/9
**pose [1]** 32/5
**position [36]** 4/23 5/14 6/1 6/17 9/12 9/17 10/1 17/3 17/5 17/11 17/16 17/19 18/1 18/4 27/1 32/11 35/15 40/3 40/13 40/15 40/22 41/1 41/3 41/5 41/11 45/24 53/8 53/22 55/18 56/20 65/14 65/14 68/17 68/18 71/2 87/25
**positions [6]** 3/3 35/20 55/10 69/8 70/9 83/19
**possibilities [2]** 14/7 74/22
**possibility [4]** 17/22 26/4 39/7 39/17
**possible [5]** 3/9 26/7 39/6 64/21 86/18
**possibly [3]** 24/10 27/6 77/13
**post [5]** 5/10 12/2 17/25 62/18 63/3
**post-confirmation [1]** 17/25

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 99 of 103


**P**

**posted [5]** 12/15 28/20 29/21 29/25 80/10
**posting [2]** 27/5 78/23
**potential [2]** 2/21 63/17
**potentiality [1]** 39/4
**potentially [7]** 12/19 13/2 21/23 24/10 49/24 64/19 65/8
**Powell [12]** 26/24 28/5 28/7 28/8 28/10 28/19 28/20 29/7 60/4 60/5 78/7 78/8
**power [13]** 19/10 53/13 53/14 53/16 55/22 58/8 70/24 70/25 71/7 76/10 76/11 76/14 82/20
**Powers [1]** 16/8
**practical [1]** 31/16
**pre [2]** 65/14 65/14
**pre-office [1]** 65/14
**pre-position [1]** 65/14
**precedent [2]** 15/20 17/6
**precise [1]** 64/11
**predated [1]** 17/19
**predates [1]** 17/4
**preliminary [14]** 3/7 4/9 6/22 6/24 7/18 8/16 50/7 51/4 51/9 52/23 74/15 85/11 86/3 87/9
**premise [1]** 34/25
**prerogative [1]** 67/14
**prescribed [2]** 41/20 45/23
**present [6]** 5/3 38/14 39/18 48/23 67/21 74/1
**presentation [3]** 43/13 45/18 82/3
**preserve [2]** 6/4 6/5
**president [95]**
**President's [19]** 12/11 17/23 19/7 21/1 25/1 25/14 28/6 28/17 53/13 53/14 53/16 54/2 57/21 58/7 59/15 60/7 68/3 74/17 75/3
**Presidential [3]** 46/17 54/5 56/11
**Presidentially [1]** 41/3
**Presidentially-appointed [1]** 41/3
**press [2]** 28/21 84/18
**pressure [4]** 6/14 6/15 27/22 67/19
**presumption [2]** 60/25 66/6
**pretend [1]** 43/12
**pretext [18]** 7/2 7/23 8/10 8/14 22/7 22/10 23/7 24/7 24/19 25/7 26/2 26/3 26/3 26/3 31/20 59/6 60/1 78/1
**pretextual [1]** 29/14
**pretty [2]** 70/17 74/17
**preventing [1]** 5/22
**primary [3]** 39/9 39/9 39/10
**principal [7]** 1/16 61/20 63/25 64/13 64/14 70/3 82/7
**prior [3]** 19/9 38/17 66/2
**privately [1]** 81/9
**probably [6]** 6/18 11/4 12/8 26/1 53/3 87/21
**probe [4]** 59/16 59/17 75/12 75/15
**probing [1]** 75/5
**problem [5]** 30/1 35/23 44/11 64/8 81/3
**procedural [5]** 7/10 37/1 44/16 69/5 70/7
**procedure [1]** 37/24
**procedures [3]** 37/25 64/3 64/11
**proceed [1]** 54/21
**proceedings [4]** 1/9 1/25 88/21 89/4
**process [27]** 18/12 36/5 36/24 40/5 40/21 41/2 41/20 41/24 42/3 42/4 42/10 42/12 49/13 49/22 49/24 62/23 66/7 70/7 71/22 72/7 72/22 80/20 80/25 81/15 81/24 83/16 83/17
**processes [2]** 81/5 81/6
**produced [1]** 1/25
**Product [1]** 84/7
**professor [1]** 11/24
**Programs [1]** 1/18
**progress [1]** 8/12
**prohibits [1]** 16/13
**promptly [1]** 8/7
**proper [6]** 30/13 30/14 38/18 44/13 46/11 78/20
**properly [2]** 76/24 79/16
**properties [1]** 61/20
**property [12]** 37/20 37/21 38/8 40/8 40/12 41/7 48/4 52/1 52/2 62/22 69/8 72/4
**propose [1]** 7/2
**propriety [1]** 77/2
**prosecuted [2]** 34/1 35/7
**prosecution [2]** 33/20 36/13
**prosecutorial [1]** 35/4
**protected [2]** 62/22 69/8
**protection [2]** 38/21 72/8
**protections [4]** 64/14 69/5 70/8 72/2
**prove [1]** 31/10
**proven [1]** 18/13
**provide [2]** 13/10 57/6
**provided [4]** 13/23 14/19 53/25 54/3
**provides [2]** 72/4 72/12
**provision [4]** 56/20 56/21 56/21 67/22
**provisions [2]** 31/8 72/3
**public [18]** 7/25 8/6 12/12 12/24 14/16 26/13 28/24 29/6 29/7 29/8 30/19 31/4 31/10 40/9 65/4 76/23 81/11 81/15
**publicly [1]** 12/15
**Pulte [23]** 7/25 12/16 26/12 26/23 28/24 29/1 29/21 36/3 39/3 43/5 43/6 43/14 43/18 43/18 43/24 45/3 45/5 78/24 80/2 80/10 80/13 81/9 82/15
**Pulte's [3]** 13/1 25/19 39/16
**purely [2]** 60/13 67/14
**purported [1]** 12/2
**purpose [4]** 64/17 64/18 65/5 87/12
**purposes [10]** 11/18 40/5 40/7 50/18 51/3 56/1 67/21 69/23 71/12 71/20
**pursuant [2]** 12/2 56/18
**pursue [4]** 33/7 33/10 33/22 48/5
**pursued [1]** 35/5
**put [14]** 19/25 26/22 27/13 29/6 29/12 31/22 34/11 34/20 42/23 48/14 53/24 60/13 69/13 83/21
**putting [3]** 19/10 76/15 76/19

**Q**

**qualified [1]** 11/23
**qualify [1]** 49/9
**qualms [1]** 20/9
**quasi [1]** 16/6
**question [39]** 3/17 4/6 4/14 6/7 7/3 7/5 7/18 14/18 18/3 21/8 21/9 25/13 25/15 31/18 33/16 34/21 35/23 36/9 40/14 41/24 42/25 45/11 52/2 52/12 57/15 57/19 58/17 60/11 60/13 65/24 68/8 71/23 77/7 77/24 78/13 81/18 81/18 81/22 82/22
**questioned [2]** 82/18 82/18
**questions [22]** 2/24 3/1 3/1 4/17 5/1 7/1 8/3 8/14 30/8 31/23 32/3 36/24 40/10 52/14 53/2 54/22 54/23 59/19 67/7 67/11 68/1 75/23
**quick [3]** 59/1 84/11 88/13
**quickly [2]** 3/9 68/20
**quite [2]** 40/15 55/20
**quo [5]** 6/4 11/19 11/21 52/15 52/21
**quote [31]** 9/8 12/17 12/17 12/18 12/19 12/22 12/22 13/1 13/2 13/2 13/2 13/3 13/3 16/13 16/22 26/15 27/2 28/13 30/5 31/16 38/17 38/17 38/22 53/24 54/7 54/9 54/10 54/10 77/7 82/7 84/24
**quoted [2]** 16/16 84/21
**quotes [1]** 32/15

**R**

**R [2]** 2/1 89/1
**railing [1]** 78/8
**raise [1]** 80/16
**raised [3]** 7/20 31/24 39/25
**raises [2]** 2/24 4/17
**raising [1]** 80/3
**range [1]** 62/8
**rarely [1]** 35/5
**rate [6]** 19/6 26/15 28/6 30/21 30/24 77/3
**rates [5]** 27/23 30/17 55/9 77/20 85/3
**rather [1]** 9/23
**rationale [2]** 59/15 85/7
**RCR [2]** 1/23 89/9
**rea [1]** 32/23
**react [1]** 9/15
**reaction [4]** 9/12 62/17 65/12 66/4
**read [16]** 10/8 12/4 15/20 15/21 17/8 53/12 54/13 59/1 60/19 61/13 62/16 65/12 71/15 74/7 75/12 87/18
**ready [2]** 28/1 28/6
**Reagan [9]** 38/19 57/8 57/23 58/22 59/1 68/2 68/19 72/9 72/16
**real [5]** 23/5 23/9 23/10 24/15 85/3
**realize [1]** 3/22
**realized [1]** 8/9
**really [22]** 10/1 19/2 21/18 22/24 23/17 25/9 25/25 29/4 57/11 57/13 58/18 59/21 61/5 67/20 69/24 70/4 72/20 73/23 74/9 75/10 75/21 78/23
**realm [1]** 55/24
**reason [29]** 18/18 23/2 23/8 23/9 23/10 25/2 33/10 33/21 40/12 48/6 55/2 55/8 56/23 57/12 57/13 57/18 59/13 60/9 60/9 60/12 66/13 68/11 77/7 77/9 77/10 77/11 77/23 81/17 85/3
**reasonable [2]** 55/24 62/13
**reasons [3]** 24/24 51/25 59/9
**rebut [2]** 39/23 42/16
**recalling [1]** 72/1
**receive [1]** 49/23
**received [1]** 3/11
**recent [4]** 15/19 38/15 47/12 73/8
**recently [1]** 48/21
**reception [1]** 42/10
**recognized [1]** 15/8
**record [8]** 2/5 2/9 24/13 27/14 29/17 36/8 44/7 63/19
**recorded [1]** 1/25
**records [1]** 82/1
**recourse [1]** 58/25
**rectify [1]** 30/1
**refer [2]** 16/2 37/9
**reference [4]** 13/22 15/13 38/2 48/11
**referenced [1]** 16/1
**referral [7]** 12/13 29/22 32/1 60/2 60/6 61/4 61/7
**referring [2]** 38/15 86/5
**reflect [3]** 11/10 53/7 75/3
**refusing [1]** 55/7
**regard [1]** 4/4
**regulates [1]** 47/24
**regulator [1]** 18/17
**regulatory [1]** 62/10
**reinstated [1]** 86/6
**reinstatement [4]** 48/16 50/2 74/10 74/13
**reiterated [2]** 61/1 71/17
**relates [3]** 4/18 55/17 56/23
**relationship [2]** 19/19 58/4
**released [1]** 12/12
**relevant [3]** 51/23 68/24 69/23
**relief [12]** 2/21 6/9 49/23 50/7 50/11 51/3 51/3 51/9 52/16 52/22 52/24 52/24
**relieved [1]** 88/3
**reluctance [1]** 60/20
**reluctant [1]** 59/16
**rely [1]** 14/6
**remain [5]** 7/15 35/15 55/14 82/23 86/8
**remaining [1]** 80/5
**remedies [1]** 64/11
**remedy [6]** 50/8 64/20 72/23 73/21 74/9 83/17
**remember [4]** 16/1 27/17 51/17 80/7
**remind [2]** 27/13 41/12
**removal [22]** 15/22 37/1 48/4 51/15 54/5 56/11 56/16 56/20 60/8 60/12 62/14 63/18 65/10 67/22 67/24 70/18 71/6 71/11 72/4 73/6 79/20 80/25
**removals [2]** 20/4

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 100 of 103

## R

**removals... [1]** 56/17
**remove [10]** 16/14 17/23 20/5 21/1 21/14 22/24 22/25 60/17 71/8 79/14
**removed [9]** 17/13 18/12 49/22 52/7 54/6 56/17 56/18 68/17 70/22
**removing [4]** 28/14 37/6 46/19 82/24
**render [1]** 31/16
**renovations [3]** 28/11 28/12 29/8
**repeated [1]** 31/14
**repeatedly [1]** 61/4
**replacement [2]** 48/13 48/14
**reply [4]** 49/21 87/2 87/14 88/15
**Reporter [3]** 1/23 1/24 89/9
**reporters [1]** 84/24
**represent [1]** 54/9
**representation [1]** 61/19
**representations [3]** 61/10 61/17 62/11
**representing [1]** 83/13
**requests [1]** 3/19
**require [2]** 42/20 87/16
**required [1]** 34/8
**requirement [3]** 18/8 44/13 76/12
**requirements [8]** 32/23 32/24 37/1 42/1 42/20 44/16 49/23 62/24
**requires [4]** 42/4 68/9 81/16 83/16
**resemble [1]** 7/6
**RESERVE [28]** 1/21 2/17 4/6 11/25 15/9 16/4 16/20 23/19 26/14 27/2 37/13 46/6 46/13 50/10 50/10 52/8 53/8 53/15 53/16 54/1 54/6 54/7 54/9 56/14 56/14 56/24 81/25 88/4
**residence [4]** 39/9 39/9 39/10 61/20
**resign [8]** 12/25 26/15 26/24 28/10 60/4 80/11 80/12 80/13
**resignation [1]** 28/2
**resolve [1]** 70/17
**resolved [1]** 7/9
**respect [3]** 54/23 64/6 77/17
**respectfully [1]** 72/9
**respond [14]** 3/15 13/17 13/18 13/19 35/16 40/1 40/9 41/9 62/19 63/14 76/4 78/22 79/25 80/5
**responding [1]** 74/7
**response [15]** 3/20 8/19 13/7 13/20 14/19 20/21 20/24 36/21 63/20 65/16 74/6 75/24 79/13 80/1 87/19
**responsive [1]** 67/19
**rest [1]** 11/19
**restatement [1]** 49/23
**restrict [1]** 56/11
**restriction [3]** 15/21 71/6 71/10
**restrictions [1]** 16/13
**reticulated [1]** 72/18
**review [15]** 3/13 57/23 57/24 57/25 58/12 59/3 59/4 62/6 62/7 65/21 67/6 68/5 68/13 68/22 75/7
**reviewability [6]** 57/15 62/3 65/23 67/1 67/25 68/1
**reviewable [12]** 25/4 57/10 58/10 58/13 58/20 58/22 65/25 67/5 67/13 68/7 68/19 68/21
**rid [1]** 30/3
**riddled [1]** 28/12
**right [57]** 5/8 6/18 7/15 17/3 26/6 26/17 26/21 30/13 32/19 36/4 36/9 37/9 37/19 37/20 37/20 37/21 38/5 38/6 38/8 40/8 40/12 41/7 42/6 42/7 42/7 42/10 42/18 45/23 46/7 47/3 47/7 48/4 52/1 52/2 52/6 55/17 59/11 59/14 61/8 64/25 66/23 66/25 67/20 68/6 69/10 70/15 73/19 74/9 76/3 77/21 80/20 80/25 81/15 82/19 85/21 85/23 87/13
**rights [4]** 49/13 64/6 64/11 73/13
**rise [3]** 17/20 33/5 44/21
**road [1]** 67/2
**role [3]** 46/5 48/25 66/3
**room [5]** 4/21 17/17 17/22 45/8 59/2
**rose [1]** 79/21
**Roth [4]** 1/16 2/12 2/25 53/21
**RPR [2]** 1/23 89/9
**rule [3]** 60/22 66/9 75/16
**ruled [1]** 49/25
**rules [3]** 3/16 4/12 62/3
**ruling [2]** 7/17 25/18

## S

**s [2]** 2/1 89/8
**Safety [1]** 84/7
**said [89]** 5/24 6/17 7/18 8/2 9/13 11/17 12/18 12/22 12/24 13/2 15/7 15/11 16/12 16/12 19/20 20/1 20/5 20/5 20/6 20/7 25/16 26/4 27/5 27/8 27/9 27/25 28/10 28/21 29/4 30/8 30/10 30/11 30/12 30/14 30/14 30/16 34/4 34/7 34/12 37/12 42/22 43/18 45/1 45/17 46/20 49/7 49/7 51/2 51/14 55/6 56/9 56/14 56/18 57/5 60/23 61/4 61/15 64/22 65/2 66/13 68/24 69/6 70/19 71/1 72/11 72/15 76/5 76/5 76/9 76/10 76/24 77/2 77/2 77/5 77/6 78/6 78/6 78/7 78/17 78/17 78/19 79/21 79/23 80/10 80/19 82/17 83/2 86/6 87/19
**salary [2]** 5/22 47/2
**same [15]** 7/7 14/1 25/20 37/2 39/23 46/9 50/8 61/20 71/19 73/5 73/19 77/5 79/6 84/10 88/6
**satisfied [5]** 5/17 56/21 57/22 58/15 71/10
**satisfies [1]** 63/12
**satisfy [5]** 44/13 44/16 45/4 52/5 62/23
**say [74]** 3/22 5/11 5/12 5/12 6/14 7/25 9/1 9/2 11/1 11/5 15/10 15/17 16/22 18/24 19/21 19/25 22/18 24/19 24/20 25/24 26/2 29/22 30/7 31/3 32/14 33/4 34/16 34/17 37/19 39/1 39/5 42/6 43/1 43/2 43/13 43/23 45/8 45/13 48/11 48/24 49/16 53/15 56/17 57/8 58/11 58/14 59/7 59/14 59/20 60/4 61/3 62/14 65/6 66/6 67/20 69/12 69/22 70/10 71/16 72/14 72/18 73/12 74/5 74/19 75/24 79/7 79/12 79/13 83/19 83/21 84/5 84/8 85/15 87/15
**saying [40]** 4/11 9/15 12/16 12/24 13/12 18/20 22/10 27/7 27/11 28/19 30/22 31/4 32/9 32/20 32/25 37/24 39/3 44/7 45/9 47/9 47/16 47/17 50/8 50/22 50/25 56/8 56/25 60/18 62/7 63/20 65/5 74/2 80/8 81/8 82/5 84/9 84/10 84/22 85/9 85/24
**says [38]** 14/4 14/5 15/15 15/17 16/12 19/7 20/6 20/12 21/23 21/25 24/10 28/20 30/20 31/15 34/15 34/15 34/15 38/12 39/6 43/18 43/24 44/5 45/3 46/22 49/1 49/4 53/13 53/14 53/22 57/8 59/12 68/2 76/14 78/25 79/2 79/3 79/9 85/5
**scale [3]** 18/4 19/14 58/2
**schedule [13]** 3/14 4/21 5/2 5/23 6/3 6/6 6/10 6/20 7/8 8/7 10/11 10/16 11/14
**scheduling [5]** 3/6 9/11 9/13 11/13 87/1
**scheme [2]** 37/4 72/18
**scholarly [1]** 50/17
**scholars [1]** 10/9
**school [1]** 77/18
**seat [2]** 86/17 88/2
**second [8]** 37/14 39/9 46/12 54/4 66/2 69/22 73/2 85/5
**second-guess [1]** 66/2
**section [2]** 14/1 14/24
**see [19]** 8/14 10/23 14/11 16/22 19/25 19/25 19/25 21/2 24/4 24/12 27/11 40/11 45/2 49/21 62/9 62/15 70/6 74/13 81/2
**seek [2]** 9/25 79/20
**seeking [1]** 27/22
**seem [3]** 69/11 72/1 76/21
**seems [6]** 19/14 21/24 22/15 27/6 39/3 85/8
**seen [4]** 10/7 31/2 41/10 48/10
**Seila [1]** 15/25
**Senate [12]** 41/4 46/4 47/4 48/6 48/23 49/3 49/3 65/18 66/19 81/24 82/3 82/11
**Senate-confirmed [2]** 41/4 48/6
**send [1]** 74/10
**sending [1]** 21/22
**senior [3]** 62/10 64/13 80/24
**sense [17]** 5/6 5/17 6/23 7/12 8/17 9/21 19/23 26/17 29/13 37/18 56/5 68/7 71/4 72/17 72/20 74/4 87/3
**sensible [1]** 9/24
**sensitive [1]** 70/8
**sent [2]** 12/15 63/5
**sentence [5]** 21/21 26/6 45/2 45/3 86/12
**separate [5]** 44/20 57/14 67/25 68/1 86/3
**separately [3]** 2/22 85/20 87/7
**Separation [1]** 16/8
**serious [1]** 58/4
**seriousness [1]** 36/13
**serve [3]** 35/19 57/19 63/9
**served [2]** 10/15 87/12
**service [1]** 64/10
**serving [1]** 19/19
**set [5]** 4/9 4/21 5/1 40/18 41/4
**seven [1]** 88/1
**seven days [1]** 88/1
**severe [1]** 35/22
**share [1]** 65/11
**she [56]** 5/14 5/19 5/20 12/20 13/3 27/6 29/24 30/23 36/2 37/24 39/8 39/8 39/11 39/11 39/12 40/7 48/5 48/5 52/3 52/17 52/17 52/18 52/19 52/20 61/13 62/18 63/6 63/7 63/14 63/14 63/15 63/15 65/10 76/24 77/1 77/3 77/18 79/3 79/7 79/10 79/12 80/9 80/10 80/11 80/11 80/13 83/4 83/4 83/9 83/15 83/20 83/20 83/23 83/23 83/24 86/19
**she'd [1]** 86/17
**she's [6]** 40/9 48/6 49/16 52/4 65/6 78/23
**short [2]** 5/3 6/7
**shorter [1]** 25/12
**shot [1]** 43/25
**should [38]** 8/15 10/10 10/24 13/8 14/24 18/25 19/8 19/24 29/19 31/15 34/12 48/24 52/17 52/18 52/19 54/25 71/14 71/15 73/19 73/22 79/18 81/7 81/9 83/3 83/4 83/5 83/8 83/9 83/14 83/15 83/15 83/22 84/1 86/1 86/2 86/19 87/21 88/2
**shouldn't [6]** 18/21 36/18 52/18 80/4 82/13 84/5
**show [4]** 69/2 82/10 85/11 85/12
**showing [1]** 74/14
**shown [1]** 51/5
**shows [2]** 26/4 35/13
**Shurtleff [2]** 41/9 80/17
**side [10]** 10/20 38/14 39/18 39/21 40/24 42/2 64/24 68/23 85/20 85/21
**sides [4]** 10/18 22/18 22/19 88/11
**sign [2]** 39/22 79/24
**signature [3]** 53/24 61/9 65/1
**signed [3]** 53/21 54/14 63/22
**significance [1]** 69/25
**significant [1]** 6/14
**similar [2]** 66/4 71/19
**simply [2]** 52/5 76/21
**since [2]** 4/16 29/18
**sincerity [2]** 59/17 75/15
**single [6]** 16/9 16/14

## S

**single... [4]** 16/19 27/4 51/19 76/15
**sisters [1]** 48/1
**sit [1]** 45/5
**sitting [5]** 10/25 27/7 34/10 50/22 83/13
**situation [7]** 18/9 19/13 32/3 59/4 62/1 66/11 84/3
**sliding [2]** 18/4 58/2
**slight [1]** 83/18
**slippery [1]** 19/9
**slope [1]** 19/9
**smacked [1]** 20/17
**so [127]**
**so-called [1]** 19/17
**social [12]** 5/10 12/2 12/13 18/13 27/4 28/17 31/4 39/22 62/18 63/3 78/24 79/24
**sole [1]** 23/2
**solely [1]** 20/9
**solve [1]** 81/2
**some [34]** 3/12 4/17 10/6 10/11 12/19 13/10 14/6 14/12 21/12 21/15 22/4 27/6 32/4 35/1 35/9 38/21 40/10 41/2 42/3 47/13 50/7 50/17 52/14 53/12 55/21 64/18 64/24 65/25 72/13 72/22 74/20 75/17 85/2 87/8
**somebody [19]** 5/11 10/25 19/2 20/5 30/19 31/4 34/20 36/17 38/17 40/19 40/22 41/5 58/14 70/20 70/21 71/14 71/14 82/24 83/3
**somehow [2]** 27/18 30/1
**someone [12]** 17/23 22/21 22/24 37/6 42/9 55/21 58/11 58/25 59/7 63/9 64/4 75/2
**something [36]** 3/8 10/17 12/17 14/6 14/21 17/25 18/15 19/23 20/16 21/5 21/24 22/6 23/20 23/22 24/4 29/19 29/23 36/16 43/7 47/8 49/1 55/15 58/12 61/8 65/3 65/16 66/5 66/10 76/21 77/9 79/19 81/25 84/22 85/3 87/15 87/20
**Sometimes [2]** 20/4 74/11
**somewhere [3]** 43/17 43/21 45/19
**soon [1]** 29/18
**sorry [3]** 10/2 84/14 87/10
**sort [22]** 4/6 41/2 50/7 55/22 57/14 57/15 58/1 64/10 64/18 64/19 68/19 69/1 70/7 70/14 70/14 70/20 72/6 72/7 72/18 72/22 73/8 85/2
**sought [1]** 6/10
**sounded [1]** 9/15
**sounds [4]** 9/22 47/9 55/16 58/6
**speak [5]** 21/7 72/5 73/14 73/15 74/3
**speaking [3]** 56/10 60/22 73/14
**special [4]** 46/12 46/13 46/18 51/19
**specific [6]** 13/10 13/21 37/1 41/18 56/3 73/1
**specifically [4]** 4/18 12/4 51/13 51/22
**specification [1]** 57/9
**speed [1]** 48/18
**spending [1]** 76/16
**spin [1]** 47/19
**square [2]** 15/23 15/24
**squinting [1]** 44/24
**St [1]** 1/14
**stability [1]** 47/25
**stack [1]** 52/9
**Stacy [4]** 1/23 89/3 89/8 89/9
**staggered [1]** 51/19
**stake [1]** 15/25
**staking [1]** 3/2
**stand [4]** 24/7 53/3 76/20 84/1
**standard [6]** 11/4 25/5 25/5 57/22 70/7 72/20
**standards [1]** 44/17
**standing [1]** 6/12
**standpoint [1]** 73/4
**stands [2]** 79/2 83/24
**start [3]** 2/5 54/22 67/6
**started [7]** 3/5 8/8 27/22 28/1 28/19 41/24 52/20
**starting [4]** 17/12 33/19 33/19 87/16
**starts [1]** 27/18
**state [1]** 47/11
**stated [3]** 38/21 48/20 61/22
**statement [5]** 35/12 63/17 63/21 76/23 84/18
**statements [6]** 31/10 58/1 60/3 60/7 60/16 60/21
**STATES [17]** 1/1 1/10 19/7 23/15 23/16 30/18 46/19 46/21 46/25 48/23 54/1 54/8 63/25 64/15 67/4 80/17 81/24
**stating [1]** 12/4
**status [5]** 6/4 11/19 11/21 52/15 52/21
**statute [36]** 12/5 12/9 13/25 14/2 14/12 14/14 14/23 14/25 15/4 15/5 15/10 15/13 15/16 17/6 17/21 21/14 36/25 37/3 37/5 37/7 37/11 37/12 37/18 37/19 42/20 57/6 57/8 57/16 57/18 58/21 58/23 67/2 72/3 72/7 72/11 78/3
**statute's [1]** 76/12
**statutes [10]** 13/9 13/23 14/8 14/18 14/22 17/8 38/21 56/1 64/10 72/3
**statutorily [3]** 45/23 47/15 75/13
**statutorily-mandated [1]** 47/15
**statutorily-prescribed [1]** 45/23
**statutory [9]** 13/13 31/14 31/14 41/19 47/10 48/6 52/6 56/19 71/10
**stay [2]** 51/13 86/25
**stayed [2]** 86/4 86/6
**stays [1]** 52/15
**stellar [1]** 48/25
**stenography [1]** 1/25
**step [4]** 22/16 63/1 63/1 87/22
**Stephen [1]** 2/13
**steps [4]** 3/6 11/14 87/4 87/9
**still [9]** 26/14 32/10 55/16 61/23 62/13 63/9 64/1 68/2 73/24
**stood [1]** 28/4
**stop [1]** 32/17
**story [5]** 38/14 39/19 39/21 64/24 65/10
**Street [1]** 1/18
**strike [1]** 31/8
**strong [4]** 22/21 40/11 60/1 62/16
**strongly [1]** 22/10
**struck [3]** 53/9 53/19 58/1
**struggling [1]** 64/16
**stuck [1]** 59/23
**sub [1]** 54/10
**sub-quote [1]** 54/10
**subject [2]** 54/5 68/5
**submit [1]** 38/25
**submitted [5]** 39/1 66/19 82/2 82/10 82/10
**substantial [1]** 70/25
**substantive [1]** 69/3
**succeed [1]** 78/14
**success [3]** 51/5 51/8 69/2
**successors [1]** 54/8
**such [4]** 7/15 18/23 56/6 78/5
**sued [1]** 50/9
**sufficient [2]** 44/21 74/8
**suggest [2]** 42/4 60/14
**suggested [1]** 5/18
**suggesting [14]** 4/16 6/19 6/20 7/11 15/21 23/1 23/11 42/13 42/19 44/13 45/22 55/7 62/23 65/22
**suggestion [2]** 47/13 62/17
**suggests [2]** 20/15 60/8
**suit [1]** 77/16
**suitable [1]** 35/15
**Suite [1]** 1/14
**summary [10]** 4/15 6/25 7/6 7/8 7/19 8/5 8/15 9/25 87/7 87/8
**super [1]** 75/18
**superfluous [1]** 31/17
**supplement [2]** 50/5 88/12
**supplemental [1]** 25/23
**supporting [1]** 38/13
**supposed [7]** 9/8 9/9 36/7 39/2 57/23 67/18 79/22
**Supreme [21]** 15/19 16/11 20/1 20/11 20/18 30/10 38/16 38/20 38/20 38/23 47/12 55/25 57/5 59/14 61/1 70/19 71/15 71/17 72/11 75/9 80/17
**sure [17]** 3/22 4/2 9/14 9/14 13/5 26/21 27/16 33/18 37/15 37/17 46/22 49/9 64/21 66/10 78/6 84/13 87/11
**surprise [1]** 28/9
**surrebuttal [1]** 84/14
**surrounding [2]** 78/3 78/4
**suspect [2]** 8/21 35/10
**swing [2]** 78/9 78/11
**sworn [1]** 47/4
**synonymous [1]** 77/10
**system [2]** 1/21 46/14

## T

**T [2]** 89/1 89/1
**table [1]** 87/5
**Tagert [1]** 2/14
**take [17]** 4/12 16/21 22/16 23/17 27/19 29/19 30/23 34/5 36/8 68/25 70/25 72/8 73/2 76/4 81/7 82/13 83/24
**taken [8]** 41/6 46/10 47/3 48/7 52/17 58/5 71/2 86/19
**takes [7]** 11/19 30/19 31/6 36/23 49/3 55/18 75/8
**taking [17]** 4/11 5/22 16/23 17/10 17/15 17/16 17/18 23/21 26/11 27/19 27/24 29/6 33/23 40/19 46/25 55/10 65/13
**talk [12]** 5/25 9/11 11/12 26/9 37/7 38/25 41/25 45/20 51/12 78/21 88/3 88/10
**talked [1]** 14/12
**talking [6]** 51/18 61/3 64/12 72/17 73/6 82/19
**talks [3]** 37/12 79/9 82/20
**tautology [1]** 83/5
**Taylor [1]** 69/16
**teach [1]** 10/14
**teaches [4]** 39/11 39/11 39/12 77/18
**tell [12]** 3/25 8/4 27/14 39/21 52/15 59/5 59/20 63/21 64/24 75/10 79/14 82/9
**temporarily [1]** 86/8
**term [5]** 11/24 19/2 38/8 41/4 51/19
**termination [1]** 85/7
**terms [16]** 3/6 4/8 12/10 25/9 31/16 35/2 38/22 41/4 42/1 49/12 49/18 50/25 60/24 63/13 73/21 87/3
**test [1]** 86/3
**text [1]** 17/6
**than [20]** 8/5 9/23 11/1 14/21 15/22 25/11 25/12 39/1 40/23 42/13 46/22 52/4 53/11 60/9 66/14 69/13 70/9 78/18 79/19 86/15
**thank [9]** 11/16 54/16 54/17 76/2 76/3 76/8 84/10 86/11 88/19
**that [796]**
**that's [116]**
**their [25]** 5/4 6/1 6/17 9/19 15/11 30/3 30/16 34/9 34/10 41/10 54/8 55/11 55/22 64/5 66/3 66/19 67/13 68/15 69/8 77/19 80/19 82/15 84/6 84/22 84/25
**them [17]** 22/22 26/16 26/18 31/3 39/10 39/24 40/10 42/15 42/15 42/16 61/9 63/10 74/13 74/19 75/20 82/4 82/15
**then [88]** 4/4 5/23 6/5 6/10 6/11 7/7 7/16 8/14 9/4 11/13 14/2 18/24 21/3 22/14 24/7 24/12 25/7 25/20 26/8 26/19 27/7 28/22 29/1 30/7 30/13 31/7 33/1 34/13 34/16 34/21 35/21 37/9 37/20 38/9 38/11 39/18 40/14 40/22 40/24 42/23 43/11 44/5 44/6 46/21 49/15 49/18 50/24 51/7 52/2 52/12 52/14 57/21 58/14 59/12 63/13 65/3 65/4 65/20 66/18 67/8 68/11 69/22 70/4 71/17 72/7 72/12 72/13 76/25 77/6 77/25 78/11 78/15

Case 1:25-cv-02903-JMC Document 14 Filed 09/02/25 Page 102 of 103


## T

**then... [16]** 78/21 78/25 79/17 81/10 81/17 83/1 83/1 83/9 83/17 85/18 85/20 86/6 86/7 86/12 87/2 87/7
**theoretical [2]** 26/17 35/10
**theoretically [1]** 48/25
**there [97]**
**there's [61]** 6/8 6/14 8/5 22/22 23/8 24/10 24/11 24/25 25/4 32/1 32/25 33/1 33/20 33/24 33/25 35/24 37/4 41/25 42/3 42/19 43/11 44/2 45/13 48/14 49/2 50/17 50/20 51/10 52/2 55/8 55/8 58/2 58/3 58/25 59/2 60/7 61/12 62/14 63/11 66/17 68/8 70/4 72/13 72/15 74/20 75/5 75/7 75/7 75/17 76/13 77/7 78/2 79/9 80/1 80/20 80/20 81/12 82/5 87/11 88/6 88/19
**therefore [10]** 29/6 34/18 46/13 65/8 65/9 68/21 69/2 71/7 82/12 82/13
**these [29]** 7/22 10/13 11/21 19/23 20/12 24/3 25/24 27/19 31/25 35/5 39/22 44/11 49/6 52/13 55/10 56/1 58/5 59/9 64/9 67/10 70/18 74/16 75/11 75/19 79/3 82/25 85/1 87/8 88/8
**they [79]** 4/11 4/12 4/25 5/25 7/25 8/2 9/16 9/25 15/1 15/2 15/9 15/10 15/11 15/11 15/12 15/13 18/1 19/5 19/6 24/7 27/19 27/19 27/22 27/24 27/25 27/25 28/1 28/8 28/10 29/9 31/5 31/5 33/14 34/8 34/10 34/11 34/11 36/18 41/10 46/2 48/2 48/10 49/15 53/14 53/15 53/19 55/13 60/4 61/9 61/9 61/14 62/3 64/5 64/22 65/2 65/13 66/19 69/2 71/14 71/15 72/2 72/6 72/7 73/25 73/25 79/1 82/15 83/3 83/19 83/20 84/8 85/11 85/12 85/12 85/13 85/16 86/1 86/2 88/12
**they'll [2]** 51/1 72/8
**they're [22]** 6/17 9/16 27/19 33/10 34/1 55/9 55/11 59/16 61/8 61/10 64/10 65/15 67/25 72/10 74/2 77/10 79/4 79/5 82/5 82/7 84/10 85/10
**they've [3]** 22/22 61/18 74/14
**thing [12]** 9/2 10/2 10/4 30/13 39/20 62/2 69/22 73/4 73/6 76/8 82/17 84/10
**things [13]** 21/12 23/18 38/12 46/10 52/20 53/7 58/5 65/21 67/15 68/24 74/12 78/5 84/15
**think [105]**
**thinking [6]** 8/8 15/20 21/7 35/1 51/13 66/23
**thinks [2]** 43/6 59/2
**third [2]** 74/20 78/19
**this [177]**
**those [30]** 14/21 15/5 15/25 16/21 17/8 28/7 30/25 31/8 32/18 35/5 35/11 35/21 37/25 38/14 47/2 47/16 47/17 49/18 51/8 52/9 58/8 58/9 60/18 64/14 70/8 71/19 72/25 73/20 74/21 75/12
**though [1]** 45/13
**thought [6]** 6/13 65/13 66/13 76/25 80/19 84/24
**thousand [1]** 34/12
**three [7]** 15/5 48/21 48/21 51/25 54/13 70/4 88/1
**three days [2]** 48/21 88/1
**three months [1]** 54/13
**threshold [1]** 35/21
**through [4]** 27/12 66/7 70/6 73/10
**time [30]** 4/25 5/3 6/14 6/15 7/15 15/1 15/2 18/6 28/25 29/10 33/10 46/24 54/16 61/21 64/1 66/5 66/16 66/18 73/15 76/2 76/4 78/7 78/19 79/6 79/22 81/21 82/8 82/15 86/16 88/8
**timeline [1]** 26/21
**timelines [1]** 88/13
**times [1]** 84/17
**today [13]** 3/3 3/11 4/11 5/1 8/8 8/16 29/20 45/16 53/20 54/14 64/1 79/2 83/22
**today's [1]** 48/21
**together [1]** 70/13
**told [6]** 36/3 44/1 55/25 61/14 63/23 72/12
**tomorrow [1]** 51/1
**too [3]** 13/18 28/19 35/22
**took [12]** 12/23 18/1 27/19 28/24 31/5 31/5 46/20 50/23 52/6 78/9 78/11 79/1
**top [2]** 16/14 16/19
**totally [2]** 7/21 9/14
**touch [1]** 88/18
**track [1]** 74/21
**traditional [2]** 15/18 24/5
**traditionally [1]** 14/8
**transcript [2]** 1/9 1/25
**transcription [2]** 1/25 89/4
**treat [1]** 4/19
**treated [1]** 55/23
**treating [1]** 9/23
**tree [1]** 50/20
**trepidatious [1]** 50/25
**tricky [1]** 73/23
**tried [1]** 60/4
**trier [1]** 8/1
**TRO [8]** 4/13 4/20 5/7 9/16 9/23 52/23 79/18 87/5
**true [6]** 6/16 29/9 29/18 47/16 72/16 72/16
**TRUMP [7]** 1/6 2/3 26/23 43/13 59/17 60/19 75/22
**TRW [1]** 31/12
**try [3]** 3/21 5/15 88/17
**trying [13]** 21/7 29/2 31/1 31/13 32/5 40/2 45/17 47/11 64/17 70/14 75/1 81/5 87/13
**Tuesday [4]** 9/1 9/3 87/2 88/14
**turn [2]** 4/14 38/9
**turned [1]** 28/7
**turning [2]** 4/8 13/1
**turns [1]** 83/5
**tweet [7]** 12/24 18/14 24/9 24/12 31/4 80/6 83/20
**tweets [4]** 25/19 29/22 39/19 80/5
**Twitter [1]** 80/6
**two [14]** 6/21 14/7 22/19 27/13 32/3 38/14 50/14 61/10 61/20 67/25 69/15 79/3 82/6 83/1
**two days [1]** 50/14
**two houses [1]** 82/6
**two minutes [1]** 27/13
**two weeks [1]** 61/10
**two years [1]** 22/19
**type [3]** 47/13 58/3 67/19
**typically [1]** 23/7
**typographical [1]** 34/12

## U

**U.S [1]** 1/17
**ultimate [1]** 7/6
**uncertain [3]** 6/2 6/2 50/25
**uncertainty [1]** 6/1
**unclean [1]** 85/15
**unclear [1]** 5/9
**uncognizant [1]** 9/6
**uncomfortable [3]** 59/6 59/7 62/4
**unconstitutional [3]** 50/16 56/22 71/7
**uncontradicted [1]** 83/25
**under [13]** 12/3 17/21 24/24 32/7 40/20 48/23 49/9 57/23 58/18 58/22 68/19 74/16 86/4
**underlying [3]** 32/4 79/23 85/16
**underscores [1]** 83/9
**understand [29]** 6/1 16/25 16/25 17/14 18/19 22/3 22/12 24/6 25/8 25/8 25/23 31/1 31/20 31/23 31/25 32/2 32/9 32/17 33/5 51/21 51/21 54/24 56/8 66/12 69/6 69/9 72/25 73/12 85/2
**understanding [6]** 2/19 3/5 5/6 6/13 36/25 73/24
**understood [2]** 47/11 84/22
**undo [1]** 82/14
**unfair [1]** 85/6
**unique [15]** 17/1 40/15 46/5 47/18 53/7 54/10 54/10 56/4 56/15 56/23 66/10 67/9 67/17 84/3 84/6
**UNITED [17]** 1/1 1/10 19/6 23/15 23/16 30/18 46/19 46/21 46/24 48/23 54/1 54/8 63/25 64/15 67/4 80/17 81/24
**unlawful [2]** 34/1 51/15
**unless [3]** 10/24 54/21 75/24
**unlike [1]** 12/7
**unmoored [1]** 16/17
**unprecedented [1]** 23/18
**unrelated [1]** 57/12
**unsubstantiated [1]** 79/23
**until [6]** 4/12 5/16 7/15 12/14 52/13 60/2
**unused [1]** 7/21
**up [18]** 10/3 10/21 21/19 21/21 28/9 31/13 35/22 39/22 49/1 49/3 52/9 53/3 53/22 67/7 70/2 78/11 79/2 84/15
**uphold [1]** 46/21
**us [6]** 9/6 36/23 44/1 48/15 55/25 87/18
**use [7]** 26/2 27/1 31/20 38/22 61/19 77/23 78/1
**uses [2]** 5/10 81/6
**using [8]** 12/23 24/20 28/16 44/3 74/4 74/6 76/21 87/24
**usually [2]** 23/7 66/22

## V

**v [1]** 15/20
**vacancy [1]** 49/2
**valid [2]** 75/15 75/21
**variables [3]** 19/20 58/3 58/9
**various [3]** 10/14 30/10 30/10
**vast [1]** 16/2
**vehicle [1]** 5/10
**vehicles [1]** 28/17
**veins [1]** 42/3
**versus [12]** 2/3 47/22 53/23 59/17 60/19 69/24 70/15 75/22 77/16 80/17 83/4 86/1
**very [29]** 4/23 5/2 5/9 7/3 7/21 10/5 12/10 13/3 13/20 15/5 21/19 45/24 50/25 57/25 59/16 59/16 61/16 62/9 64/9 65/23 67/22 69/6 69/9 72/19 78/1 84/22 86/22 86/24 88/13
**vetting [3]** 66/20 81/24 82/2
**view [3]** 8/15 12/21 54/15
**violate [1]** 16/8
**violation [5]** 29/5 35/4 49/22 58/24 72/22
**vocal [1]** 7/25
**vs [1]** 1/5

## W

**wait [3]** 15/12 29/23 49/16
**waiting [1]** 4/7
**walk [1]** 43/12
**want [30]** 2/18 3/15 4/24 11/1 19/5 19/6 21/2 32/11 42/15 52/5 52/5 53/10 53/15 54/22 57/2 57/14 59/8 60/14 60/21 66/10 70/10 73/14 74/1 75/17 78/21 82/8 84/2 87/15 87/18 88/10
**wanted [3]** 75/24 75/25 78/10
**wants [7]** 6/6 9/24 10/19 18/16 22/24 49/7 65/10
**was [175]**
**Washington [4]** 1/7 1/15 1/19 1/22
**wasn't [4]** 6/19 29/23 32/21 50/3
**watch [1]** 85/4
**watched [1]** 84/21
**way [44]** 3/11 5/11 5/12 5/13 12/12 15/16 15/18 18/19 20/22 25/21 26/17 26/22 34/5 35/10 35/22 36/4 41/6 43/14 45/12 48/10 55/22 57/3 57/4 59/22 60/19 65/11 66/9 70/6 70/15 70/16 73/8 74/18 75/12 76/14 79/13 79/23 80/4 81/13

W

**way... [6]** 82/19 84/6 84/21 85/19 85/22 88/18
**ways [1]** 79/7
**we [164]**
**We'd [1]** 3/23
**we'll [13]** 2/5 3/21 3/22 9/11 9/21 20/23 52/9 62/21 78/8 81/20 82/13 88/17 88/17
**we're [42]** 5/17 6/4 6/5 10/16 17/10 17/15 17/17 20/3 21/19 31/11 31/13 32/6 33/18 34/24 37/2 44/9 47/7 50/8 51/4 51/18 52/16 52/22 52/24 52/25 56/1 56/25 61/3 62/5 62/7 62/12 64/12 66/21 71/9 71/13 71/19 72/17 78/1 79/8 79/22 81/4 83/22 85/10
**we've [8]** 38/25 50/13 51/10 56/9 56/13 71/1 73/6 83/6
**weapon [1]** 28/13
**week [4]** 6/20 49/3 52/20 62/12
**weekend [4]** 3/23 3/24 4/1 9/8
**weeks [1]** 61/10
**weigh [2]** 2/21 85/25
**weighing [1]** 58/9
**weight [1]** 86/2
**weird [3]** 65/20 65/22 66/1
**well [35]** 4/5 7/7 10/5 21/17 31/8 33/1 35/3 36/20 39/7 48/15 50/4 50/5 52/2 52/10 54/9 57/2 58/6 59/19 60/4 63/6 64/7 64/9 65/6 73/16 75/9 77/11 77/22 78/6 79/2 81/8 82/8 82/11 83/19 83/21 85/3
**went [1]** 26/13
**were [28]** 10/10 15/9 15/12 19/24 20/16 22/9 27/25 28/8 28/11 28/12 29/9 32/3 33/4 33/14 33/14 34/8 35/17 39/10 46/23 50/6 50/6 65/13 65/25 71/5 71/23 82/2 82/19 85/7
**weren't [1]** 27/25
**what [237]**
**what's [16]** 8/5 14/21 18/10 30/11 38/3 41/23 61/6 65/5 66/18 67/13 71/13 73/18 85/22 87/5 87/23 88/15
**whatever [18]** 5/16 6/6 10/10 18/18 19/4 22/2 23/25 25/16 28/20 33/10 33/21 36/3 50/2 51/6 51/6 55/12 79/19 80/2
**whatsoever [1]** 57/1
**when [65]** 3/20 5/9 8/2 8/13 10/17 13/19 14/4 14/5 14/25 15/12 21/13 24/4 24/19 26/13 27/23 28/8 28/11 29/10 29/12 30/14 30/18 31/13 34/24 35/19 36/6 38/2 38/8 38/25 39/8 39/10 52/10 53/3 53/22 57/8 58/4 58/7 60/6 64/4 64/4 64/12 65/12 69/4 71/14 71/15 72/15 72/17 73/19 74/16 75/1 75/12 75/21 76/24 78/2 78/9 78/19 79/21 82/20 83/3 83/4 83/9 83/15 83/15 86/1 86/1 86/19
**where [37]** 7/22 13/12 14/18 14/24 16/10 16/24 17/5 19/9 20/1 20/3 23/12 26/1 27/12 32/3 32/5 32/25 37/23 41/9 43/17 45/16 49/22 51/14 55/21 60/16 62/7 67/12 68/7 71/13 72/3 72/18 76/9 76/17 77/22 81/6 83/19 86/16 88/5
**Whereas [1]** 71/9
**whether [24]** 4/14 5/9 7/2 8/9 8/15 19/5 21/4 29/15 34/13 36/17 38/5 40/7 45/15 46/8 46/19 48/16 51/10 57/22 67/5 79/18 80/21 80/24 82/19 83/3
**which [62]** 3/12 4/10 7/14 7/18 7/21 8/2 10/11 10/12 10/13 12/5 12/7 12/14 14/3 14/8 14/9 14/12 14/14 16/3 16/17 18/11 18/12 18/15 19/2 19/20 20/20 21/8 21/10 21/11 21/15 21/17 23/18 24/13 26/8 27/18 27/23 29/8 30/5 33/7 34/17 36/8 37/21 40/8 40/24 45/4 45/6 46/9 46/14 47/11 48/8 67/1 67/22 68/2 68/8 72/12 73/5 77/3 77/4 79/9 79/12 79/24 81/5 82/24
**while [7]** 3/10 6/14 10/21 11/19 31/5 54/6 61/3
**White [1]** 66/20
**who [21]** 10/14 18/16 18/16 19/4 30/19 34/7 40/19 42/5 43/18 43/19 46/10 46/20 51/1 53/21 55/7 60/17 65/18 66/20 67/14 70/20 81/19
**who's [2]** 29/1 70/16
**who-knows-what [1]** 43/19
**whole [2]** 21/13 87/16
**whom [1]** 23/21
**why [38]** 6/12 11/12 13/21 14/25 16/23 17/12 18/20 18/22 19/20 20/13 24/25 25/3 25/8 27/14 29/13 31/9 34/16 34/17 34/24 40/12 41/24 50/9 50/15 51/23 53/23 56/16 56/19 56/24 59/22 63/21 64/2 64/13 66/23 67/21 69/6 69/9 85/6 85/11
**wide [1]** 25/23
**Wiener [1]** 57/5
**Wilcox [8]** 53/18 70/17 70/19 71/4 71/5 71/6 71/16 82/20
**will [43]** 2/4 4/1 5/23 8/2 8/7 11/5 11/10 12/7 13/17 18/4 20/23 22/6 23/17 24/5 27/13 29/17 29/18 30/20 31/3 40/23 41/8 41/17 41/21 46/1 46/20 46/22 47/7 47/21 48/9 48/22 50/4 50/4 50/5 52/9 59/25 71/8 74/11 80/16 81/1 82/9 86/20 87/19 88/3
**William [2]** 7/25 12/15
**winded [2]** 6/7 31/18
**within [8]** 9/22 17/23 21/1 55/24 61/10 62/8 67/14 72/14
**without [8]** 26/11 33/18 35/1 45/8 57/9 58/11 68/17 76/15
**won't [3]** 4/12 30/24 78/18
**word [14]** 12/5 14/5 26/2 26/2 30/23 31/20 33/17 76/6 76/15 76/19 76/21 78/1 78/3 78/13
**words [11]** 12/16 13/25 16/21 16/23 24/9 27/2 29/6 33/16 38/14 76/19 78/4
**work [3]** 22/20 85/19 87/25
**working [2]** 9/7 9/7
**works [5]** 9/4 9/5 9/6 48/18 50/18
**world [5]** 12/15 21/23 23/3 49/6 81/11
**worry [1]** 25/25
**worse [1]** 71/13
**would [90]**
**wouldn't [7]** 20/16 27/7 32/10 40/12 77/3 84/9 86/18
**Wow [1]** 80/9
**writes [1]** 43/6
**writing [4]** 3/20 13/17 13/19 40/1
**written [10]** 8/18 10/14 13/7 16/18 16/18 16/23 20/21 20/24 38/12 39/2
**wrong [9]** 12/18 21/25 43/7 43/14 63/22 64/25 70/13 72/14 86/7
**wrongdoing [2]** 29/4 32/16
**wrongful [1]** 85/25
**wrongfully [2]** 70/20 70/22
**wrote [2]** 4/23 76/8

Y

**Yaakov [2]** 1/16 2/12
**yeah [14]** 25/20 37/4 43/24 56/7 62/25 65/19 67/6 68/18 69/18 70/12 71/25 73/11 75/19 88/10
**year [5]** 11/24 15/14 19/2 19/3 41/4
**years [7]** 18/17 22/19 29/10 39/22 53/17 79/25 85/1
**Yellen [1]** 15/20
**yes [22]** 3/8 3/18 6/24 8/18 9/4 11/2 13/19 25/11 31/19 32/21 36/15 40/7 44/20 53/5 55/4 63/4 64/16 71/4 75/4 84/19 86/5 86/8
**yet [3]** 23/21 35/24 41/11
**you [219]**
**you'd [1]** 34/6
**you'll [4]** 40/1 40/9 53/2 81/2
**you're [36]** 2/19 2/20 4/16 8/18 13/7 13/8 17/16 17/18 17/22 21/10 24/20 24/25 33/2 33/16 36/9 37/19 37/24 39/14 42/13 42/19 44/15 46/14 47/9 50/8 50/9 50/11 55/24 57/4 60/18 62/22 73/14 80/21 87/2 87/6 87/14 88/11
**you've [6]** 3/10 10/6 25/5 47/3 50/9 86/22
**your [93]**
**yourself [1]** 35/3
**yourselves [1]** 2/5
**YouTube [1]** 84/20