## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LISA COOK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02903-JMC |
| | ) | |
| DONALD J. TRUMP, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANT DONALD J. TRUMP'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S <u>MOTION FOR A TEMPORARY RESTRAINING ORDER</u>

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

ARGUMENT ......................................................................................................2

I.      Dr. Cook Fails To Rehabilitate Her Substantive Challenge...................2

II.     Dr. Cook's Procedural Challenge Is Misguided and Futile......................9

III.    The Equitable Factors Alone Require Denying the Motion...................15

CONCLUSION...................................................................................................18

## INTRODUCTION

Although Dr. Cook has now filed an additional 30 pages of briefing in support of her TRO motion (Dkt. 17, "Reply"), she remains unable to overcome the multiple independent legal obstacles to the relief she seeks:

- Dr. Cook fails to grapple with the Supreme Court's century-old precedent treating "removal for cause" as "a matter of discretion and not reviewable." *Reagan v. United States*, 182 U.S. 419, 425 (1901). She tries to distract by citing a different part of the decision, but the Court was clear that substantive review is wholly foreclosed.

- Even if the President's finding of "cause" were reviewable, Dr. Cook still offers no tenable theory for why apparent mortgage fraud does not qualify. She can urge that result only by reading into the statute words that Congress omitted despite using elsewhere, or by pressing invented categorical rules her counsel previously conceded away.

- Turning to procedure, Dr. Cook insists she was entitled to notice and an opportunity to be heard even though no court has ever granted those protections to principal officers—and, regardless, is still unable to explain what further "notice" she would have wanted or what she would have told the President at any "hearing."

- All else aside, Dr. Cook continues to completely ignore the Supreme Court's twice-repeated holding that, in disputes over whether federal officers have been validly removed, the balance of equities favors the government and precludes interim reinstatement. *Trump v. Wilcox*, 145 S. Ct. 1415 (2025); *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

The bottom line is that the statute provides for the President to remove a Governor "for cause," 12 U.S.C. § 242; the President exercised that authority after public revelations of Dr. Cook's mortgage misconduct; and there is no basis in the statute, the Constitution, or principles of equity for a district court to second-guess that determination, let alone to order reinstatement. At minimum, Dr. Cook has not made the strong showing necessary to secure the extraordinary preliminary injunctive relief that she seeks.

1

## ARGUMENT

Most of the arguments in Dr. Cook's reply brief were already rebutted in the opposition brief (Dkt. 13, "Opp."). The President files this supplemental brief to address certain new points and cite some additional authority.

## I.    Dr. Cook Fails To Rehabilitate Her Substantive Challenge.

On the merits, Dr. Cook faces two insurmountable hurdles to her claim that the President lacked "cause" to remove her. *First*, the Supreme Court has held that such determinations are not subject to judicial review. *Second*, the President had abundant cause for his action under any standard, especially after accounting for deference and constitutional avoidance.

**Reviewability.** *Reagan v. United States* held that removals under "for cause" provisions that do not specify the causes that suffice are not subject to judicial review: A "removal for cause, when causes are not defined," "is a matter of discretion and not reviewable." 182 U.S. 419, 425 (1901). That rule squarely applies here, dooming Dr. Cook's substantive challenge.

Dr. Cook fails to distinguish *Reagan*. She observes that the provision in *Reagan* permitted removal "for causes prescribed by law," *id.* at 424, whereas the FRA merely provides for removal "for cause." *See* Reply 2. But that cuts the other way. If a statute that permits removal for "causes prescribed by law" leaves the cause determination in the appointing officer's discretion when the causes are not listed, the same goes *a fortiori* for a statute that uses only the more general language of "cause" without prescribing any particular ones.

2

Dr. Cook is also wrong to assert that *Reagan*'s non-reviewability holding applies only to offices without fixed terms. *See* Reply 2-3. In rejecting the petitioner's substantive challenge to his removal, the Court rested solely on the fact that "removal for cause, when causes are not defined nor removal for cause provided for, is a matter of discretion and not reviewable." 182 U.S. at 425. It had nothing to do with the petitioner's lack of a fixed term. Dr. Cook blurs the rationale for rejecting the *substantive* challenge with something the Court said in rejecting the petitioner's *procedural* challenge. As to the latter, the Court reasoned that notice and a hearing are only required "where causes of removal are specified by constitution or statute, as also where the term of office is for a fixed period." *Id.* at 425. That dictum about procedural protections for officers with fixed terms does not alter the Court's express holding that a standalone "cause" determination is not subject to substantive judicial review.

Dr. Cook's contrary theory also makes no sense. There is no reason to think the President's discretionary determination of what constitutes cause for removal is any more amenable to judicial review simply because that decision concerns an officer with a fixed term of office. That is a non-sequitur. And the D.C. Circuit has confirmed as much by holding that a fixed term of office "is a ceiling, not a floor, on the length of service," *Severino v. Biden*, 71 F.4th 1038, 1045 (D.C. Cir. 2023)—so a fixed term alone confers no removal protection at all. *Accord Parsons v. United States*, 167 U.S. 324, 335, 343 (1897) (similar, and explaining why *Marbury v. Madison* does not hold otherwise).

Other cases corroborate the *Reagan* rule. When President Cleveland removed a justice of the peace under a statute authorizing removal "for cause," for example, the Supreme Court of D.C. explained it lacked the power to "review his action for the purpose of determining the sufficiency of the causes." *United States ex rel. Garland v. Oliver*, 6 Mackey 47, 53, 56 (1887). Likewise, the Supreme Court of Colorado held that, where a statute authorized the Governor to remove an officer "for cause" without limit to "certain specified causes," his decision "is final and decisive." *Trimble v. People*, 34 P. 981, 985 (1893). The New Jersey Supreme Court recognized that, if a statute authorizes a city council to remove an official "for cause" and "prescribes no particular kind of cause," the council is "the sole judg[e] of what shall be cause." *City of Hoboken v. Gear*, 3 Dutch. 265, 287-88 (N.J. 1859). And a New York court held that a for-cause removal statute did not allow courts to "adjudicate upon the sufficiency or goodness of the cause," for "in the absence of any specification by the Legislature," "there is no standard, or rule, or definition, by or according to which one can determine the assigned cause to be good or sufficient." *People v. Stout*, 19 How. Pr. 171 (N.Y. Sup. Ct. Gen. Term 1860) (Sutherland, J.).

Summing up those decisions, a treatise explained that, "where a statute gives a power of removal 'for cause,' without any specification of the causes," the removal decision is not subject to judicial review "with respect either to the cause, or to its sufficiency or existence, or otherwise." Montgomery H. Throop, *A Treatise on the Law Relating to Public Officers* § 396, at 387 (1892).

Dr. Cook points to nothing that calls this long-established doctrine into question. Indeed, she ignores entirely that modern Supreme Court precedent has further shielded the President's discretionary determinations from judicial review, in cases like *Dalton v. Specter*, 511 U.S. 462 (1994). Instead, she argues that judicial review must be available, lest Congress's removal restriction be rendered a dead letter. *See* Reply 5-7. That does not follow. As cases from *Reagan* to *Dalton* illustrate, not every vague standard the Legislature imposes on the Executive is subject to enforcement by the Judiciary.

Finally, Dr. Cook cites legislative history to contend that "Congress contemplated that members of the Board would function with independence akin to Supreme Court justices." Reply 6. Justices, of course, are not subject to removal by the President, for cause or otherwise. They are removable only through impeachment. Had Congress wanted the Governors to be equally protected, it would have said so. It did not.

**Sufficiency of "Cause."** Even if it were reviewable, there is no basis to disturb the President's determination of cause here. To repeat, a senior financial regulator made flatly inconsistent representations in important financial documents, shortly before taking office. Treating that as cause for removal is hardly a clear-cut abuse of discretion warranting judicial intervention. And it does not somehow mean the President has "*more* power to remove members of the Federal Reserve Board than he does with almost all other independent agency officials." Reply 10. Removal restrictions applicable

5

to the latter officials are *unconstitutional*, meaning Article II empowers the President to remove them *at will*. *See Collins v. Yellen*, 594 U.S. 220, 251-52 (2020). This Court need not wade into whether the Federal Reserve is exempt from that rule, because the President removed Dr. Cook for cause.

Dr. Cook again contends that "for cause" in the FRA in fact means "for inefficiency, neglect of duty, or malfeasance in office." Reply 7. But she is quickly forced to concede that the Supreme Court rejected that reading in *Collins*, when it parsed the text of distinct removal restrictions to conclude that a "'for cause' restriction appears to give the President more removal authority than other removal provisions." 594 U.S. at 255-56. Even setting *Collins* aside, Dr. Cook cannot avoid the fundamental principle of statutory interpretation that different language conveys different meaning. Opp. 14. "For cause" in the FRA thus *cannot* means the same thing as "inefficiency, neglect of duty, or malfeasance in office" in the FTC Act, 15 U.S.C. § 41.[1]

Dr. Cook's second escape hatch is that conduct before taking office "could not amount to 'cause.'" Reply 12 (capitalization altered). Notably, her counsel affirmatively abandoned that categorical claim at the hearing last week. *See* Tr. 17:10-11 ("we're not taking that absolute position"); *id.* at 18:3-4. That concession was prudent. For one thing, nothing in the statutory text even hints

---

[1] Dr. Cook's attempt to use *Wilcox* to bolster her narrow reading of "cause" (Reply 9-10) falls flat. The *Wilcox* Court's caution regarding the *constitutionality* of the Federal Reserve's statutory for-cause removal protection has little bearing on the proper *interpretation* of that statutory protection. To the contrary, the removal protection is more likely to be constitutional the narrower that it is, because the less it trenches on the President's exercise of Article II power.

that "cause" is limited to conduct in office (unlike, say, "malfeasance in office"). For another, there is no principled basis to maintain that pre-office misconduct can serve as grounds to be "impeached" (Reply 13) but not presidential removal for cause. For a third, even the state-court cases that Dr. Cook cites recognize that pre-office conduct *can* be cause for removal, if it renders the official "unfit" to serve. Reply 12. That is precisely the determination the President made here, and there is no basis for a court to second-guess it.

Related, Dr. Cook distorts defense counsel's response to a hypothetical at last week's hearing to press a new argument: that her mortgage misconduct was not valid "cause" because it was "long known" to the government, prior to her confirmation. Reply 14. Dr. Cook did not make that claim in her complaint or her opening motion, and it is therefore forfeited. Regardless, it is manifestly wrong. While obscured by squirrelly language, Dr. Cook does not say she ever provided the underlying mortgage documents to the White House or Senate. She says only that she identified both properties as subject to mortgage loans on her Form 278e, and described one as her "primary residence" and another as a "2nd home" on her SF-86. *See* Reply 14 n.6. But none of that is problematic. Like anyone else, Dr. Cook was free to seek a mortgage for a second home; but, like anyone else, she could not misrepresent a second home as a "principal residence" and thereby secure a lower rate. Dr. Cook thus does not come close to proving that the Senate was aware of her *misconduct* and confirmed her nonetheless, whether or not that would make a legal difference.

7

Finally, Dr. Cook's pretext theory is both legally foreclosed and factually unsupported. On the law, she cites *Department of Commerce v. New York*, 588 U.S. 752 (2019), to suggest this Court may look behind the President's stated rationale. Reply 15 n.7. But *Commerce* involved APA review of agency action, and the President is not an "agency" whose actions may be reviewed under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). Instead, the Supreme Court has been clear that only "an express statement by Congress" could authorize review of "the President's performance of his statutory duties … for abuse of discretion." *Id.* at 801. And it has rejected past efforts to probe the President's "true" motives for a facially valid action. *Trump v. Hawaii*, 585 U.S. 667, 702 (2018); *Trump* v. *United States*, 603 U.S. 593, 618-619 (2024).

As to the facts, Dr. Cook's allegation of pretext is equally baseless. Her only "evidence" is that the President has criticized the Board over policy. But the mere *existence* of policy disagreement does not mean the President removed Dr. Cook *because of* that policy disagreement—let alone that it was a *but-for cause* of his decision, as Dr. Cook would need to prove. None of the President's statements about Federal Reserve policy made any mention of removing Dr. Cook or anyone else. Indeed, the President has expressed disagreement with the policy choices of many members of the Board, but has removed only one: Dr. Cook, after the mortgage revelations. Dr. Cook's policy disagreements with the President cannot be used to immunize her from the consequences of her misconduct or removal for such a cause-based rationale.

## II.    Dr. Cook's Procedural Challenge Is Misguided and Futile.

Dr. Cook's fallback procedural challenge is no better.  The FRA creates no statutory right to notice and a hearing.  As to any constitutional challenge, there is no protected property interest in holding high public office.  And anyway, Dr. Cook had notice of the grounds for her removal and has *still* mounted no fact-based challenge that would have required any "hearing."

**Statutory Right.**  The FRA did not confer on Dr. Cook a right to notice or a hearing before her removal.  It contains no procedures requiring notice to be provided to a Governor fired for cause, nor does it contain any processes for a hearing before the President makes his cause determination.

That stands in stark contrast to other statutes that expressly require notice and opportunity for a hearing before removal of an officer.  For example, Congress provided that the President may remove members of the National Labor Relations Board "*upon notice and hearing*, for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a) (emphasis added).  Other statutes are similar.  *See, e.g.*, 5 U.S.C. § 7104(b); 22 U.S.C. § 4135(d); 38 U.S.C. § 7101(b)(2); 5 U.S.C. § 7521(a).  This Court should not insert such language into the FRA, because "Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

Indeed, Congress demonstrated that understanding in the same bill that contained the relevant provision here.  The original bill passed by the House of Representatives allowed the President to remove members of the Board of

Governors "for cause," while simultaneously allowing the Board to remove officers of the Federal Reserve Banks "for cause stated in writing with opportunity of hearing." S. Doc. 335, 63d Cong., 2d Sess. 25, 29 (1913). While the hearing requirement was stripped out before passage, 12 U.S.C. § 248(f), the point remains: This Congress knew the difference between cause alone and cause after written notice and an opportunity to be heard.

Dr. Cook argues that the "critical cases" supporting her argument are *Reagan* and *Shurtleff v. United States*, 189 U.S. 311 (1903). *See* Reply 17-18. But she misreads both. In *Reagan*, the Court upheld the removal of an officer who "was given no notice of any charge against him, and no hearing," because the governing statute did not specify *particular* causes. 182 U.S. at 424-25. Similarly, in *Shurtleff*, the Court reasoned that only when causes are "named in the statute" must a "removal for any of those causes" follow "notice and an opportunity to defend." *Id.* at 317. These cases work against Dr. Cook, because the FRA does not prescribe specific causes for removal.[2]

---

[2] State courts have drawn a similar distinction, concluding that a for-cause provision that does not identify specific causes leaves the removing authority free to proceed "ex parte" or to "adopt such mode as to him shall seem proper, without interference on the part of the courts." *Trimble*, 34 P. at 985-86; *see also, e.g.*, *In re Carter*, 74 P. 997, 998 (Cal. 1903) (holding that statute authorizing removal "for cause" did not "require any hearing or proceeding"); *People ex rel. Gere v. Whitlock*, 47 Sickels 191, 197-199 (N.Y. 1883) (statute authorizing removal "for cause" did not entitle the removed officer "to have notice or be heard"); *City of Hoboken*, 3 Dutch. at 287 (statute authorizing removal "for cause," but specifying "no particular kind of cause," allowed "removal without previous notice"), *abrogated on other grounds by State v. Int'l Fed'n of Pro. & Tech. Eng'rs, Loc. 195*, 780 A.2d 525, 543 (N.J. 2001).

Simply put, the key question is whether the governing statute provides for notice and hearing, either explicitly by saying so or implicitly by identifying a set of specific permissible causes. The FRA does neither, so the Court should not judicially impose such a requirement.

**Property Interest.** Dr. Cook's alternative theory—that the Due Process Clause entitled her to notice and a hearing before her removal because she had a protected property interest in her position as a principal officer of the United States—is equally wrong. As Supreme Court precedent establishes, "public office is not property." *Taylor v. Beckham*, 178 U.S. 548, 576 (1900). Dr. Cook's attempts to distinguish these cases are unpersuasive.

Dr. Cook discounts *Taylor* because it involved elected offices rather than appointed offices (Reply 21), but the Court's reasoning did not turn on this distinction. Rather, the Court rejected a property right based on "numerous" decisions "to the effect that public offices are mere agencies or trusts, and not property as such," *Taylor*, 178 U.S. at 577—a rationale that applies equally to appointed offices and elected offices. Indeed, one of the referenced decisions was *Butler v. Pennsylvania*, 51 U.S. 402, 403 (1850), which rejected a property right for an appointed canal commissioner. Dr. Cook notes that *Butler* involved a question under the Contracts Clause (Reply 21), but *Taylor* found it relevant to the Due Process Clause analysis because it distinguished a public office from "private rights of property" that "are vested." *Taylor*, 178 U.S. at 576 (quoting *Butler*, 51 U.S. at 416). Similarly, in *Crenshaw v. United States*, the Court held

11

that a naval "officer" lacked any "vested interest or contract right in his office." 134 U.S. 99, 104 (1890).  Dr. Cook wrongly characterizes this case as about a mere "employee" (Reply 21), but the Court described the naval midshipman as an "officer," *Crenshaw*, 134 U.S. at 104; *see also* Naval Act of 1794, § 3, 1 Stat. 350, 350 (Mar. 27, 1794) (classifying "midshipmen" as "warrant officers").

The Supreme Court's understanding is consistent with the traditional view of state courts that "office in this country is not property." *Smith v. Mayor*, 10 Tiffany 518, 520 (N.Y. 1868).  The theory that an officer "has a property or vested right," indeed, "is wholly inconsistent with our system of government." *Lynch v. Chase*, 40 P. 666, 667 (Kan. 1895); *State ex rel. Attorney General v. Hawkins*, 5 N.E. 228, 233 (Ohio 1886) (similar).  In particular, U.S. courts have long agreed that a "public office cannot be called 'property,' within the meaning" of constitutional provisions guaranteeing due process.  *Attorney General v. Jochim*, 58 N.W. 611, 613 (Mich. 1894); *see, e.g.*, *Moore* v. *Strickling*, 33 S.E. 274, 275 (W.Va. 1899); *Donahue v. Will County*, 100 Ill. 94, 104 (1881). And several of these cases, including *Smith*, *Lynch*, and *Hawkins*, involved appointed officers, contrary to Dr. Cook's appointed/elected dichotomy.

Against all this, Dr. Cook points to language in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), stating that Marbury's appointment as a justice of the peace "conferred on him a legal right to the office for the space of five years," 5 U.S. at 168.  But a *legal* right for purposes of *mandamus* is hardly the same thing as a *property* right for purposes of *due process*.  Plus, the Court has since

12

warned that *Marbury* "is not to be regarded as [supreme] authority in respect of the power of the President to remove officials appointed by the advice and consent of the Senate, for that question was not before the Court." *Myers v. United States*, 272 U.S. 52, 139-40 (1926); *see also Parsons*, 167 U.S. at 343 (rejecting notion that fixed term of office confers any removal protection).[3]

In the end, Dr. Cook cites no case holding that any public officer—let alone a principal officer—has a property interest in her office protected by the Due Process Clause.  And she properly concedes that "neither the tenure nor salary of federal officers is constitutionally protected from impairment by Congress." *Glidden Co. v. Zdanok*, 370 U.S. 530, 534 (1962).  By providing that members of the Federal Reserve Board can be "removed for cause by the President," 12 U.S.C. § 242, Congress impaired their tenure.  At minimum, Dr. Cook's concession means that her due-process claim hinges on whether the FRA provides procedural protections—which, as shown above, it does not.

"It is impossible to conceive how, under our form of government, a person can own or have title to a governmental office." *Donahue*, 100 Ill. at 103.  The Court should reject Dr. Cook's claim of a property interest in her former office.

**Sufficiency of Procedures.**  In any case, the procedures utilized here were sufficient to satisfy any minimal procedural prerequisites that could conceivably apply in this unique context.

_____

[3] As *Myers* explained, *Marbury*'s holding was to exercise the power of judicial review to hold unconstitutional the statute conferring original mandamus jurisdiction on the Supreme Court.  *Myers*, 272 U.S. at 139.

On notice, Dr. Cook insists she "did not receive pre-termination notice," but then immediately admits that she "learned" of the FHFA referral and the President's comments. Reply 22. There is no real question that "*actual* notice … more than satisfied [Dr. Cook's] due process rights." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Notice that is transparent and public is no less constitutionally adequate. Dr. Cook then objects that the President did not say he "was considering removing [her] from the Board." Reply 23. But, if there was any doubt, he did just that on August 22, as Dr. Cook admits on the next page. *See* Reply 24 (acknowledging President's public statement that "I'll fire her if she doesn't resign"). And while Dr. Cook gripes that "no specifics were ever provided" (Reply 23), she identifies no facts that were unclear. The referral attached the agreements, and their contradicting covenants speak for themselves. The only missing fact is whether Dr. Cook acted intentionally or negligently—which did not matter to the President's "cause" determination, and which fact is in her sole possession anyway.

On opportunity to be heard, Dr. Cook argues that the President did not specifically invite her to push back on the charges. *See* Reply 24. No invitation was needed for a principal officer of the United States, who is told she will be fired based on apparent mortgage fraud, to defend herself to the President, and the Court should not place itself in the position of micromanaging the way the President communicates with the most senior level of federal officers. Anyway, Dr. Cook did not need to "take to social media" (Reply 24); her response could

have been issued in any way she preferred, public or private.  The reality is that Dr. Cook quite intentionally said nothing—and is quite intentionally *still* saying nothing, two weeks and dozens of pages of briefing later.  She says this lawsuit is "not the place" to make her case.  Reply 24.  That is counterintuitive to say the least.  Dr. Cook is asking the Court to override the President's cause determination on the ground that he failed to hear her out.  Before securing that extraordinary relief, she should at least be required to explain what she would have said and why it might have mattered.[4]  Otherwise, any purported due-process violation was *harmless*, and at the very least did not impose the type of irreparable harm needed for extraordinary injunctive relief.

## III.    The Equitable Factors Alone Require Denying the Motion.

Dr. Cook's motion fails for another, independent reason.  Last week's opposition brief explained that the Supreme Court's orders in *Wilcox* and *Boyle* "are binding precedent on the application of the equitable factors, and thus require denial of Dr. Cook's TRO motion."  Opp. 23.  In both cases, the Court held that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully

---

[4] It is also not clear the type of hearing to which Dr. Cook believes she was entitled.  At the TRO hearing, her counsel stated that she did not expect to have the opportunity to make a presentation to President Trump.  *See* Tr. 43:10-14.  He suggested that a hearing may instead take place in front of the FHFA Director who brought to light her mortgage misconduct.  *See id.* at 43:15-44:14.  But that makes no sense, because the Director was not the decision-maker; the President was.  This confusion highlights that neither the FRA nor precedent establishes specific protocols for what any notice and hearing must look like; this Court would be forced to invent those details if it accepted Dr. Cook's arguments.

removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654. That holding is binding as to the equitable factors, and there is no reason why it does not apply equally to this removal dispute. And Dr. Cook does not offer one—instead, she continues to completely ignore the Supreme Court's language.

Indeed, Dr. Cook cites *Wilcox* only for its caveat that "for-cause removal protections" for the Federal Reserve were not "necessarily" called into question by the Court's ruling about such protections for other executive agencies. 145 S. Ct. at 1416. But that comment was about the *merits*—the constitutionality of the for-cause protections. That question is not presented here, because the President maintains that he complied with that restriction. And the *balance of harms* is identical: The harms from allowing an officer removed for cause to continue in office outweigh the harms of preventing her from performing her duties during the pendency of litigation (certainly before any confirmation of a replacement is imminent). That rule precludes relief here, no matter what "the public markets" or "leading economic periodicals" (Reply 29) may think.

Even looking at Dr. Cook's claimed irreparable harm alone, her demand for an injunction fails under established law. Being "unable to carry out her obligations to the American people" (Reply 25) is not cognizable irreparable harm, even if her job is very important. Opp. 24-25 & n.3. Dr. Cook again cites a slew of recent district court orders to the contrary—but again ignores that

virtually all have been stayed pending appeal.  *See* Opp. 23-24 (citing stays); *Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641 (July 3, 2025).[5]

Dr. Cook tries to distinguish her situation by claiming that her removal involves "reputational and stigmatic harm."  Reply 27.  But those harms are attributable to the new revelations of Dr. Cook's misconduct—not to her for-cause removal based on those revelations.  Reinstatement would not erase the revelations or restore her reputation—nor should it, when she adamantly refuses to address the charges in any way.  In any event, the law does not support a "reputational" exception.  The only case she cites, *O'Donnell v. Barry*, addresses the framework for when an at-will employee can bring a due-process challenge to an adverse employment action; it says nothing about irreparable harm or injunctive relief.  148 F.3d 1126, 1139-42 (D.C. Cir. 1998).

Finally, being deprived of "process" (Reply 28) does not somehow justify a reinstatement injunction.  Even assuming that Dr. Cook was entitled to more process than she received, that does not change the nature of the harm she is suffering—namely the loss of employment, which is not irreparable for all of the reasons discussed in the opposition and above.  There is no other concrete

---

[5] The sole exception is *Slaughter v. Trump*, where a divided panel declined to grant a stay only because the "constitutionality of the Federal Trade Commission Act's for-cause removal protection" had been upheld by "controlling and directly on point Supreme Court precedent," which the panel concluded affects "the equitable calculus." Order, No. 25-5261, at 2, 12 (D.C. Cir. Sept. 2, 2025).  The only Supreme Court precedent directly relevant here (namely *Reagan*) *undercuts* Dr. Cook's claims.  (The Solicitor General also intends to seek Supreme Court relief today in *Slaughter*.)

harm that the alleged deprivation of due process is causing her. All of the cases she cites on this point are facially inapposite.[6]

Indeed, if anything, an injunction reinstating Dr. Cook to office is even *less* warranted on her procedural claim, because she has made no showing that an "opportunity to be heard" would conceivably have changed the President's determination. An opportunity to tell one's side of the story only matters if one has a side of the story to tell, and Dr. Cook has given no indication that she does. At most, her procedural claim would entitle her to an opportunity to tell the President why she should be retained—an opportunity she did not need a court to impose, and that she has failed to take advantage of for two weeks and counting. *Cf. Califano* v. *Yamasaki,* 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendant than necessary").

For these reasons, if the Court has any doubts about the merits, it can deny the requested injunction based on the equities alone. *E.g.*, *Perlmutter v. Blanche*, No. 25-cv-1659, 2025 WL 2159197 (D.D.C. July 30, 2025).

## CONCLUSION

The Court should deny the requested injunctive relief.

---

[6] *See Gordon v. Holder*, 826 F. Supp. 2d 279, 296 (D.D.C. 2011) (challenge to federal statute that subjects nonresident tobacco retailers "to taxes in state and local forums without regard to whether they have minimum contacts with the taxing jurisdiction"); *Goings v. Court Servs. & Offender Supervision Agency*, 786 F. Supp. 2d 48 (D.D.C. 2011) (addressing challenge to probation condition that restricted plaintiff from having contact with his own children); *Simms v. D.C.*, 872 F. Supp. 2d 90 (D.D.C. 2012) (failure to provide hearing to challenge seizure and retention of vehicle in civil forfeiture context); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) (addressing ICE detention of transgender individuals during COVID-19 pandemic). None of these cases has any relevance to the issues presented here.

Dated:  September 4, 2025          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

ERIC J. HAMILTON
Deputy Assistant Attorney General

EMILY HALL
JOHN BAILEY
Counsel to the Assistant Attorney
General

*/s/ Jeremy S.B. Newman*
CHRISTOPHER R. HALL
Assistant Branch Director
JEREMY S.B. NEWMAN
J. STEPHEN TAGERT
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 532-3114
E-mail: jeremy.s.newman@usdoj.gov

*Counsel for Defendant Donald J. Trump*