## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA D. COOK, in her official capacity as a member of the Board of Governors of the Federal Reserve System and her personal capacity,<br><br>*Plaintiff*,<br><br>*v.*<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, both collectively and in their individual official capacities,<br><br>JEROME H. POWELL, in his official capacity as Chair of the Board of Governors of the Federal Reserve System,<br><br>*Defendants*. | Civil Action No.<br>1:25-cv-02903-JMC |

## PLAINTIFF LISA COOK'S SUR-REPLY IN SUPPORT OF HER MOTION FOR A TEMPORARY RESTRAINING ORDER

I.    ***Slaughter* Makes Clear that the Irreparable Harm and Balance of Equities Elements Favor Governor Cook.**

The DC Circuit's recent decision in *Slaughter v. Trump*, No. 25-5261 (D.C. Cir. Sept. 2, 2025) supports Governor Cook's position on irreparable harm and balance of the equities.

If this Court does not immediately recognize Governor Cook's ongoing right to her position, she will be unable to carry out her statutory duties to guide monetary policy and stabilize the U.S. financial system. A similar harm was recognized by this Court's permanent injunction in *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396, at *18 (D.D.C. July 17, 2025). By declining to stay the injunction, the D.C. Circuit effectively endorsed that theory of irreparable harm. *See Slaughter*, slip op. at 3.

The Government relies on the Supreme Court's statement that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415 (May 22, 2025); *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (July 24, 2025). But in *Slaughter,* the D.C. Circuit concluded that the "equitable calculus" in *Wilcox* and *Boyle* does not apply to all removal cases, explaining that the government in those cases "articulated a concern that the reinstatement of the removed officers could affect the agency's composition in a way that would empower it to take meaningful regulatory actions that conflict with the President's agenda." *Slaughter*, slip op. at 12.

As in *Slaughter*, no such concern is present here. Indeed, the Government concedes that the President cannot remove Governor Cook based on a policy disagreement. What is true for the position at issue in *Slaughter* applies with even greater force in this case. The longstanding purpose of the Federal Reserve—tracing back to the "distinct historical tradition of the First and Second Banks of the United States," *Wilcox*, 145 S. Ct. at 1415—is to set monetary policy *outside*

the influence of short-term political interests.   Thus, the only potential harm the Government can assert is based on the continued exercise of authority by an official the President has deemed unsuitable based on unsubstantiated allegations of pre-office conduct that was knowable at the time of Governor Cook's confirmation.   Any such harm is vastly outweighed by the substantial injuries to Governor Cook—and the Board on which she sits—that would flow from allowing her removal while this case proceeds.

## II.    *Harvard* Supports Governor Cook's Pretext Argument.

The Government's argument that evidence of pretext is unsupported by the facts because "[n]one of the President's statements about Federal Reserve policy made any mention of removing Dr. Cook or anyone else" (ECF 23 at 8) is undermined by the recent decision in *President and Fellows of Harvard College v. HHS*, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) ("*Harvard*").   As in this case, *Harvard* involves statements from the President urging action for a clearly impermissible reason—there, Harvard's perceived ideology; here, the Federal Reserve's policy choices—followed by a government action taken on different, purportedly lawful grounds.   *See id.* at *24–26.[1]

The district court there rejected that transparent two-step, explaining that the "public[] and contemporaneous[]" public statements threatening Harvard on ideological grounds "are flatly inconsistent with" the government's insistence that it in fact defunded Harvard due to alleged antisemitism.   *Id.* at *25.   President Trump attempts the same two-step approach here: the President's "public[] and contemporaneous[]" statements demanding that the Federal Reserve

---

[1]   While the *Harvard* decision was based on summary judgment proceedings, as to the issue of pretext, the court relied on the public and social media statements made by President Trump as evidence of pretext. Here, too, the Court can review this issue in light of his many public statements.

lower interest rates (Complaint (ECF 1) at ¶ 34), urging Chairman Powell to resign (*id.* at ¶ 36), and touting the fact that he will soon have a majority on the Board (ECF 2-1 at 18) are "flatly inconsistent with" the Government's position that President Trump's basis for terminating Governor Cook was perceived mortgage misconduct.  This Court can adopt precisely the same approach as the *Harvard* court took here.

The Government now claims Governor Cook's pretext argument is "baseless" (it is not), and suggests that, because "[n]one of the President's statements . . . made any mention of removing Dr. Cook or anyone else," it must mean there can be no pretext here.  ECF 23 at 8.  In fact, the Court *can* look to the President's broader statements about the Federal Reserve Board prior to the purported removal of Governor Cook, and as was emphasized by the Court in *Harvard*:

> Defendants' contention that Harvard's First Amendment activities were not a "substantial and motivating" factor in the funding terminations, or that those terminations were animated by non-retaliatory motives, *does not square with the government's communications regarding its decision*, which specifically and repeatedly linked the coordinated funding cuts to Harvard's decision to "fight." . . . *To the extent the Court can consider these public statements, they provide additional support for granting* Plaintiffs' summary judgment motion as to their First Amendment claims[.]

*Harvard*, at *26 (emphases added); *see also id.* at *25 ("numerous government officials spoke publicly and contemporaneously on these issues, *including about their motivations*, and those statements are flatly inconsistent with what Defendants now contend.") (emphasis added).  To demonstrate the very pretext as to Harvard—much like the President has done here to find a basis for Governor Cook's removal—the Court found that "defendants used antisemitism *as a smokescreen* for a targeted, ideologically-motivated assault on this country's premier universities." *Id.* at *36 (emphasis added).  That same smokescreen—using concocted allegations of mortgage fraud to find a basis to remove a Governor over policy disagreements and now claim "cause"—is evident in President Trump's and other public officials' statements in the record.  As

the Supreme Court put it in another case where the facts made the government's stated reasoning implausible, courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). [2]

### III.    The Government's Continued Reliance on *Reagan* is Misplaced.

The Government continues to misread *Reagan v. United States*, 182 U.S. 419, 425 (1901). *Reagan* did not announce that a President's "cause" determination is unreviewable unless "cause" is defined by statute.  Instead, the Court—in analyzing the procedural protections afforded to officers—emphasized that the critical distinction was between those serving fixed terms and those without defined tenure.  *Id.* at 425.  The Government cannot disregard that crucial component of *Reagan*'s reasoning as "dictum."  ECF 23 at 3.

According to the Government, the "petitioner's lack of a fixed term" in *Reagan* "had nothing to do with" the Court's conclusion regarding the reviewability of his removal.  ECF 23 at 3.  Yet one page before its "non-reviewability holding," *id.*, *Reagan* expressly noted that the commissioner challenging his removal was "not holding [his] office[] for life or by any fixed tenure" and thus fell "within the settled rule that the power of removal is incident to the power of appointment."  *Reagan*, 182 U.S. at 424.  And just *two sentences* before its "non-reviewability holding," ECF 23 at 3, *Reagan* stated that "*where the term of office is for a fixed period, notice*

---

[2] Indeed, on the same day that the Government filed its Supplemental opposition calling Governor Cook's pretext argument "baseless," public reporting indicated that at least three officials in President Trump's cabinet have listed more than one primary residence on their loan papers.  *See* Robert Faturechi, et al., *Trump Is Accusing Foes With Multiple Mortgages of Fraud. Records Show 3 of His Cabinet Members Have Them.*, ProPublica (Sept. 4, 2025), https://www.propublica.org/article/trump-cabinet-mortgage-fraud.  Apparently, these same "facial contradictions" in cabinet officials he can fire at-will were not enough for him to do so, but the President claims they are sufficient to support a firing when real, adequate "cause" is required.

*and hearing are essential. If there were not, the appointing power could remove* at pleasure or *for such cause as it deemed sufficient.*"  *Reagan*, 182 U.S. at 425 (emphasis added).  *Reagan* thus unequivocally establishes that where a term of office is for a fixed period, the appointing power *cannot* remove "for such cause as it deems sufficient."  *Id.*  This statement fully forecloses the Government's contention that under the FRA, a "cause" determination must be left to the President and President alone.

To "corroborate" its proposed "*Reagan* rule," the Government relies on a state court decision that, like *Reagan*, actually hurts its case.  In *U.S. ex rel. Garland v. Oliver*, 6 Mackey 47 (1887), the D.C. Supreme Court stated that, "[t]he justice of the peace does not hold his office at the discretion or pleasure of any one, but for four years, 'subject to removal for cause.' *His office is his property*."  *Id.* at 50 (emphasis added).  The Government attempts to rely on *Ex. Rel. Garland* for the proposition that "cause" is unreviewable, but the question of reviewability was not even at issue in that case.  *Id.* at 56 ("It is not argued" that "this court can review his action" to determine "the sufficiency of the cause[]").  Further, the D.C. Supreme Court in *Ex. Rel. Garland* left open the possibility that the officer challenging his firing was serving under a statute establishing that he could be removed for "incompetency, habitual drunkenness, corruption in office or any other willful misconduct."  *Id.* at 52–53.  So whether "cause" was specified by statute—the variable that the Government now argues is decisive—was a complete nonfactor in the court's analysis.

## IV.    Officers With For Cause Removal Protection Are Entitled to Notice and a Hearing.

The Government's theory of *Reagan* is even less coherent in the context of its argument that one is not entitled to "notice and an opportunity to be heard" unless a statute explicitly provides for those protections.  ECF 23 at 10.  The fact that certain statutes expressly allow for "notice and hearing," ECF 23 at 9, suggests that those words are sufficient, not that they are necessary.  The

Government concedes that *Reagan* (at least in "dictum") recognizes that "officers with fixed terms" are entitled to the "procedural protections" of notice and a hearing, regardless of whether causes of removal are specified.  ECF 23 at 3.  And in both *Shurtleff v. United States*, 189 U.S. 311, 314 (1903), and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985), the Court concluded that the right to notice and an opportunity to be heard was implicit in "for cause" removal protection, even though the statutes at issue did not specifically provide for "notice and an opportunity to be heard."  No case indicates otherwise.

In arguing that "officers" lack a property right in their office, the Government asserts that *Crenshaw v. United States*, 134 U.S. 99, 104 (1890), was about an "officer," not an employee, because the court "described the naval midshipman as an officer."  ECF 23 at 12.  If the Government is right that "officer" means anyone the court describes as such, then this Court has expressly held that an "officer" indeed possesses a property right to his office.  *Fonville v. District of Columbia*, 448 F. Supp. 2d 21, 28 (D.D.C. 2006) (holding a police officer had a property interest in his office).

## CONCLUSION

For the foregoing reasons, Governor Cook respectfully requests that this Court grant her Motion for Temporary Restraining Order and enter the attached Proposed Order.

Dated: September 4, 2025                    Respectfully Submitted,

                                            */s/ Abbe David Lowell*
                                            Abbe David Lowell [Bar No. 358651]
                                            Brenna L. Frey*
                                            David A. Kolansky [DDC No. 7680722]
                                            Isabella M. Oishi [Bar No.  90018056]
                                            Jack Bolen*
                                            LOWELL & ASSOCIATES, PLLC
                                            1250 H Street, N.W., Suite 250
                                            Washington, DC 20005

T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
BFrey@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com
JBolen@lowellandassociates.com

*Attorneys for Governor Lisa Cook*

Norman L. Eisen [Bar No. 435051]
Tianna J. Mays [Bar No. 90005882]
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
T: (202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org

*Attorneys for Governor Lisa Cook*

\* Application for admission or admission pro hac vice forthcoming.